DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Attorney
SEAN F. CONNOLLY, State Bar #152235
JAMES F. HANNAWALT, State Bar #139567
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3863 [Connolly]
Telephone:     (415) 554-3913 [Hannawalt]
Telephone:     (415) 554-3914 [Collins]
Facsimile:     (415) 554-3837
Email:         sean.connolly@sfcityatty.org
Email:         james.hannawalt@sfcityatty.org
E-Mail:        kelly.collins@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
OFFICER CHARLES AUGUST, OFFICER NICHOLAS
CUEVAS, OFFICER WINSON SETO, OFFICER
ANTONIO SANTOS, OFFICER SCOTT PHILLIPS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN WOODS, individually and as Successor in Interest to Decedent MARIO WOODS,<br><br>     Plaintiff,<br><br>     vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; a municipal corporation; CHARLES AUGUST, Police Officer for the City and County of San Francisco; NICHOLAS CUEVAS, Police Officer for the City and County of San Francisco; WINSON SETO, Police Officer for the City and County of San Francisco; ANTONIO SANTOS, Police Officer for the City and County of San Francisco; SCOTT PHILLIPS, Police Officer for the City and County of San Francisco; and DOES 1-50, individually and in their official capacities as Police Officers for the City and County of San Francisco, inclusive,<br><br>     Defendants. | Case No. 15-cv-05666 WHO<br><br>**DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO, OFFICER CHARLES AUGUST, OFFICER NICHOLAS CUEVAS, OFFICER WINSON SETO, OFFICER ANTONIO SANTOS AND OFFICER SCOTT PHILLIPS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:    September 26, 2018<br>Time:    2:00 p.m.<br>Place:    Courtroom, 2, 17th Floor<br><br>Trial Date:    November 5, 2018 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

NOTICE OF MOTION AND MOTION ........................................................................... i

INTRODUCTION ........................................................................................................... 1

    I.      MATERIAL FACTS AND SUPPORTING EVIDENCE ..................................... 2

          A.      Woods Stabs Marcel Shepard-Gardiner ................................................. 2

          B.      Woods Is Seen Near 6670 3rd Street ...................................................... 2

          C.      Woods Is Seen At Fitzgerald Avenue And Keith Street ......................... 3

          D.      Officers Make Contact With Woods To Investigate The Stabbing ........... 4

          E.      Officers Try To Disarm Woods With Less Lethal Force Options .............. 5

          F.      Officers Are All That Stand Between Woods And Onlookers ................... 6

SUMMARY JUDGMENT STANDARD ........................................................................... 7

ARGUMENT ................................................................................................................... 8

    I.      PLAINTIFF'S FOURTH AMENDMENT CLAIM FAILS ................................. 8

          A.      The Use Of Force Was Reasonable As A Matter Of Law ....................... 8

          B.      The Defendant Officers Are Entitled To Qualified Immunity On The Fourth Amendment Claim ...................................................................... 11

    II.     PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS WERE NOT VIOLATED AS A MATTER OF LAW ............................................................. 13

    III.    DEFENDANT CITY AND COUNTY OF SAN FRANCISCO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S *MONELL* CLAIM ............... 15

          A.      No Evidence Supports Finding *Monell* Liability For Unconstitutional Custom .................................................................................................. 16

          B.      No Evidence Supports *Monell* Liability For Failure To Train ................. 17

          C.      No Evidence Supports *Monell* Liability for Failure to Discipline ............ 17

          D.      No Evidence Supports *Monell* Liability Under A Ratification Theory ..... 18

          E.      Plaintiff Has No Evidence Of Causation To Support Her *Monell* Claim .. 18

    IV.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM UNDER CALIFORNIA CIVIL CODE SECTION 52.1. 19

    V.     PLAINTIFF'S CLAIM FOR NEGLIGENCE FAILS ........................................ 21

          A.      The Negligence Claim Fails Because The Shooting Was Privileged ........ 21

          B.      The Officers Were Not Negligent In Their Pre-Shooting Conduct Because They Were Privileged To Persist In Making An Arrest And To Use Reasonable Force .............................................................................. 22

          C.      The Officers Enjoy Statutory Immunity Under California Penal Code § 196 And Government Code §§ 821.6 and 820.6 ....................................... 24

CONCLUSION.................................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Creighton*
483 U.S. 635 (1987)...................................................................................................11, 12

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)...........................................................................................................7

*Ashcroft v. al–Kidd*
131 S.Ct. 2074 (2011).....................................................................................................11

*Barber v. City of Santa Rosa*
2010 WL 5069868 (N.D.Cal. Dec. 7, 2010)...................................................................9

*Billington v. Smith*
292 F.3d 1177 (9th Cir. 2002) .........................................................................................8

*Blanford v. Sacramento County*
406 F.3d 1110 (9th Cir. 2005) ................................................................................8, 9, 13

*Board of Comm'rs of Bryan Cty. v. Brown*
520 U.S. 397 (1997)...................................................................................................17, 19

*Chroma Lighting v. GTE Prods. Corp.*
127 F.3d 1136 (9th Cir.1997) .........................................................................................10

*City of South Lake Tahoe v. California Tahoe Regional Planning Agency*
625 F.2d 231 (9th Cir. 1980) .........................................................................................25

*Connick v. Thompson*
131 S.Ct. 1350 (2011).....................................................................................................17

*County of Sacramento v. Lewis*
523 U.S. 833 (1998).........................................................................................................14

*Crawford-El v. Britton*
523 U.S. 574 (1998).........................................................................................................14

*Davis v. Ellensburg*
869 F.2d 1230 (9th Cir. 1989) .......................................................................................16

*Deng v. Loeffler*
2011 WL 2792340 (D. Nev. July 14, 2011) ...................................................................9

*Deorle v. Rutherford*
272 F.3d 1272 (9th Cir. 2001) .......................................................................................10

*Forrett v. Richardson*
112 F.3d 416 (9th Cir.1997) ...........................................................................................10

*Foster v. City of Fresno*
  392 F.Supp.2d 1140 (E.D. Cal. 2005) ............................................................24

*Garcia v. United States*
  826 F.2d 806 (9th Cir. 1987) ...........................................................................9

*Gillette v. Delmore*
  979 F.2d 1342 (9th Cir. 1992) ........................................................................18

*Gomez v. Vernon*
  255 F.3d 1118 (9th Cir. 2001) ........................................................................17

*Gonzalez v. City of Anaheim*
  747 F.3d 789 (9th Cir. 2014) ..........................................................................20

*Graham v. Connor*
  490 U.S. 386 (1989) ......................................................................8, 9, 17, 21

*Hayes v. City of San Diego*
  736 F.3d 1223 (9th Cir. 2013) ...........................................................9, 13, 21

*Hocking v. City of Roseville*
  2008 WL 1808250 (E.D. Cal. Apr. 22, 2008) ................................................16

*Karam v. City of Burbank*
  352 F.3d 1188 (9th Cir. 2003) ........................................................................20

*Kisela v. Hughes*
  138 S. Ct. 1148 (2018) .......................................................................1, 12, 13

*Lal v. California*
  746 F.3d 1112 (9th Cir. 2014) ........................................................................10

*Long v. City & County of Honolulu*
  511 F.3d 901 (9th Cir. 2007) ...........................................................................8

*Losee v. City of Chico*
  2018 WL 3016891 (9th Cir. June 18, 2018) .............................................19, 20

*Lytle v. Carl*
  382 F.3d 978 (9th Cir.2004) ...........................................................................18

*MacEachern v. City of Manhattan Beach*
  623 F.Supp.2d 1092 (C.D. Cal. 2009) ..............................................................9

*Meehan v. Los Angeles County*
  856 F.2d 102 (9th Cir. 1988) ..........................................................................16

*Menotti v. City of Seattle*
  409 F.3d 1113 (9th Cir. 2005) ........................................................................15

*Monell v. Department of Social Services*
    436 U.S. 658 (1978)...................................................................1, 15, 16, 17, 18, 19

*Moreland v. Las Vegas Metro. Police Dept.*
    159 F.3d 365 (9th Cir. 1998) ..........................................................................13, 14

*Pearson v. Callahan*
    555 U.S. 223 (2009)...........................................................................................11

*Pham v. City of San Jose*
    2013 WL 5443027 (N.D. Cal. Sept. 20, 2013) .....................................................9

*Porter v. Osborn*
    546 F.3d 1131 (9th Cir. 2008) ...........................................................................14

*Reese v. County of Sacramento*
    888 F.3d 1030 (9th Cir. 2018) ...........................................................................19

*Reeves v. Sanderson Plumbing Prods., Inc.*
    530 U.S. 133 (2000)............................................................................................8

*Reynolds v. County of San Diego*
    84 F.3d 1162 (9th Cir. 1996) ..........................................................................9, 10

*Reynolds v. County of San Diego*
    858 F.Supp. 1064 (S.D. Cal. 1994).....................................................................10

