# Exhibit K

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3   GWENDOLYN WOODS, individually
    and as Successor in Interest
4   to Decedent MARIO WOODS,

5                    Plaintiff,
                                          Case No.
6   vs.                                   15-cv-05666 WHO

7   CITY AND COUNTY OF SAN
    FRANCISCO, a municipal
8   corporation; CHARLES AUGUST,
    Police Officer for the City
9   and County of San Francisco;
    NICHOLAS CUEVAS, Police
10  Officer for the City and
    County of San Francisco;
11  WINSON SETO, Police Officer
    for the City and County of San
12  Francisco; ANTONIO SANTOS,
    Police Officer for the City
13  and County of San Francisco;
    SCOTT PHILLIPS, Police Officer
14  for the City and County of San
    Francisco; and DOES 1-50,
15  individually and in their
    official capacities as Police
16  Officers for the City and
    County of San Francisco,
17  inclusive,

18                   Defendants.
    _____/

19
                    Videotaped Deposition of
20                 MARCEL SHEPARD GARDNER
                    VOLUME I (Pages 1 - 94)
21                Wednesday, November 9, 2016

22  Reported by:  MELISSA HAMMERNESS, CSR No. 4739

23                BONNIE WAGNER & ASSOCIATES
                   Court Reporting Services
24                1819 Polk Street, Suite 446
                  San Francisco, California 94109
25                     (415) 982-4849

                                                         1

```
1                          I N D E X
2    Examination by:                                Page
3         Mr. Connolly                                7
4                        E X H I B I T S
5    Defendants' Exhibits
6    1    Defendants City and County of San
7         Francisco, et al.'s Renotice of Taking
8         the Deposition of Third Party Witness,
9         dated October 26, 2016; USDC Subpoena
10        to Testify at a Deposition in a Civil
11        Action, dated 10/26/2016                    11
12   2    United States District Court Subpoena
13        to Testify at a Deposition in a Civil
14        Action, dated 11/07/2016                    11
15   3    One-page document marked "CONFIDENTIAL –
16        SUBJECT TO PROTECTIVE ORDER"
17        Bates Stamp No. CCSF_WOODS 000359           68
18   4    One-page document marked "CONFIDENTIAL –
19        SUBJECT TO PROTECTIVE ORDER"
20        Bates Stamp No. CCSF_WOODS 000358           68
21   5    One-page document marked "CONFIDENTIAL –
22        SUBJECT TO PROTECTIVE ORDER"
23        Bates Stamp No. CCSF_WOODS 000646           70
24   [Defendants' Exhibits 3–5 marked CONFIDENTIAL and
25   bound under separate cover.]
                                                      2
```

MARCEL SHEPARD GARDNER                NOVEMBER 9, 2016

1                        I N D E X

2                      (Continued)

3

4              Questions not answered:

5                  Page        Line

6                   13          24

7                   19           4

8                   23          24

9                   24           4

10                  32          23

11                  45          15

12                  45          20

13                  45          24

14                  46           3

15                  46          11

16                  46          14

17                  46          18

18                  46          22

19                  48          16

20                  48          19

21                  49          12

22

23

24

25

                                              3

MARCEL  SHEPARD  GARDNER            NOVEMBER  9,  2016

1          BE IT REMEMBERED that, pursuant to Re-Notice

2     of Taking Deposition of Third Party Witness and on

3     Wednesday, the 9th of November, 2016, commencing at the

4     hour of 10:32 a.m. thereof, at the OFFICE OF THE CITY

5     ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO, Fox Plaza,

6     1390 Market Street, Seventh Floor, San Francisco,

7     California 94102-5408, before me, MELISSA HAMMERNESS,

8     CSR No. 4739, personally appeared

9

10                    MARCEL SHEPARD GARDNER,

11

12    called as a witness by the Defendants; who, being by me

13    first duly sworn, was thereupon examined and

14    interrogated as hereinafter set forth.