*Rhodes v. McDannel*
    945 F.2d 117 (6th Cir. 1991) .............................................................................10

*S.B. v. County of San Diego*
    864 F.3d 1010 (9th Cir. 2017) ...........................................................................12

*Santiago v. Fenton*
    891 F.2d 373 (1st Cir.1989)...............................................................................18

*Smith v. City of Hemet*
    394 F.3d 689 (9th Cir. 2005) ..............................................................................8

*Surrell v. California Water Serv. Co.*
    518 F.3d 1097 (9th Cir. 2008) ...........................................................................17

*Tennessee v. Garner*
    471 U.S. 1 (1985)................................................................................................8

*Trevino v. Gates*
    99 F.3d 911 (9th Cir. 1996) ...............................................................................16

*United States v. Reese*
    2 F.3d 870 (9th Cir. 1993) .................................................................................20

*Vos v. City of Newport Beach*
   892 F.3d 1024 (9th Cir. 2018) ...................................................................10, 12

*White v. Pauly*
   137 S. Ct. 548 (2017).........................................................................11, 12, 15

*Whitley v. Albers*
   475 U.S. 312 (1987)..........................................................................................14

*Wilkinson v. Torres*
   610 F.3d 546 (9th Cir. 2010) ....................................................................10, 13

*Wilson v. City of Chicago*
   6 F.3d 1233 (7th Cir. 1993) ............................................................................18

*Woodward v. City of Tucson*
   870 F.3d 1154 (9th Cir. 2017) ........................................................................13

**State Cases**

*Allen v. City of Sacramento*
   234 Cal.App.4th 41 (2015) ..............................................................................20

*Bender v. County of Los Angeles*
   217 Cal.App.4th 968 (2013) ............................................................................20

*Brown v. Ransweiler*
   171 Cal.App.4th 516 (2009) ................................................................21, 23, 24

*Cornell v. City and County of San Francisco*
   17 Cal.App.5th 766 (2017) .........................................................................19, 20

*Gilmore v. Superior Court*
   230 Cal.App.3d 416 (1991) ..............................................................................22

*Hayes v. County of San Diego*
   57 Cal.4th 622 (2013) .......................................................................................23

*Hernandez v. City of Pomona*
   46 Cal.4th 501 (2009) .................................................................................21, 22

*Horwich v. Superior Court*
   21 Cal.4th 272 (1999) .......................................................................................22

*Martinez v. County of Los Angeles*
   47 Cal.App.4th 334 (1996) ..................................................................13, 22, 24

*Shoyoye v. County of Los Angeles*
   203 Cal.App.4th 947 (2012) ............................................................................20

*Venegas v. County of Los Angeles*
   32 Cal.4th 820 (2004) .......................................................................................19

**State Statutes & Codes**

California Civil Code § 52.1(a) ...................................................................................19

California Government Code § 52.1 ..................................................................19, 20, 21

California Government Code § 820.6 ............................................................................25

California Government Code §821.6 ............................................................................24

California Penal Code § 148(a).....................................................................................23

California Penal Code § 196 .........................................................................................24

California Penal Code § 245(a)(1).................................................................................22

California Penal Code § 245(c)......................................................................................23

California Penal Code § 417.8.......................................................................................23

California Penal Code § 835a ..............................................................................21, 22, 23

**Rules**

Federal Rule of Civil Procedure 56 ...............................................................................7

**Other References**

Model Civ. Jury Instr. 9th Cir. 9.25 (2017) ..................................................................9

1

### NOTICE OF MOTION AND MOTION

2

**TO PLAINTIFF AND HER COUNSEL OF RECORD**:

3       **PLEASE TAKE NOTICE** that on September 26, 2018, at 2:00 p.m.in the United States

4   District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom

5   2, 17th Floor, San Francisco, California, Defendants City and County of San Francisco (the "City"),

6   Officer Charles August, Officer Nicholas Cuevas, Officer Winson Seto, Officer Antonio Santos, and

7   Officer Scott Phillips ("Defendant Officers") (collectively "Defendants") will and hereby do move the

8   Court for summary judgment under Federal Rule of Civil Procedure 56 on all claims for relief

9   contained in the Second Amended Complaint in this action.  Defendants base this motion on the

10   following grounds:

11       1.      The First Cause of Action in Plaintiff's Second Amended Complaint alleging excessive

12   force in violation of the Fourth Amendment fails as a matter of law and undisputed fact because (1)

13   the Defendant Officers' use of force in defending Officer August and others, and stopping a dangerous

14   fleeing felon, was objectively reasonable; and (2) the Defendant Officers are entitled to qualified

15   immunity on this claim.

16       2.      The Second Cause of Action in Plaintiff's Second Amended Complaint alleging a

17   substantive due process claim in violation of the Fourteenth Amendment fails as a matter of law and

18   undisputed fact because (1) the Defendant Officers' use of force in defending Officer August and

19   others, and stopping a fleeing felon, was objectively reasonable; (2) the Defendant Officers did not act

20   with a purpose to harm unrelated to legitimate law enforcement objectives; and (3) the Defendant

21   Officers are entitled to qualified immunity on this claim.

22       3.      The Third Cause of Action in Plaintiff's Second Amended Complaint alleging

23   municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) fails as a

24   matter of law and undisputed fact (1) for lack of an underlying constitutional violation; and (2) for lack

25   of evidence of any unconstitutional custom, policy or practice that was a moving force in either

26   depriving Mario Woods of his Fourth Amendment rights and/or depriving Gwendolyn Woods of her

27   Fourteenth Amendment rights;

28

4.       The Fifth Cause of Action in Plaintiff's Second Amended Complaint alleging violations of California Civil Code § 52.1 against the Defendant Officers fails as a matter of law and undisputed fact (1) for the same reason the First Cause of Action fails (objective reasonableness); (2) because the Defendant Officers did not have a specific intent to deprive Mario Woods of his Fourth Amendment rights; (3) because Plaintiff cannot prove a separate use of threats, intimidation coercion not inherent in the underlying constitutional violations; and (4) because the Defendant Officers were privileged to use reasonable force to make an arrest of Woods as set forth in California Penal Code § 835a; and

5.       The Fourth and Sixth Causes of Action in Plaintiff's Second Amended Complaint alleging state law tort claims of wrongful death, negligence and battery against the Defendant Officers fail as a matter of law and undisputed fact (1) for the same reason the First Cause of Action fails (objective reasonableness); (2) because defendant officers were privileged to make an arrest of Mario Woods as set forth in California Penal Code §§ 835a; and (3) because the Defendant Officers' conduct was subject to immunity under and California Penal Code § 916 and Government Code §§ 820.6 and 821.6.

Defendants base their motion on this notice of motion and motion, the memorandum of points and authorities in support thereof, the declarations, papers and other evidence submitted herewith, and such argument as may be heard.

**INTRODUCTION**

This lawsuit involves the death of Mario Woods ("Woods") who, on December 2, 2015, stabbed a complete stranger on a public sidewalk in the middle of the afternoon. When police confronted Woods, he brandished an eight-inch knife, said "I'm not going with you" and started to walk away. Officers were unable to disarm Woods, although they gave multiple warnings, mounted a show of force, and deployed pepper spray, bean-bag rounds and rubber bullets. Officers used lethal force as a last resort because Woods posed a threat of harm to officers and bystanders.

The defendants in this case, Officer Charles August, Officer Nicholas Cuevas, Officer Winson Seto, Officer Antonio Santos, and Officer Scott Phillips, are sworn members of the San Francisco Police Department ("SFPD"). The City and County of San Francisco (the "City") is also sued.

Plaintiff Gwendolyn Woods, the mother of Mario Woods, sues on behalf of Woods' Estate and herself. The Estate alleges Defendants violated Mario Woods' Constitutional rights under the Fourth Amendment, committed a battery against him under state law, and violated his rights under California Civil Code section 52.1 (The Bane Act) by using unlawful force. Gwendolyn Woods alleges Defendants violated her own Constitutional rights under the Fourteenth Amendment and were negligent in causing Woods' death.

Defendants used lethal force only after exhausting all other non-lethal options available. Their belief that Woods posed a threat of serious harm to themselves and bystanders was objectively reasonable as a matter of law. The Fourth Amendment claim therefore fails. The Fourteenth Amendment claim fails for the same reason, and because Plaintiff cannot prove Defendants acted with a purpose to harm Woods that was unrelated to a legitimate law enforcement objective. Both Constitutional claims fail for the additional reason that the Defendant Officers are entitled to qualified immunity from suit as set forth in *Kisela v. Hughes*, 138 S. Ct. 1148 (2018). And, Plaintiff's claim against the City and County of San Francisco on a theory of municipal liability also fails because Plaintiff cannot prove liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Plaintiff's claims under state law are barred for the reasons the Fourth Amendment claim fails: the Officers' use of force was objectively reasonable. Moreover, Plaintiff's Bane Act claim fails because she cannot prove that officers acted with the specific intent to deprive Mario Woods of his

Fourth Amendment rights.  Finally, Plaintiff's claims under state law fail for the additional reason that the Defendant Officers are entitled to statutory immunity from suit on those claims.