15

16

17

18

19                         ---oOo---

20

21

22

23

24

25

                                                              4

MARCEL SHEPARD GARDNER                    NOVEMBER 9, 2016

```
1                    A P P E A R A N C E S

2              LAW OFFICES OF JOHN L. BURRIS, Airport

3    Corporate Centre, 7677 Oakport Street, Suite 1120,

4    Oakland, California 94621, represented by DEWITT M.

5    LACY, Esquire, appeared as counsel on behalf of the

6    Plaintiff.

7              OFFICE OF THE CITY ATTORNEY, CITY AND COUNTY

8    OF SAN FRANCISCO, Fox Plaza, 1390 Market Street, Seventh

9    Floor, San Francisco, California 94102-5408, represented

10   by SEAN F. CONNOLLY, Deputy City Attorney, appeared as

11   counsel on behalf of the Defendants.

12             BAYVIEW HUNTERS POINT COMMUNITY LEGAL, 4622

13   3rd Street, San Francisco, California 94124, represented

14   by HILARY HAMMELL, Esquire, and GENEVIEVE GUERTIN,

15   Esquire, appeared as counsel on behalf of the Deponent.

16             ALSO PRESENT:  BREANA POZZI, Videographer

17             SFPD OFFICER ANTONIO SANTOS

18             SFPD OFFICER WINSON SETO

19             SFPD OFFICER CHARLES AUGUST

20

21

22                         ---oOo---

23

24

25
                                                          5
```

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016

```
1    to introduce themselves for the record, starting on my

2    right.

3              MR. CONNOLLY:  Sean Connolly, Deputy City

4    Attorney, on behalf of Defendants.

5              OFFICER SANTOS:  Officer Antonio Santos,

6    San Francisco Police Department.

7              OFFICER SETO:  Officer Winson Seto,

8    San Francisco Police Department.

9              MR. LACY:  Dewitt Lacy for the plaintiff,

10   Gwendolyn Woods.

11             MS. GUERTIN:  Genevieve Guertin with Bayview

12   Hunters Point Community Legal.

13             MS. HAMMELL:  Hilary Hammell for Non-party

14   Witness Marcel Shepard Gardner.

15             THE VIDEOGRAPHER:  Thank you.

16             Our court reporter can now administer the

17   oath.

18                        ---oOo---

19             MARCEL SHEPARD GARDNER,

20      having been duly sworn by the Certified Shorthand

21          Reporter, testified as follows:

22          EXAMINATION BY MR. CONNOLLY

23             MR. CONNOLLY:  Q.  Okay.  Can you please

24   identify yourself for the record, sir.

25        A.   Marcel Shepard Gardner.
```

                                                    7

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016

1      Q.   Mr. Gardner, can you see those items that have

2  been marked 1 and 2?

3      A.   Yep.

4      Q.   Do you recognize them to be a -- what we call

5  a "notice" and a "subpoena"?

6      A.   Yeah.

7      Q.   Is it your understanding that you were

8  subpoenaed to be here today?

9      A.   Yeah.

10     Q.   Okay.  And you understand the subpoena is a

11 court order?

12     A.   That's why I'm here; right?

13     Q.   Okay.  So I'm going to ask you -- just so you

14 know -- big picture -- I'm going to ask you a little bit

15 about yourself and your background.  I'm going to ask

16 you a little bit about things you may have done in

17 preparation for this deposition.  I'm going to ask you

18 about this incident in December of last year and maybe

19 some follow-up questions.  That's broadly the topic

20 areas we're going to go over.

21          How old are you, sir?

22     A.   27.

23     Q.   And where were you born?

24     A.   San Francisco.

25     Q.   Were you raised in San Francisco as well?

                                                        12

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016

1          MR. LACY:  I would add compound to that.

2          MR. CONNOLLY:  Q.  Okay.  Let's talk about the

3   incident itself involving you when you were stabbed.  Do

4   you remember the date and time?

5      A.  I just know it happened in December.

6      Q.  Okay.  Do you recall what time of day it was?

7      A.  It's daylight.  So that's the only thing I

8   remember.

9      Q.  Do you remember if it was the morning or the

10  afternoon?

11     A.  Afternoon.

12     Q.  Okay.  And on that afternoon, do you recall

13  what you were doing in the previous hour before you were

14  stabbed?

15         MS. HAMMELL:  Objection.  Privacy.

16         You don't have to answer what you were doing.

17         THE WITNESS:  Okay.

18         MR. CONNOLLY:  Q.  Were you stabbed on that

19  afternoon?

20     A.  Yes.

21     Q.  Okay.  Can you please explain the

22  circumstances leading up to that stabbing?