## I.    MATERIAL FACTS AND SUPPORTING EVIDENCE

### A.    Woods Stabs Marcel Shepard-Gardiner

At approximately 2:50 p.m. on December 2, 2015, Marcel Shepard-Gardiner ("Gardiner") was sitting in a car outside of his home when Mario Woods ("Woods") approached out of nowhere and stabbed him.  [Declaration of James F. Hannawalt in Support of Motion for Summary Judgment ("Hannawalt Decl."), Exh K, Depo of Gardiner 49:1-11, 18-20; 59:1-6; 61:21-62:7; Mendoza Decl. ¶¶ 2-5]  Gardiner had never seen or met Woods.  [Hannawalt Decl. Exh. K, Depo of Gardiner, 55:5-11]  Gardiner went to the Emergency Room at San Francisco General Hospital ("SFGH").  [Hannawalt Decl. Exh K, Depo of Gardiner 75:4-7]  After his wounds were treated, Gardiner told San Francisco Sheriff's Deputy Laurence Mendoza that he had been stabbed by a light-complected male, wearing a hooded sweatshirt.  [Mendoza Decl. ¶¶ 2-5]  Gardiner said the stabbing took place in front of his home, near 6670 3rd Street in San Francisco.  [Mendoza Decl. ¶¶ 2-5]  Deputy Mendoza relayed the report to the San Francisco Sheriff's Department Operation's Center.  [Mendoza Decl. ¶ 6]  Deputy Stanley Wong received the call and relayed the information to Department of Emergency Management ("DEM").  [Wong Decl. ¶¶ 2, 5]

At about 3:55 p.m., DEM dispatch broadcasted an "A Priority" report of "stabbing" to all SFPD officers in the Bayview police district.  [Declaration of Kirstin Walker in Support of Motion for Summary Judgment ("Walker Decl."), Exhs A and B].  The suspect was described as a male of unknown race, with a light complexion, wearing a hoody.  *Id*.  The stabbing reportedly occurred at about 2:55 p.m., near the victim's home at 6670 3rd Street.  *Id*.  Dispatch noted the victim was reporting the incident from the hospital.  *Id*.

### B.    Woods Is Seen Near 6670 3rd Street

SFPD Officer Margreiter heard the report over his patrol car radio.  [Margreiter Decl. ¶¶ 1-2]  He and his partner responded to the victim's home at 6670 3rd Street to investigate.  [Margreiter Decl. ¶¶ 1-2]  As Officer Margreiter approached 6670 3rd Street, he saw a black male wearing a hoody standing alone on the sidewalk north of 6670 3rd Street.  [Margreiter Decl. ¶ 2]  Officer Margreiter

parked about half a block to the north of 6670, at Le Conte and 3rd Street. *Id.* Shakia Vanderbilt approached and told Officer Margreiter that a man standing on the sidewalk near 6670 3rd Street stabbed her neighbor. [Margreiter Decl. ¶ 3] The man described by Ms. Vanderbilt matched the description of the man Officer Margreiter had just seen. *Id.* Officer Margreiter radioed that the suspect was still on the scene. *Id.* He described the suspect as about 5'8" tall, wearing a black baseball cap with a white emblem, black hooded sweatshirt or jacket, tan pants and a black backpack. [*Id.*; Walker Decl. Exh A] This description was broadcast to all officers over the Bayview district radio channel. *Id.*

Officer Margreiter walked to 6670 3rd Street. [Margreiter Decl. ¶ 3] The suspect was no longer there. [Margreiter Decl. ¶¶ 3-4] Officer Margreiter requested additional police units to search for the suspect. [Margreiter Decl. ¶ 4; Walker Decl. Exh A]

At Bayview Station, SFPD Officers Jesse Ortiz, Shaun Navarro, Winson Seto, Scott Phillips, and Nicholas Cuevas were beginning their shift. [Hannawalt Decl. Exh L, Depo of Navarro 51:22-52:16; Exh M, Depo of Ortiz 17:8-18:2; Exh Q, Depo of Seto 98:24-99:2; Exh U, Depo of Cuevas 27:15-18; Exh T, Depo of Phillips 14:21-15:14] They heard the broadcasts about the suspect and responded to 3rd and Le Conte to assist in the search. [Hannawalt Decl. Exh L, Depo of Navarro 24:4-10; Exh M, Depo of Ortiz 20:23-21:2; Exh U, Depo of Cuevas 31:1-4; Exh T, Depo of Phillips 18:18-19:2] Officers Ortiz, Navarro, Seto, Phillips, and Cuevas were wearing police uniforms. *Id.*

### C.  Woods Is Seen At Fitzgerald Avenue And Keith Street

Officers Brandon Thompson and Charles August were on duty at the Potrero Housing substation when the calls about the stabbing were broadcast. [August Decl. ¶ 2] They responded in their marked police car, heading south on 3rd Street. [August Decl. ¶ 2] Officer August saw a man matching the description of the suspect standing at a bus stop, at 3rd and Fitzgerald, about five blocks north of the original location. [August Decl. ¶ 3; Hannawalt Decl. Exh P, Depo of August 61:23-62:3; Exh R, Depo of Thompson 28:25-29:5; 34:18-35:6] Officer Thompson, who was driving, made a U-turn and pulled to the curb on the south side of Fitzgerald Street, at Keith Street. [August Decl. ¶ 4] Officer August got out of the police vehicle, a few feet away from the suspect. [August Decl. ¶¶ 4, 5]

### D.     Officers Make Contact With Woods To Investigate The Stabbing

Woods stood 5'9" and weighed 156 lbs. [Hannawalt Decl. Exh V, ME Report].  He wore the same black hoody, tan pants, black baseball cap with white emblem, and black backpack described in the dispatch.  [August Decl. ¶ 4; Hannawalt Decl. Exh O, Depo of Rivera, Exh 2; Shaikh Decl. Exhs A and B]  Woods was standing on the sidewalk on the southeast corner of 3rd Street and Fitzgerald Avenue.  [August Decl. ¶ 3]  Officer August recognized Woods as the suspect.  [August Decl. ¶ 3]  Officer August was wearing his police uniform.  *Id*.

Officer August approached Woods.  [August Decl. ¶¶ 4, 5]  Woods produced an eight-inch knife.  *Id*.  Woods said to Officer August, "I'm not going with you."  [Hannawalt Decl. Exh P, Depo of August 63:13-21]  Officer August took his department-issued gun out of its holster and raised it toward Woods.  [August Decl. ¶ 6]  Officer August told Woods to drop his knife.  [*Id.*; Hannawalt Decl. Exh R, Depo of Thompson 95:2-7]  Woods said, "[y]ou're going to have to squeeze that thing."  [August Decl. ¶ 6; Hannawalt Decl. Exh P, Depo of August 64:18-25; Exh R, Depo of Thompson 41:18-24]  A bystander heard Woods say "fuck you, come and get it," referring to the knife.  [Hannawalt Decl. Exh O, Depo of Rivera 24:21-25:5]

Officer Thompson also got out of the car and drew his gun to provide cover for his partner.  [Shaikh Decl. Exh A]  Officer Thompson broadcast the events over the radio as they happened.  He said there was a "guy with the knife, one at gunpoint," and he's "coming at my partner."  [Walker Decl. Exh A, DEM audio tape 1614-1638 dt14 at approximately 18:10-19:42/16:34-36]  Officer Thompson also radioed that they "did not have an ERIW" (Extended Range Impact Weapon) and "we need units, I need units."  *Id*.  Officer Thompson was wearing his police uniform.  [Shaikh Decl. Exhs A and B]

Woods began walking south on Keith Street, away from Officers August and Thompson.  [*Id.*; August Decl. ¶¶ 6-9]  Officers August and Thompson followed Woods.  [Shaikh Decl. Exh A]  Officer August kept his gun pointed at Woods and continued to tell Woods to drop the knife.  [Hannawalt Decl. Exh P, Depo of August 63:13-2166:14-19, 66:23-67:8; Shaikh Decl. Exhs A and B]

Before reaching Gilman, Woods stopped abruptly.  [August Decl. ¶ 9; Hannawalt Decl. Exh O, Depo of Rivera 48:23-49:24, Exh 2]  Woods turned to face Officer August and dropped the backpack

he was carrying.  *Id*.  Officer Thompson broadcast: "we're going toward Gilman right now; he's got the knife in his right hand" and "he's refusing to drop the knife" and then, "he's charging at my partner."  [Walker Decl. Exh A, DEM audio tape 1614-1638 dt14 at approximately 18:10-19:42/16:34-36]