23     A.  As far as I remember, I was minding my own

24  business, eating a cheeseburger, hanging out with some

25  people.  And I was being badgered by somebody on the

                                                    49

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016

1              MR. LACY:  If you can, Mr. Gardner -- and I

2    know you want to answer the questions, but if there's an

3    objection, let us finish the objection just so we can

4    have a clear record, okay?

5              THE WITNESS:  Okay.

6              MR. LACY:  Because it's really hard for her to

7    take down both of our voices at the same time.  She's

8    trying her best and so am I.  Thanks.

9              THE WITNESS:  Sorry, guys.  I didn't know.

10             MR. CONNOLLY:  Q.  So you were hanging out

11   with two women.  Were you hanging out with them in the

12   car?

13        A.  Yes.

14        Q.  Okay.  And who -- do you know who owned the

15   car?

16        A.  Yes, I know who owned the car.

17        Q.  Who owned the car?

18        A.  It was the lady friend I was talking to at the

19   time who owned the car.

20        Q.  Okay.  And where in the car were you

21   positioned?

22        A.  I was positioned in the driver's seat.

23        Q.  Driver front seat or driver rear seat?

24        A.  Driver front seat.

25        Q.  Okay.  And from that point on when you were in

                                                      54

1    the driver front seat of that person's car, take me

2    through what happened from there, step by step.

3         A.    Like I said, I was chilling in the car.  Guess

4    Mr. Woods, he was under the influence of something.

5         Q.    Can I stop you there?  Do you know Mr. Woods?

6         A.    No.

7         Q.    Had you ever met him before?

8         A.    No.

9         Q.    Had you ever seen him in the neighborhood

10   before?

11        A.    No.

12        Q.    Do you know now that that was Mr. Woods even

13   though you didn't know him at the time?

14        A.    Yeah.  I know him now, yeah.  I know who

15   he -- well -- well, who he is now, yeah.

16        Q.    Right, right.  Why do you say he was under the

17   influence of something?

18        A.    Have you ever seen anybody on drugs?

19        Q.    Why do you say that he was under the influence

20   of something?

21             MS. HAMMELL:  You can answer.

22             THE WITNESS:  Okay.  So in my lifetime, I have

23   seen many people on drugs, so I kind of know what

24   somebody looks like under the influence of drugs,

25   Mr. Connolly.  So, like I said, Mr. Woods seemed like he

MARCEL SHEPARD GARDNER                 NOVEMBER 9, 2016

1  was under the influence of some type of drug; and he was

2  just having the side effects of whatever drug he was on.

3       MR. CONNOLLY:  Q.  Okay.  And what -- and what

4  were -- what were those side effects --

5       A.  Agitation, paranoia.

6       Q.  -- of those drugs?

7            Okay.  Thank you.

8            MR. LACY:  What was the question?  I'm sorry.

9  I didn't hear it.  I didn't hear the question.

10           MR. CONNOLLY:  I can re-ask it.

11      Q.  What were the signs that he was under the

12  influence of something?

13           MR. LACY:  Okay.  My objection is calls for

14  speculation.  Lacks foundation.  And this question calls

15  for expert opinion that he's not properly prepared to

16  give.

17           MR. CONNOLLY:  The witness is entitled to give

18  a lay opinion.

19           MR. LACY:  Sure.

20           MR. CONNOLLY:  Actually, there's foundation

21  because he said he's experienced in seeing people under

22  the influence of drugs before.  So I'm allowed to ask

23  about that.

24           MR. LACY:  I didn't say he couldn't answer.

25  I'm making my objection.

MARCEL SHEPARD GARDNER          NOVEMBER 9, 2016

1          MR. CONNOLLY:   Q.   Did you have any contact

2    with Mr. Woods after you got outside of the car?

3          MR. LACY:   Same objections.

4          THE WITNESS:   All I know is, after I got out

5    the car, I was stabbed.   So that was -- that's pretty

6    much, like, the only thing I can remember from that day.

7          MR. CONNOLLY:   Q.   So there was a period of

8    time, though, when there was no window separating you

9    and Mr. Woods; is that right?

10         A.   Yes.

11         Q.   And in that period of time, did he talk, or

12   did you hear him speak?