### E.  Officers Try To Disarm Woods With Less Lethal Force Options

Officers Navarro and Seto could hear Officer Thompson's radio broadcast.  [Seto Decl. ¶ 3; Hannawalt Decl. Exh L, Depo of Navarro 77:20-21, 80:10-13]  They responded to the scene, arriving from the south, where Keith Street joins 3rd Street.  [Seto Decl. ¶ 4]  Officers Navarro and Seto brought an Extended Range Impact Weapon (ERIW).  [Hannawalt Decl. Exh Q, Depo of Seto 64:2-16]  Officer Seto could see Woods, Officer August and Officer Thompson.  [Seto Decl. ¶ 4]  Woods had the knife in his hand.  *Id*.  Officer Seto ordered Woods to "drop the knife" and "get on the ground."  [Hannawalt Decl. Exh Q, Depo of Seto 83:19-84:2]  Officer Seto warned Woods that he would shoot.  [Hannawalt Decl. Exh Q, Depo of Seto 83:19-84:2]  Woods did not comply.  [Seto Decl. ¶ 10; Phillips Decl. ¶¶ 9-10; Santos Decl. ¶ 10; Traw Decl. ¶¶ 9, 15; August Decl. ¶¶ 15-16]  Officer Navarro shot Woods with four rubber projectiles from the ERIW.  [Hannawalt Decl. Exh L, Depo of Navarro 109:1-110:7; August Decl. ¶ 11]  Each round hit Woods below the waist.  *Id*.  Woods did not drop the knife or get on the ground.  [*Id*.; Seto Decl. ¶ 10; Phillips Decl. ¶¶ 9-10; Santos Decl. ¶ 10; Traw Decl. ¶ 9, 15]

Officer Thompson broadcast these events as well.  He radioed: "we've got ERIW.  ERIW deployed; he's still refusing to drop the knife so far. Navarro's got ERIW.  ERIW deployed again; he's still got the knife in his right hand; he's refusing to drop the knife. . ."  [Walker Decl. Exh A]

Officer Traw also heard Officer Thompson's call for ERIW.  [Traw Decl. ¶ 4]  Officer Traw and her partner Officer Wasserman arrived on scene from the direction of 3rd and Gilman.  [Traw Decl. ¶ 7]  Both were wearing their police uniforms.  Traw Decl. ¶ 2.  Officers Traw and Wasserman brought an ERIW with bean-bag projectiles.  [Traw Decl. ¶¶ 7, 11]  Officer Traw heard several officers tell Woods to drop the knife.  [Traw Decl. ¶9]  Woods did not comply.  *Id*.  Officer Traw deployed two bean-bag rounds at Woods.  [Traw Decl. ¶ 11]  Both rounds struck Woods.  *Id*.  Woods did not respond and did not drop the knife.  [Traw Decl. ¶ 12]

Officer Ortiz had also responded to the scene.  Officer Ortiz heard officers tell Woods to "drop the knife."  [Hannawalt Decl. Exh M, Depo of Ortiz 45:10-16, 46:17-25]  Officer Ortiz gave a verbal warning that he was going to spray Woods with Oleoresin Capsicum (pepper spray).  [Hannawalt Decl. Exh M, Depo of Ortiz 48:6-25].  Officer Ortiz then sprayed Woods with pepper spray for two to four seconds from a distance of less than ten feet.  [*Id.*; Hannawalt Decl. Exh M, Depo of Ortiz 53:15-24]  Woods did not drop the knife.  [August Decl. ¶¶ 13-14; Seto Decl. ¶¶ 6-10; Phillips Decl. ¶¶ 8-10; Cuevas Decl. 6-7; Santos Decl. ¶¶ 8-9]

Officer Thompson broadcast:  "ERIW deployed four times and he's still refusing to drop the knife; the knife is in his right hand; he's still refusing to drop the knife; he's refusing orders."  [Walker Decl. Exh A, DEM audio tape 1614-1638 dt14 at approximately 18:10-19:42/16:34-36]

None of the projectiles or pepper spray appeared to have an effect on Woods.  [August Decl. ¶¶ 9-14; Seto Decl. ¶¶ 6-10; Phillips Decl. ¶¶ 6-10; Cuevas ¶ 9; Santos Decl. ¶¶ 6-9]  Officers Seto, Santos, and Phillips warned Woods that they would shoot him if he did not drop the knife. [Hannawalt Decl. Exh Q, Depo of Seto 83:19-84:2; Ex T, Depo of Phillips 31:19-32:7; Phillips Decl. ¶ 4; Santos Decl. ¶ 5; August Decl. ¶15]  Officer Santos was wearing his police uniform.  [Santos Decl. ¶ 2]

### F.     Officers Are All That Stand Between Woods And Onlookers

As the events unfolded, bystanders stood nearby watching and filming the events; people were standing at the corner of 3rd and Keith Streets.  [August Decl. ¶ 3, Cuevas Decl. ¶ 9, Phillips Decl. ¶¶ 5, 10; Seto Decl. ¶¶ 6, 9; Hannawalt Decl. Exh O, Depo of Rivera, Exh 2]  Onlookers also stood in the street after exiting a Muni bus that stopped on Keith Street near the police action.  [Shaikh Decl. Exh A]  Officers feared Woods could harm the bystanders.  Officers ordered Woods to drop the knife and to get on the ground.  [Seto Decl. ¶ 10; Santos Decl. ¶ 10]  Officers had warned Woods they would shoot.  [Hannawalt Decl. Exh Q, Depo of Seto 83:19-84:2; Ex T, Depo of Phillips 31:19-32:7; Phillips Decl. ¶ 4; Santos Decl. ¶ 5; August Decl. ¶ 15]

Officers tried to form a line of police between Woods and the bystanders.  [Cuevas Decl. ¶ 3; Shaikh Decl. Exh A; Hannawalt Decl. Exh O, Depo of Rivera Exh 2; Exh R, Depo of Thompson 97:8-98:6; Exh M, Depo of Ortiz 32:17-33:14; Seto Decl. ¶ 6 , Traw Decl. ¶ 8]  At least five officers had

hand guns pointed at Woods, and two officers had less lethal long guns pointed at Woods.  [Cuevas Decl.¶ 9; Phillips Decl. ¶ 10; Seto Decl. ¶ 16; Santos Decl. ¶ 10]  Officer August was the closest to Woods, in the northernmost position in the police line.  [August Decl. ¶ 16; Shaikh Decl. Exh A]

After being shot with the less lethal rounds, Woods turned and began walking north on Keith Street, in the direction of Officer August.  [August Decl. ¶ 16; Traw Decl. ¶ 15; Seto Decl. ¶ 10; Phillips Decl. ¶ 10; Santos Decl. ¶ 10; Cuevas Decl. ¶ 9]  Woods was still holding the knife.  *Id*. Officer August moved backward and at an angle to place himself between Woods and the bystanders. [August Decl. ¶ 16; Hannawalt Decl. Exh P, Depo of August 96:22-97:9]  Officer August wanted to prevent Woods from reaching bystanders.  *Id*.  Woods continued moving toward Officer August.  *Id*. Woods closed the distance, coming within ten feet of Officer August.  [Hannawalt Decl. Exh P, Depo of August 83:1-23].  Officer August feared for his own safety and the safety of the bystanders nearby and fired at Woods.  [August Decl. ¶ 16]  Officers Cuevas, Phillips, Seto and Santos could also see Woods advancing on Officer August.  [Cuevas Decl. ¶ 9; Phillips Decl. ¶ 10; Seto Decl. ¶ 16; Santos Decl. ¶ 10]  They each fired on Woods because they feared for the safety of Officer August and the bystanders.  *Id*.  Officer Cuevas, who also stood close to Woods, shot to protect himself as well. [Cuevas Decl. ¶ 9]

Woods died from gunshot wounds.  [Hannawalt Decl. Exh V, ME report]  The Medical Examiner found that, at the time of death, Woods had high levels of methamphetamine and other drugs in his system.  [Mendelson Decl.]  Blood found on the blade of Woods' knife matched the DNA of Mr. Gardiner.  [Barkwill Decl.]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. See *Anderson*, 477 U.S. at 255; *Reeves v. Sanderson Plumbing*

1     *Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable

2     or is not significantly probative, summary judgment may be granted. See *Id.* at 249–50.

3                                    **ARGUMENT**

4   **I.**      **PLAINTIFF'S FOURTH AMENDMENT CLAIM FAILS**

5         Plaintiff claims that the Defendant Officers used excessive force in violation of Woods' Fourth

6     Amendment rights. The claim fails on the merits and is barred by qualified immunity.

7       **A.**      **The Use Of Force Was Reasonable As A Matter Of Law**

8         Claims of excessive and deadly force are analyzed under a standard of reasonableness. *Long v.*

9     *City & County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (citing *Graham v. Connor*, 490 U.S.

10    386, 395 (1989)). "Determining whether the force used to effect a particular seizure is reasonable

11    under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on

12    the individual's Fourth Amendment interests against the countervailing governmental interests at

13    stake." *Graham*, 490 U.S. at 396. A court must consider the totality of circumstances in the particular

14    case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the

15    safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest

16    by flight." *Id.*; *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005); *Billington v.*

17    *Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002).