13         A.   He may have been mumbling something, but I

14   wasn't really worried about what he was mumbling.   I was

15   more worried about what was in his hand at the time.

16         Q.   But he was mumbling?

17         A.   Mumbling.   Slurring.   Saying something.   I was

18   really more -- I wasn't really, like I said, worried

19   about what he was saying.   I was more so worried about

20   what he had in his hand, sir.

21         Q.   All right.   I understand that.   I'm going to

22   ask you about that, but right now I'm focused on the

23   words.

24         A.   I just told you the answer, sir.   I don't

25   remember what he was saying.   This has happened --

59

MARCEL SHEPARD GARDNER                NOVEMBER 9, 2016

```
 1                MR. CONNOLLY:  Sorry?  What did you say?
 2                MR. LACY:  I said I need to go to the
 3     restroom.
 4                MR. CONNOLLY:  Do you want to take a break and
 5     go off the record?
 6                MR. LACY:  Unless you want me to go right
 7     here, Counsel.
 8                MR. CONNOLLY:  What do you want to do?
 9                MR. LACY:  I want to go to the restroom.
10                MR. CONNOLLY:  You want to take a break.  Go
11     off the record.  I guess we're going off the record.
12                THE VIDEOGRAPHER:  Going off the record at
13     11:47.
14                (Recess taken:  11:47 until 11:58 a.m.)
15                THE VIDEOGRAPHER:  We're back on record at
16     11:58.
17                MR. CONNOLLY:  Q.  Okay.  So, Mr. Gardner,
18     going back to the day you were stabbed.  You were on the
19     sidewalk --
20          A.   Uh-huh.
21          Q.   -- speaking with some friends.  Mr. Woods had
22     some kind of contact with you.  Let me ask the ultimate
23     question:  Were you stabbed?
24          A.   Yes, I was stabbed.
25          Q.   Did someone stab you?
```

61

MARCEL SHEPARD GARDNER                    NOVEMBER 9, 2016

1          A.    Yes.

2          Q.    Who stabbed you?

3                MS. HAMMELL:  Objection.  Calls for

4     speculation.

5                MR. CONNOLLY:  Q.  Who stabbed you?

6                MS. HAMMELL:  You can answer.

7                THE WITNESS:  It was Mr. Woods.

8                MR. CONNOLLY:  Q.  And how many times did he

9     stab you?

10         A.    As far as that goes, I don't recall.  I just

11    know that I was stabbed.  Can't recall exactly what was

12    going on at that very moment.

13         Q.    And where were you stabbed?

14         A.    My arm.

15         Q.    Which part of your arm?

16         A.    My shoulder.

17         Q.    Do you recall being stabbed any other place on

18    your body?

19         A.    No.

20         Q.    Do you -- let me ask you.  Listen carefully.

21    Do you know why you were stabbed?

22         A.    No.

23         Q.    Okay.  Did you do anything to cause Mr. Woods

24    to stab you?

25         A.    If sitting in a car presents somebody getting

                                                        62

```
 1    stabbed, I would -- that's the only thing I was doing.

 2         Q.    Okay.  So did you have a weapon on you that

 3    day of any kind?

 4         A.    No.

 5         Q.    Did you -- in your mind, did you do anything

 6    to provoke him?  Did you say anything to him or

 7    challenge him in any way?

 8         A.    No.

 9         Q.    So he just, for no real reason, just came up

10    and picked a beef with you and ended up stabbing you?

11         A.    Yes.

12         Q.    At some point, you got out of that car we were

13    talking about; correct?

14         A.    Yeah.

15         Q.    Can you take it from there and tell me step by

16    step what happened after you got out of the car?

17         A.    Mr. Woods attempted to break my window out.

18         Q.    Okay.  And by doing what?  Banging on it?

19    Kicking it?

20         A.    Banging on it.

21         Q.    Okay.  It was at that point you decided to get

22    out of the car?

23         A.    Yes.

24         Q.    At the time you were still in the car and

25    Mr. Woods was banging on the window, could you see a
```

63

MARCEL SHEPARD GARDNER                    NOVEMBER 9, 2016

1        A.    I ultimately went to the hospital.

2        Q.    Which hospital?

3        A.    General.

4        Q.    Did you go directly there?

5        A.    Yeah.

6        Q.    Did you drive or your friend drove?

7        A.    I drove.

8        Q.    Did you go to the emergency room?

9        A.    I was outside.   I didn't necessarily -- I kind

10   of hesitated to go inside.