18        When evaluating the totality of the circumstances, "[t]he calculus of reasonableness must

19    embody allowance for the fact that police officers are often forced to make split-second judgments – in

20    circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is

21    necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *Tennessee v. Garner*, 471 U.S. 1, 3

22    (1985). Reasonableness is not judged from calm remove or the perspective of the arrestee: "The

23    'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

24    officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

25        When faced with a suspect brandishing a weapon, an officer may reasonably believe the

26    suspect poses an immediate threat. "[W]here a suspect threatens an officer with a weapon such as a

27    gun or a knife, the officer is justified in using deadly force." *Smith v. City of Hemet*, 394 F.3d 689,

28    704 (9th Cir. 2005) (en banc); *Billington*, 292 F.3d at 1185 (suspect grappling for officer's gun posed

immediate threat); *Hayes v. City of San Diego*, 736 F.3d 1223, 1234 (9th Cir. 2013) (acknowledging "threatening an officer with a weapon does justify the use of deadly force."); *Reynolds v. County of San Diego*, 84 F.3d 1162, 1168 (9th Cir. 1996) (holding deadly force to be reasonable when suspect, behaving erratically, swung knife at officer); *Garcia v. United States*, 826 F.2d 806, 812 (9th Cir. 1987) (holding deadly force to be reasonable when suspect attacked agent with a rock and stick).

Here, it is undisputed Woods brandished an eight-inch knife.  Officers on the scene could see that Woods had heard and understood their commands, and intentionally failed to comply.  There is substantial precedent for finding no Fourth Amendment violation where officers shoot a non-compliant person holding an edged weapon.  In *Blanford*, for example, the Ninth Circuit found it was objectively reasonable for officers to shoot a suspect who "was armed with a dangerous weapon, was told to stop and drop it, was warned that he would be shot if he didn't comply, appeared to flaunt the deputies commands by raising the sword and grunting, refused to let go of the sword, and was intent upon trying to get inside a private residence or its backyard with the sword in hand." *Blanford*, 406 F.3d at 1119.  Other cases similarly recognize that a knife-wielding suspect may pose an imminent threat justifying use of deadly force.  See, *Reynolds*, 84 F.3d at 1168 (9th Cir.1996) (holding officers justified in using deadly force against knife-wielding suspect); *MacEachern v. City of Manhattan Beach,* 623 F.Supp.2d 1092, 1105 (C.D. Cal. 2009) (granting summary judgment to officer who fatally shot suspect who, having already threatened another, walked toward officers with knife); *Barber v. City of Santa Rosa*, 2010 WL 5069868 *6 (N.D.Cal. Dec. 7, 2010) (holding shooting of mentally ill man armed with knife who threatened officers was not excessive); *Pham v. City of San Jose*, 2013 WL 5443027, *7 (N.D. Cal. Sept. 20, 2013) (granting summary judgment to officers who shot man from 6 to 8 feet away who charged at them with knife and ignored orders to drop knife); *Deng v. Loeffler*, 2011 WL 2792340 *2 (D. Nev. July 14, 2011) (suspect advanced toward officer holding two knives from 50 to 75 feet away; officer justifiably shot suspect once he was within 5 feet of officer).

In addition to the imminent and deadly threat Woods posed to the officers, other factors to consider when evaluating the totality of the circumstances under *Graham* are the availability of alternative methods to subdue or take the suspect into custody and whether officers gave warning of the imminent use of force.  *Graham*, *supra; see also*, Model Civ. Jury Instr. 9th Cir. 9.25 (2017);

*Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001) (finding that warnings not required in every instance but are a factor in evaluating the totality of circumstances); *Vos v. City of Newport Beach,* 892 F.3d 1024, 1033 (9th Cir. 2018) (recognizing officers are not required to use least intrusive degree of force available, but availability of alternatives "may be a factor to consider"); *Lal v. California*, 746 F.3d 1112 (9th Cir. 2014) (considered availability of less lethal options, but held officers not required to use less lethal options where doing so would not alleviate threat).

Although "[t]he Fourth Amendment does not require law enforcement officers to exhaust every alternative before using justifiable deadly force" courts should consider the use of those alternatives. *Forrett v. Richardson*, 112 F.3d 416, 420 (9th Cir.1997), overruled on other grounds by *Chroma Lighting v. GTE Prods. Corp*., 127 F.3d 1136 (9th Cir.1997). The use of alternative forms of force, such as warnings and less lethal options gives a suspect the opportunity to avoid deadly force by surrendering. Here, unfortunately, those attempts to avoid the use of deadly force failed. When the officers shot Woods, their interest in protecting themselves and others justified the intrusion on Woods' liberty, and thus did not violate the Fourth Amendment.

Finally, the officers were not required to wait for Woods to harm them or escape. "An officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer. *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1072 (S.D. Cal. 1994), aff'd in part and rev'd on other grounds, 84 F.3d 1162 (9th Cir. 1996). *See also, Rhodes v. McDannel*, 945 F.2d 117 (6th Cir. 1991). Nor does the number of shots fired make the use of force excessive. When an officer perceives a threat of imminent harm, the constitution does not require an officer to stop shooting after one shot, and reconsider whether lethal force is justified. *Wilkinson v. Torres*, 610 F.3d 546, 552–53 (9th Cir. 2010) ("[b]ecause we conclude as a matter of law that deadly force was authorized to protect a fellow officer from harm, it makes no difference in this case whether Torres fired seven rounds or eleven.")

Based on the totality of circumstances, the Defendant Officers had a reasonable belief that Woods posed a threat of harm to themselves and others. The undisputed facts support the officers' use of force. The Officers knew Woods had already stabbed someone in the middle of the afternoon.

1   Woods brandished an eight-inch knife when Officer August approached him, in full police uniform,

2   and ordered him to drop his knife.  Woods ignored dozens of commands to drop his knife, to get on

3   the ground, and to stop.  More than five officers had their guns trained on Woods, at least two warned

4   Woods they would shoot.  Woods said, "I'm not going with you" and "you're going to have to squeeze

5   that" referring to a gun.  Officers deployed a range of options along the use of force continuum,

6   including a show of physical presence, issuing verbal warnings, pepper spray and fired several high-

7   velocity less lethal impact rounds, none of which had any effect on Woods.  The officers were reacting

8   to a tense, rapidly-evolving scene in a populated urban environment.  After exhausting all other

9   options, and when Woods was within ten feet of Officer August without showing any signs of

10  stopping, the Defendant Officers fired.  Based on the totality of circumstances facing them, the

11  Defendant Officers' belief that Woods posed a threat of serious physical harm to Officer August, the

12  bystanders and others, was objectively reasonable.  As a matter of law, the Fourth Amendment

13  excessive force claim must be dismissed.

14      **B.    The Defendant Officers Are Entitled To Qualified Immunity On The Fourth
15              Amendment Claim**

16      Police officers are required to respond to dangerous situations, and to make split second

17  decisions under rapidly-evolving circumstances.  Qualified immunity shields them from the

18  "harassment, distraction, and liability" associated with litigation, provided they did not violate clearly

19  established law.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009).  Qualified immunity

20  applies as long as an official's conduct "does not violate clearly established statutory or constitutional

21  rights of which a reasonable person would have known."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017)

22  (citations and quotations omitted).  To be clearly established, "existing precedent must have placed the

23  statutory or constitutional question beyond debate."  *Id.*  "In other words, immunity protects 'all but

24  the plainly incompetent or those who knowingly violate the law.'"  *Id.*

25      The Supreme Court instructs, "clearly established law" should not be defined "at a high level

26  of generality."  *White*, 137 S.Ct. at 552, citing, *Ashcroft v. al–Kidd*, 131 S.Ct. 2074 (2011).  The clearly

27  established law must be "particularized" to the facts of the case.  *White*, 137 S.Ct. 552, citing

28  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).  Otherwise, "[p]laintiffs would be

able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*

Plaintiff bears the burden of showing "that the rights allegedly violated were clearly established." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). In the context of qualified immunity, the Supreme Court explains that "use of force" is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *White*, 136 S.Ct. at 309.

As described above, clearly established law supports the Defendant Officers' reasonable belief that Woods posed a threat of serious harm. Under the recent Supreme Court decision in *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) the officers are surely entitled to qualified immunity. In *Kisela*, officers responded to a call that a woman was acting erratically and hacking a tree with a large kitchen knife. When officers arrived at the suspect's house, her roommate was standing in the driveway. The suspect emerged from the house carrying a large knife at her side. The suspect walked to within six feet of her roommate. Officers gave at least two commands, which the suspect failed to acknowledge. The roommate said "take it easy" to the officers and the suspect. A chain link fence separated the officers and the two women. An officer shot the suspect, fearing she was a threat to the bystander. It was undisputed the suspect posed no threat to the officers. The Supreme Court held that the officer was entitled to qualified immunity because it was "far from an obvious case in which any competent officer would have known that shooting [the suspect] to protect [the bystander] would violate the Fourth Amendment." *Kisela* 138 S. Ct. at 1153.