11       Q.    Why?

12       A.    Because I didn't want to deal with any police

13   officers.   And police officers and stabbings and

14   shootings all kind of go together.   So I didn't want to

15   kind of be involved in stuff where I was going to be

16   asked a whole lot of questions about something that had

17   just happened to me, and I didn't have any kind of --

18   didn't do anything wrong about it.

19            But, you know, with everything that's been

20   going on, it doesn't matter if you done anything wrong

21   or not.   So that's part of the reason why I kind of

22   hesitated to go inside.   Kind of got drug inside by a

23   nurse that kind of just seen me bleeding on the outside.

24       Q.    Did she -- I mean, did she literally drag you

25   in or did you --

74

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016

1       A.   Literally drug me in by my arm, because I was

2   kind of trying to stay outside and kind of think whether

3   or not what —— if I wanted to go inside or not.

4       Q.   Okay.  But you drove yourself to the hospital?

5       A.   Yes.

6       Q.   To San Francisco General?

7       A.   Yes.

8       Q.   You got there.  You waited outside.  Outside

9   the emergency room or some other part of the hospital?

10      A.   Yeah.

11      Q.   Outside the emergency room?

12      A.   Outside —— or in the parking lot.

13      Q.   Okay.  And at some point, a nurse or some

14  other medical personnel saw you and dragged you into the

15  hospital?

16      A.   Pretty much, yes.

17      Q.   Were you treated there?

18           MS. HAMMELL:  You can answer.

19           THE WITNESS:  Yes.

20           MR. CONNOLLY:  Q.  You have to understand,

21  there are a lot of things that we know, but the source

22  of information has to come from you.

23      A.   I get it.  I get it.

24      Q.   Okay?

25      A.   I get that ——

                                                      75

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016

1          Q.   Well --

2          A.   -- but it's just like you guys have a picture

3     of evidence and stuff.  I mean, I thought that would be

4     good enough, but, okay, I guess not.

5          Q.   No, not always.  Sometimes we need to hear it

6     from the source of the -- where the source of the

7     information is, and that's what we're doing here.

8               You were treated, I presume?

9          A.   Uh-huh.

10         Q.   Is that a "yes"?

11         A.   Yes.

12         Q.   And when you -- once you had been treated, did

13    you, in fact, speak to any police officers?

14         A.   From what my recollection was, I spoke to a

15    sheriff.  I didn't speak to an SFPD officer.

16         Q.   Okay.  And why do you think it was a sheriff

17    that you spoke to?

18         A.   Because sheriffs wear beige clothing and not

19    blue.

20         Q.   Right.  Okay.  And this person you spoke to

21    was wearing a sheriff's uniform?

22         A.   Yes.

23         Q.   They had a badge?

24         A.   Yes.

25         Q.   Did he or she ask you what happened?

                                                      76

MARCEL SHEPARD GARDNER          NOVEMBER 9, 2016

1    them, and that was it.

2         Q.   Do you recall seeing a photo lineup?

3         A.   Yeah --

4         Q.   Okay.

5         A.   -- but I don't remember all the -- I just

6    remember that it was a lot of faces that I recognized

7    from it.  But it was, like, okay, what was the point of

8    the face lineup if I already had told them it was a

9    person who they killed in the video.

10        Q.   So did you identify Mario Woods as one of

11   those photographs as the person who stabbed you?

12        A.   I identified the person in the video.

13        Q.   Did you identify the photograph of Mario Woods

14   as the person who stabbed you?

15        A.   I identified the person in the video.

16        Q.   That's not my question.  Do you recall

17   identifying Mario Woods in one of the photographs?

18        A.   No.

19        Q.   You don't recall that?

20        A.   No.

21        Q.   Okay.  Do you recall that interview being

22   tape-recorded?

23        A.   No.

24        Q.   Okay.  So -- but you do recall identifying the

25   person in the video who was shot by the police as the

80

1    same person who stabbed you?

2         A.    Yes.

3         Q.    Okay.   And you understand his name now to be

4    Mario Woods?

5         A.    Yes.   Also because I was told that the DNA on

6    the knife matched up with what the DNA was with me.