The Ninth Circuit recently applied *Kisela*, finding officers were entitled to qualified immunity after shooting a suspect who was barricaded in a 7-Eleven Store. In *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (2018), officers confronted a reportedly erratic individual who cut someone with scissors, asked officers to shoot him, simulated having a firearm, and ultimately charged at officers with something in his upraised hand. The Court held that existing precedent did not place the conclusion "beyond debate" that officers acted unreasonably in those circumstances. *Vos*, 892 F.3d at 1035; *S.B. v. County of San Diego*, 864 F.3d 1010, 1015–17 (9th Cir. 2017) (officers entitled to

qualified immunity where officers used deadly force on a mentally ill individual known to have knives in his pockets and drew one on officers); *Woodward v. City of Tucson*, 870 F.3d 1154 (9th Cir. 2017) (officers entitled to qualified immunity after using deadly force on a suspect who attacked them in his apartment while growling and brandishing a broken hockey stick); see also *Blanford*, 406 F.3d at 1119 (discussed above, officers entitled to qualified immunity for shooting a suspect wandering around neighborhood with a raised sword, growling, and ignoring commands to drop the weapon); *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334 (1996) (holding that deputy who fatally shot knife-wielding suspect was entitled to qualified immunity).

Here, as in *Kisela*, Woods held a knife and posed a threat to bystanders.  Woods also failed to respond to dozens of warnings and no chain link fence separated him from the officers.  Instead of hacking at a tree, Woods had already stabbed someone.  Unlike the suspect in *Kisela* who appeared calm and did not acknowledge the officers' presence, Woods made it clear he was ignoring the officers commands, saying "I'm not going with you" and "you're going to have to squeeze that" referring to a gun.  Woods also continued to advance in the face of drawn weapons, warnings and commands.  And, Woods was totally unfazed by the less lethal options of pepper spray and beanbag rounds and rubber bullets.  Under the clearly-established precedent at the time, and as confirmed by the Supreme Court and Ninth Circuit this year, the Defendant Officers are entitled to qualified immunity.

## II.   PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS WERE NOT VIOLATED AS A MATTER OF LAW

Plaintiff asserts a claim against the Defendant Officers and the City, alleging that SFPD officers violated her Fourteenth Amendment rights to a familial relationship with Mario Woods.  The Fourteenth Amendment governs federal claims brought by family members of a deadly force decedent.  *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 373-73 (9th Cir. 1998).  To prevail, Plaintiff must prove that the officers' conduct "shock[ed] the conscience." *Wilkinson*, 610 F.3d at 554 (9th Cir. 2010). Because the events in the present case unfolded rapidly, the Defendant Officers' conduct violated the Fourteenth Amendment only if they acted "with a purpose to harm unrelated to legitimate law enforcement objectives." *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013).

Courts employ the stringent "purpose to harm" standard in circumstances when officers have little to no opportunity to engage in actual deliberation.  When officers are in a confrontation with a suspect and must make decisions "in haste, under pressure, and frequently without the luxury of a second chance."  *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1987)).  Plaintiff must prove subjective malice on the part of the officers.  *Porter v. Osborn,* 546 F.3d 1131, 1139 (9th Cir. 2008) ("*Lewis* and our cases … require that when an officer encounters fast-paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply."); *Moreland*, 159 F.3d at 372 ("the critical consideration [is] whether the circumstances are such that 'actual deliberation' is practical."); *MacEachern*, 623 F.Supp.2d at 1099-1100) (purpose to harm, rather than deliberate indifference, standard governed whether police officer violated due process in using deadly force during brief encounter with knife-wielding assault suspect).

Where the use of force is objectively reasonable under the Fourth Amendment, there can be no violation of the Fourteenth Amendment.  *Moreland*, 159 F.3d at 371 n.4 (claim fails under more stringent Fourteenth Amendment standard where force is lawful under Fourth Amendment analysis).  Even if a factual question precludes summary judgment on whether use of deadly force was reasonable in this case, Defendants are nonetheless entitled to summary judgment on the Fourteenth Amendment claim.  Here, the officers used deadly force to prevent Woods from stabbing Officer August, and to prevent him from escaping and harming others.  They responded to a stabbing call, and faced a felony suspect who ignored their commands, was non-compliant after three different less lethal weapons were deployed and posed a risk of harm to bystanders nearby.  The officers acted in furtherance of a legitimate law enforcement objective.  Plaintiff has no evidence the officers acted with a purpose to harm.  Nor does Plaintiff have evidence that the officers acted with malice, which is required to state a due process claim.  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) ("bare allegations of malice [will] not suffice to establish a constitutional claim").

Plaintiff has no evidence that any officer had a subjective intent to act with a purpose to harm unrelated to that law enforcement objective.  The Court should therefore grant summary judgment as to all defendants on this claim.

The Court should also grant summary judgment on this claim as to the Defendant Officers on the additional ground that they are entitled to qualified immunity.  Qualified immunity applies as long as an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *White*, 137 S. Ct. 552.  As explained above, no reasonable officer would have known that using deadly force against Woods to protect themselves and the bystanders was an act unrelated to a legitimate lawful purpose.  The Defendant Officers are entitled to qualified immunity as to this claim.

### III.   DEFENDANT CITY AND COUNTY OF SAN FRANCISCO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S *MONELL* CLAIM

Plaintiff names the City as a defendant on her claims under the Fourth and Fourteenth Amendments.  As set forth above, Plaintiff cannot establish an underlying constitutional violation.  Her claims therefore fail.  Even if Plaintiff could establish violations of the Fourth and Fourteenth Amendments, the City is still entitled to judgment.

The City can only be liable under § 1983 if Plaintiff proves that a municipal policy caused the constitutional harm.  Under *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978), a municipality may be liable when a municipal policy causes an employee to violate another's constitutional right.  A plaintiff can establish *Monell* liability: "(1) by showing a longstanding [unconstitutional] practice or custom which constitutes the standard procedure of the local governmental entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

Plaintiff alleges three theories of *Monell* liability: (1) unspecified acts of excessive force by members of the SFPD amount to a custom or practice of the SFPD [ECF 48 ¶ 43]; (2) SFPD's excessive force policies are unconstitutional and/or officers are not adequately trained in the proper

use of force [ECF 48, ¶ 45]; and (3) the Defendant Officers were not disciplined for prior, unspecified

misconduct [ECF 48, ¶¶ 44, 46].[1]  Plaintiff has no evidence to support any of these theories.

### A.    No Evidence Supports Finding *Monell* Liability For Unconstitutional Custom

To prove a *Monell* claim based on a custom, Plaintiff must show a "longstanding practice or

custom which constitutes the standard operating procedure of the local government entity."  *Trevino v.*

*Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  "Liability for improper custom may not be predicated on

isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

consistency that the conduct has become a traditional method of carrying out policy."  *Id.* at 918; *see*

*also Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to

establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest

insufficient to establish policy).

Plaintiff has no evidence to support her claim of an unconstitutional "custom."  In her

responses to discovery, Plaintiff suggested that the existence of previous officer-involved shootings

where officers were not disciplined or prosecuted amounts to an unconstitutional custom.  (Hannawalt

Decl. Exh E, Resp. Interrog. 8)  An officer's use of force is not the same as an excessive or

unconstitutional use of force.  *Hocking v. City of Roseville*, 2008 WL 1808250, *8 (E.D. Cal. Apr. 22,

2008) ("Statistics of un-sustained complaints of excessive force and other police misconduct, without

any evidence that those complaints had merit, does not suffice to establish municipal liability under §

1983").  Plaintiff identified no facts showing that officers acted unlawfully or unconstitutionally in any

of those incidents, much less that high-ranking public officials were aware of unlawful acts and took

no action.

Plaintiff asserts in her interrogatory responses that the *Monell* claim is based on unsupported

allegations that members of the SFPD harbor racial bias.[2]  However, Plaintiff did not plead this theory.

---

[1] Plaintiff was asked in discovery to identify the allegedly unconstitutional policy underlying her *Monell* claim.  Plaintiff's complete response was, "SFPD Use of Force Policy, SFPD Use of Firearms and Investigation into Officer Involved Shootings" [Hannawalt Decl. Exh E, Resp. Interrog. 11]  SFPD had written policies for each of the allegedly unconstitutional policies that were in effect December 2, 2015.  [Waaland Decl. ¶ 7; Hannawalt Decl. Exhs H, I, J]

[2] Plaintiff's interrogatory responses include statements such as: "SFPD engages in biased policing of minorities and/or persons of color by disproportionately stopping and searching members of these groups despite those persons being less likely to be found with contraband than white drivers"

1  [ECF 48]  And conclusory statements devoid of factual support do not defeat a motion for summary

2  judgment.  *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

3        Plaintiff cannot establish *Monell* liability based on a theory of custom.

4  **B.     No Evidence Supports *Monell* Liability For Failure To Train**

5        Plaintiff alleges that SFPD failed to properly train officers on the use of deadly force.  (ECF

6  48, ¶ 45)  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim

7  turns on a failure to train."  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citation omitted)

8  (emphasis added).  A plaintiff must present evidence that "city policymakers are on actual or

9  constructive notice that a particular omission in their training program causes city employees to violate

10  citizens' constitutional rights, [and] the policymakers choose to retain that program."  *Connick*, 131

11  S.Ct. at 1360 (citing *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 407 (1997) (emphasis

12  added).