7         Q.    Going back to the interview at the hospital

8    speaking to police officers, I know you testified today

9    that you remember speaking to the deputy sheriff but

10   that you don't have a specific recollection of speaking

11   to any San Francisco police officer.   Is that correct?

12             MS. HAMMELL:   Objection.   Asked and answered.

13             THE WITNESS:   Huh?

14             MS. HAMMELL:   Asked and answered.

15             But you can answer.

16             THE WITNESS:   I thought I already answered

17   that question.

18             MS. HAMMELL:   Right, but you can answer it

19   again.   I'm just objecting for the record.

20             THE WITNESS:   Okay.   So do I have to say

21   anything else?

22             MR. CONNOLLY:   Q.   Yeah.   You have to answer

23   the question.

24             MS. HAMMELL:   You have to answer his question

25   even though you already answered it before.

                                                          81

MARCEL SHEPARD GARDNER               NOVEMBER 9, 2016

1          THE WITNESS:  Well, what was the question

2    again?

3          MR. CONNOLLY:  Can you read back the question,

4    Madam Court Reporter.

5          THE WITNESS:  What a way to spend the holiday.

6          (Whereupon, page 81, line 7 through line 11 of

7    the record was read.)

8          THE WITNESS:  Correct.

9          MR. CONNOLLY:  Q.  Do you have any

10   recollection of giving any police officer or the sheriff

11   a physical description of the person who stabbed you?

12        A.   The description that I remember giving was

13   that I said something about a person being -- wearing

14   all black and that what he -- I was like, "What you want

15   me to say?  He looks like a nigger or something?"  Like,

16   you know, that's what I was pretty much saying to the

17   cop.  That's what I remember saying.

18        Q.   I just want you to tell me what you told them.

19        A.   I just told you.

20        Q.   Did you tell them he had green shoes on, the

21   person who stabbed you?

22        A.   I don't remember saying that.

23        Q.   Did you tell the police that he had a beanie

24   or hat on?

25        A.   I remember saying that he had -- he was

                                                    82

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016

1    wearing all black, and he had -- probably had a black

2    hat on, yes.  I remember saying that he was wearing all

3    black clothing.

4         Q.   Do you recall any discussion about green

5    shoes?

6         A.   No.

7         Q.   Do you recall what color shoes Mario Woods was

8    wearing on the day he stabbed you?

9         A.   No.  Green shoes?  These questions --

10        Q.   Do you remember, during any interview with

11   police officers, telling them that at the time of the

12   incident you were minding your own business and Woods

13   took you by surprise?

14             MS. HAMMELL:  Objection.  Lacks foundation.

15   Calls for speculation.  Mischaracterizes prior testimony

16   and evidence.

17             THE WITNESS:  I don't recall that statement,

18   sir.

19             MR. CONNOLLY:  Q.  Do you recall telling

20   police officers at any point that Woods was trying to

21   kill you?

22        A.   I don't recall.

23        Q.   Do you recall telling police officers you were

24   just trying to stay alive during the altercation?

25        A.   I don't remember any of that, sir.

83

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016



CCSF_WOODS 000359

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

CCSF_WOODS 000358

DEPOSITION EXHIBIT
GARDNER

1                    CERTIFICATE OF REPORTER

2          I, MELISSA HAMMERNESS, a Certified Shorthand

3     Reporter, do hereby certify:

4          That MARCEL SHEPARD GARDNER, the witness in the

5     foregoing deposition, was by me duly sworn to testify to

6     the truth, the whole truth, and nothing but the truth in

7     the within-entitled cause;

8          That said deposition was reported by me at the

9     time and place therein stated and was thereafter

10    transcribed as herein set forth;

11         I further certify that I am not interested in the

12    outcome of said action, nor of counsel or attorney for

13    either or any of the parties in the foregoing deposition

14    and caption named, nor connected with, nor related to

15    any of the parties in said action or to their respective

16    counsel.

17         IN WITNESS WHEREOF I have hereunto set

18    my hand this _17th_ day of _November_, 2016

19

20    _____

21         MELISSA HAMMERNESS, CSR No. 4739

22

23

24

25

                                                        91

MARCEL SHEPARD GARDNER              NOVEMBER 9, 2016