13        The SFPD policies on the use of force are constitutionally sound.  The SFPD's policies are

14  embodied in the SFPD's General Orders.  The Defendant Officers have all received training and have

15  a working knowledge of the General Orders.  [Hannawalt Decl. Exhs W and X].  The General Orders

16  in effect on December 2, 2015, regarding use of force and use of firearms (General Orders 5.01 and

17  5.02, respectively), conform to the constitutional standards set out in *Graham, supra.*  [Hannawalt

18  Decl. Exhs H and I]  Plaintiff has not, and cannot, identify any provision of SFPD General Orders that

19  is not constitutional.  Plaintiff cannot prove a *Monell* claim on a theory of failure to train.

20  **C.     No Evidence Supports *Monell* Liability for Failure to Discipline**

21        To state a *Monell* claim based on past complaints of misconduct, Plaintiff must prove that the

22  environment in the SFPD was such that "it was almost impossible for a police officer to suffer

23  discipline as a result of" a complaint.  *See Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)

24  (citation and internal quotation marks omitted).  It is not enough that the police department was

25  ineffective or even incompetent in overseeing citizen complaints.  "If [the department] took steps to

26  eliminate the practice, the fact that the steps were not effective would not establish that [the

27

28  and "Several supervising and/or rank and file SFPD Officers expressed racially derogatory, homicidal
and/or discriminatory statements about African-Americans, other racial minority groups"

1   department] had acquiesced in it and by doing so adopted it as a policy of the city." *Wilson v. City of*

2   *Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993).  Deliberate indifference to complaints requires a much

3   stronger showing, such as "[i]f [the police chief] had thrown the complaints into his wastepaper basket

4   or had told the office of investigations to pay no attention to them."  *Id.*

5       The City has a comprehensive process for addressing complaints against peace officers.  In

6   addition to its robust Internal Affairs unit, the Office of Citizen Complaints, a citizen review board,

7   had authority to investigate and bring misconduct charges against officers.[3]  [Waaland Decl.]

8   Plaintiff's vague, unsupported assertions that the officers engaged in misconduct in the past without

9   consequence is insufficient to establish municipal liability.

10      **D.      No Evidence Supports *Monell* Liability Under A Ratification Theory**

11      Although not pled in the Second Amended Complaint, Plaintiff appears to assert a ratification

12  theory in support of her *Monell* claim.[4]  To establish municipal liability based on ratification, plaintiff

13  must show that the "authorized policymakers approve a subordinate's decision and the basis for it."

14  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir.2004) (internal citations omitted).  For liability to attach, the

15  policymaker must have knowledge that a constitutional violation occurred and actually approve of that

16  violation.  *Id.*  Plaintiff contends that the City ratified the Defendant Officers' conduct because it did

17  not discipline them for this incident or any other.  However, failure of a police department to discipline

18  in a specific instance is not an adequate basis for municipal liability.  *Santiago v. Fenton*, 891 F.2d

19  373, 382 (1st Cir.1989). The fact that the City did not discipline defendants for this incident does not

20  establish that policymakers "made a deliberate choice to endorse" their actions.  *Gillette v. Delmore*,

21  979 F.2d 1342, 1348 (9th Cir. 1992).

22      **E.      Plaintiff Has No Evidence Of Causation To Support Her *Monell* Claim**

23      Even if Plaintiff could meet the threshold for establishing a custom or policy using the theories

24  discussed above, she must also meet the additional burden of proving causation.  "Where a plaintiff

25  _____

26      [3] Pursuant to a Charter Amendment, the Office of Citizen Complaints has since been renamed
    the Department of Police Accountability.

27      [4] Plaintiff's interrogatory responses include this statement:  "Former SFPD Chief Suhr,
    declared he Officers acted within policy and the shooting death of Mario Woods lawful before the
28  SFPD homicide of SF District Attorney's Report and/or investigations were complete."

claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees*." Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997). Plaintiff has no evidence that an alleged policy, failure in training, lack of discipline or act of ratification was the cause of a constitutional injury. Plaintiff's *Monell* claim fails because she cannot meet the added burden of establishing causation.

The Court should grant summary judgment in favor of the City on Plaintiff's claims brought under the Fourth and Fourteenth Amendments.

## IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM UNDER CALIFORNIA CIVIL CODE SECTION 52.1

Plaintiff's cause of action under California Government Code Section 52.1 is barred because Plaintiff cannot prove the elements of this claim. Plaintiff sues the Defendant Officers under the Bane Act (California Civil Code § 52.1), which prohibits interfering with "the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States or the rights secured by Constitution or laws of this state" through "threats, intimidation, or coercion." California Civil Code § 52.1(a)

Although the legislature adopted this section to "stem the tide of hate crimes," plaintiffs primarily use it to sue law enforcement. *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004) Following the recent California Court of Appeal decision in *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017), the Ninth Circuit has held that a plaintiff alleging a Bane Act claim must show first a constitutional violation, and second that the defendant acted with specific intent to violate that right. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); *see also Losee v. City of Chico*, 2018 WL 3016891 *2 (9th Cir. June 18, 2018) (granting summary judgment on Bane Act claim even when there is a question of fact about objective reasonableness of force because no evidence that officer who shot motorist had subjective intent to deprive plaintiff of his constitutional rights). Here, all of the Defendant Officers had objective reason to fear for Officer August's safety and that of the other people in the area, and reasonably used lethal force following unsuccessful attempts to subdue Woods using other means. Thus, the Defendant Officers did not

violate Woods' Fourth Amendment rights and the Court should grant summary judgment on Plaintiff's Bane Act claim.

Even if the Court finds a question of fact on the objective reasonableness of the force, Plaintiff must show the Defendant Officers acted with specific intent to violate Woods' constitutional rights to establish a Bane Act violation.  For example, in *Losee*, five officers shot at a driver of a car.  Despite finding a question of fact on qualified immunity, the Court affirmed summary judgment on plaintiff's Bane Act claim because "evidence simply showing that an officer's conduct amounts to a constitutional violation under an 'objectively reasonable' standard is insufficient to satisfy the additional intent requirement under the Bane Act."  *Losee* at *2, *citing Cornell*, 17 Cal.App.5th at 1045.  In *Losee*, the plaintiff provided no evidence that the officers "'intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances.'"  *Id.* (*quoting United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993))*; see also Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014) (noting that "speculation as to ... improper motive does not rise to the level of evidence sufficient to survive summary judgment") (*quoting Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003)).

Therefore, under both *Reese* and *Losee*, Plaintiff here must present admissible evidence that each officer not only used unreasonable force, but also that he intended to use it for the illegitimate purpose of violating Woods' constitutional rights.  The only evidence here is that each officer used force because he subjectively believed that Woods posed an imminent threat.  The numerous steps the officers took to avoid using lethal force supports the officers' testimony that they used lethal force for a legitimate purpose.  The Court should therefore grant summary judgment on Plaintiff's Bane Act claim.

Moreover, three California Court of Appeal cases decided before *Cornell* addressing the elements of Section 52.1 all held that a plaintiff must prove threats, intimidation, and coercion separate and apart from the force that plaintiff claims violated his rights.  *See Allen v. City of Sacramento*, 234 Cal.App.4th 41 (2015), *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947 (2012); *Bender v. County of Los Angeles*, 217 Cal.App.4th 968 (2013) (all holding that a plaintiff must prove unlawful threats, intimidation, or coercion independent from the underlying constitutional violation.)  Based on

that standard the defendant officers are entitled to summary judgment in their favor because none engaged in threats, intimidation or coercion separate from their use of force to take Woods into custody.  Under either standard, the Court should grant summary judgment on Plaintiff's 52.1 claim.

## V.   PLAINTIFF'S CLAIM FOR NEGLIGENCE FAILS

Plaintiff's fourth cause of action for "Wrongful death – Negligence" is brought against the Defendant Officers only, and alleges the Officers, through their negligence, caused the death of Woods.

### A.   The Negligence Claim Fails Because The Shooting Was Privileged

The test for tort liability under state law is the same as the test for unreasonable force under the Fourth Amendment.  *Hayes*, 736 F.3d at 1232 (9th Cir. 2013).  The same standard of reasonableness articulated in Graham, 490 U.S. at 397, applies.  *Hernandez v. City of Pomona*, 46 Cal 4th 501, 514 (2009).  When an officer has probable cause to arrest a suspect, he "may use reasonable force to effect the arrest" and "need not retreat or desist from his efforts to make an arrest by reason of the resistance or threatened resistance of the person being arrested." *Hernandez*, 46 Cal. 4th. 518-519; *see also*, California Penal Code § 835a.  A negligence claim cannot be premised on an officers' decision to persist in making an arrest. *Hernandez*, 46 Cal. 4th at 518-21.  "The same consideration of the totality of the circumstances is required in determining reasonableness under California negligence law."  *Id.*, *Accord, Hayes*, 736 F.3d at 1232 ("Claims of excessive force under California law are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims."); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force.  In both, a plaintiff must prove that the peace officer's use of force was unreasonable.").

Summary judgment cannot be defeated based on hindsight that some other course of action might have been "more reasonable" or led to a different outcome.  "[A]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence."  *Brown,* 171 Cal.App.4th at 537–538.

As discussed with respect to Plaintiff's Fourth Amendment claim, an officer may reasonably use deadly force when he or she confronts a suspect armed with a knife in close proximity, who fails to respond to commands and continues even after less lethal weapons are deployed. *See, Martinez*, 47 Cal.App.4th at 345 (summary judgment affirmed where officers shot suspect holding knife at his waist "with the blade pointed skyward" and who ignored commands to stop and "closed to within 10 or 15 feet" of officers and civilians). Thus, to the extent Plaintiff claims negligent shooting, this Court should grant summary judgment for the same reason that plaintiff's Fourth Amendment claim fails.

## B. The Officers Were Not Negligent In Their Pre-Shooting Conduct Because They Were Privileged To Persist In Making An Arrest And To Use Reasonable Force

Plaintiff will similarly fail if she pursues a theory that officers were negligent in their approach to Woods and thus caused him to react as he did. The California Supreme Court in *Hernandez* rejected such a claim. Finding that officers had legal cause to arrest the suspect, the Court held that there is no viable negligence theory based on officers' persistence in detaining or making an arrest. *Hernandez*, 46 Cal.4th at 518-21. When an officer has probable cause to detain or arrest a suspect, he or she is "not obliged simply to let [the suspect] go." *Id*. at 518. The officer "'is not bound to put off the arrest until a more favorable time' and is 'under no obligation to retire in order to avoid a conflict.'" *Id*. (citations omitted). "Instead, an officer may 'press forward and make the arrest, using all the force [reasonably] necessary to accomplish that purpose." *Id*. (citations omitted & italics added). "Thus, [section 835a] expressly authorized [the shooting officer] to pursue [the suspect] and to use reasonable force to make an arrest." *Id*. at 519. [5]

Here, the officers had a valid basis to detain Woods and had no duty to retreat or withdraw. They already had probable cause to arrest Woods for assault with a deadly weapon. Cal. Penal Code § 245(a)(1). Upon being confronted by officers, Woods brandished his knife, ignored several commands that he drop the knife, and advanced at Officer August with the knife. The officers thus

---

[5] Under California law, a statutory privilege defeats all tort claims, including negligence claims. *Gilmore v. Superior Court*, 230 Cal.App.3d 416, 421-422 (1991) ("A privileged act is by definition one for which the actor is absolved of any tort liability, whether premised on the theory of negligence or of intent."); *see also Horwich v. Superior Court*, 21 Cal. 4th 272, 285 (1999) (citing *Gilmore*) ("[W]hen the defendant has been justified in the use of deadly force against the decedent, the privileged nature of the conduct is a defense to all civil liability regardless of the plaintiff's status.").

had probable cause to arrest Woods for the additional crimes of delaying an investigation or resisting arrest by not surrendering the knife when ordered to do so, California Penal Code § 148(a); for assaulting Officer August when he advanced while armed with that knife, *Id.*, § 245(c); and for exhibiting a deadly weapon with the intent to resist or prevent his arrest or detention.  *Id.*, § 417.8. Under California Penal Code Section 835a, a negligence claim cannot arise from the officers' decision to press forward to confront Woods rather than retreat.  And as discussed, above, once Woods confronted the officers, holding his knife, failing to heed their commands to drop the knife, the officers acted reasonably, foreclosing both a Fourth Amendment and a negligence claim.

Plaintiffs may cite *Hayes v. County of San Diego*, 57 Cal.4th 622 (2013) to argue that factual issues concerning whether the officers' preshooting tactics were negligent preclude summary judgment.  In *Hayes*, on certification by the Ninth Circuit, the California Supreme Court addressed "[w]hether under California negligence law, liability can arise from tactical conduct and decisions employed by law enforcement preceding the use of deadly force."  *Id.* at 626.  The Court held, "as a purely legal question," that "such liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable."  *Id.*  The Court stated that "the pre-shooting conduct is only relevant … to the extent it shows, as part of the totality of circumstances, that the shooting itself was negligent."  *Id.* at 631. *Hayes* did not address and does not affect the Defendant Officers' statutory privileges to use force against Woods in the situation they faced.  Those privileges are discussed below.

Even on the duty issue, the Court acknowledged that "[a]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence."  *Hayes*, 57 Cal.4th at 632 (quoting *Brown*, 171 Cal.App.4th at 537-38). Under this standard, summary judgment would be warranted even if Penal Code Section 835a didn't expressly authorize the officers to arrest Woods.

### C.   The Officers Enjoy Statutory Immunity Under California Penal Code § 196 And Government Code §§ 821.6 and 820.6

Even if Plaintiff could state a claim for negligence, the officers – the only defendants named in the negligence cause of action – are immune from suit pursuant to three separate, independent immunities.

First, the officers are immune under California Penal Code § 196.[6]   "The test for determining whether a homicide was justifiable under … section 196 is whether the circumstances 'reasonably create[d] a fear of death or serious bodily harm to the officer or to another." *Id.* (quoting *Martinez*, 47 Cal.App.4th at 349). Thus, the test for that privilege is the same as that governing the reasonableness of deadly force under the Fourth Amendment.  As explained above, the circumstances reasonably created in the minds of each of the defendants a fear of death or serious bodily harm to Officer August, triggering the immunity of § 196.  Summary judgment should be granted for this reason alone.

Second, the officers are immune under California Government Code § 821.6.[7]  This immunity applies to the tactical conduct and decisions during the investigation and other activities in response to a call for help, regardless of whether the officers have developed probable cause to make an arrest.  If Plaintiff advances a theory that the officers' efforts at investigation and information-gathering, namely attempts to arrest Woods, were unreasonable and deficient, Section 821.6 immunizes that conduct under state law.  Section 821.6 immunity extends beyond prosecuting attorneys to include all employees of a public entity, including police officers.  *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 756-57 (1997); *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1208-09 (1994).  Pursuant to this immunity, summary judgment is warranted on Plaintiff's negligence claim.

---

[6] §196 states: "Homicide is justifiable when committed by public officers … when necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty …." "There can be no civil liability under California law as the result of a justifiable homicide."  *Brown*, 171 Cal.App.4th at 533 (quoting *Martinez*, 47 Cal.App.4th at 349); *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1159 (E.D. Cal. 2005).

[7] Cal. Gov. Code §821.6 provides: A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

1    Third, the officers are immune under California Government Code § 820.6.[8] This immunity

2  applies, because the officers at the very least acted without malice and under the good faith belief that

3  Penal Code section 196 and 835a authorized their actions. The "good faith immunity" of § 820.6 is a

4  state law statutory analogue to the federal doctrine of qualified immunity. *County of Los Angeles v.*

5  *Superior Court*, 181 Cal. App. 4th 218, 231 (2009), *as modified* (Jan. 22, 2010) (referring to

6  "Government Code § 820.6 qualified immunity"); *City of South Lake Tahoe v. California Tahoe*

7  *Regional Planning Agency*, 625 F.2d 231, 239 (9th Cir. 1980) (noting similarities with federal

8  qualified immunity).  Because the officers are immune under 820.6, the negligence claim is barred.

9                                          **CONCLUSION**

10    For the foregoing reasons, this Court should grant summary judgment in favor of defendants.

11

12  Dated:  August 22, 2018

13                                          DENNIS J. HERRERA
                                            City Attorney
14                                          CHERYL ADAMS
                                            Chief Trial Attorney
15                                          SEAN F. CONNOLLY
                                            JAMES F. HANNAWALT
16                                          KELLY COLLINS
                                            Deputy City Attorneys
17
                                     By:___*/s/ Cheryl Adams*_____
18                                          CHERYL ADAMS

19                                          Attorneys for Defendants
                                            CITY AND COUNTY OF SAN FRANCISCO, ET AL.
20

21

22

23

24

25

26  _____

27    [8] Cal. Gov. Code § 820.6  provides:  If a public employee acts in good faith, without malice,
   and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is
28  not liable for an injury caused thereby except to the extent that he would have been liable had the
   enactment been constitutional, valid, and applicable."