# Exhibit Y

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

---oOo---

GWENDOLYN WOODS, individually)
and as Successor in Interest )
to Decedent MARIO WOODS,      )
                              )
              Plaintiff,      )
                              )
         vs.                  ) CASE NO.:  3:15-05666-WHO
                              )
CITY AND COUNTY OF            )
SAN FRANCISCO; a municipal    )
corporation, et al,           )
                              )
              Defendants.     )
_____)
CERTIFIED COPY




        PMK DEPOSITION OF LIEUTENANT WILFRED WILLIAMS

              WEDNESDAY, AUGUST 15, 2018












        REPORTED BY:  KELLY L. MCKISSACK, CSR #13430

1

```
1                    I N D E X

2

3   EXAMINATION BY:                        PAGE

4   MR. BUELNA                              6

5

6                     --o0o--

7

8

    Appearance Page                         3
9
    Exhibit Page                            4
10
    Location                                5
11
    Reporter's Certificates                 35
12
    Deponent Signature Page                 36
13
    Deponent Signature Waiver               37
14
    Witness Letter                          38
15
    Changes and/or Corrections              39
16
    Attorney's Notes                        40
17

18

19                    --o0o--

20

21

22

23

24

25

                                             2
```

```
 1                          APPEARANCES

 2

 3   FOR THE PLAINTIFF:

 4        LAW OFFICES OF JOHN L. BURRIS
          Airport Corporate Centre
 5        7677 Oakport Street, Suite 1120
          Oakland, California  94621
 6        (510) 839-5200

 7        BY:  PATRICK BUELNA,  ATTORNEY AT LAW

 8

     FOR THE DEFENDANTS:
 9
          OFFICE OF THE CITY ATTORNEY
10        1390 Market Street, 6th Floor
          San Francisco, California 94102
11        415-554-3863

12        BY:  JAMES F. HANNAWALT, DEPUTY CITY ATTORNEY
               KELLY COLLINS, DEPUTY CITY ATTORNEY
13

14

15                        --o0o--

16

17

18

19

20

21

22

23

24

25
                                                        3
```

DEPOSITION OF PMK LIEUTENANT WILFRED WILLIAMS

```
 1                          INDEX OF EXHIBITS

 2

 3   PLAINTIFF'S              DESCRIPTION                  PAGE

 4

 5                      (No Exhibits Marked.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1           Pursuant to Notice of Taking Deposition, and

2      on Wednesday, August 15, 2018, commencing at the hour of

3      4:46 p.m., thereof, at 7677 Oakport Street, Suite 1120,

4      Oakland, California 94621, before me, KELLY MCKISSACK,

5      CSR No. 13430, a Certified Shorthand Reporter and

6      Deposition Officer of the State of California, there

7      personally appeared:

8

9               LIEUTENANT WILFRED WILLIAMS,

10

11     called as a witness by the Plaintiff, who having been

12     duly sworn by me, to tell the truth, the whole truth and

13     nothing but the truth, testified as hereinafter set

14     forth:

15

16                        --o0o--

17

18

19

20

21

22

23

24

25

5

1    give me an answer, correct?

2        A.   Yes.

3        Q.   So I'd like you to estimate if I ask for it,

4    but don't speculate.

5        A.   Yes.

6        Q.   I think that's it.

7             All right.  So how long -- or is it your

8    understanding that you're here today on behalf of the

9    San Francisco Police Department?

10       A.   Yes.

11       Q.   And are you here because you are the person

12   most knowledgeable regarding the training the defendant

13   officers received on implicit bias prior to the incident

14   and any formal policies that exist on the development

15   and training on implicit bias in the San Francisco

16   Police Department prior to the incident?

17       A.   Yes.

18       Q.   Okay.  Now, Lieutenant Williams, how long have

19   you worked for the San Francisco Police Department?

20       A.   Twenty-six years.

21       Q.   And how -- have you been a lieutenant for all

22   those 26 years?

23       A.   I've been a lieutenant since 2015,

24   September 2015.

25       Q.   And prior to becoming a lieutenant in 2015

8

1      Q.   And what kind of -- what would be the title of

2  your classes, if you had one?

3           MS. COLLINS:  Objection.  Vague as to time.

4  BY MR. BUELNA:  Q.   Presently.

5      A.   Presently it's called, "Principle Policing,

6  Procedural Justice and Implicit Bias."

7      Q.   And is it fair to say that your class had a

8  different title at some point prior to this?

9      A.   Yes.

10     Q.   And what was that title?

11     A.   That title was called, "Implicit Bias,

12  Remaining Fair and Impartial."

13     Q.   And if you can recall, did you have any other

14  titles for your classes?

15     A.   "Racial Profiling."

16     Q.   Are those -- does that exhaust the list or is

17  there more?

18     A.   That would exhaust the list that I have

19  instructed or facilitated.

20     Q.   And when did your class change from, for

21  example, Implicit Bias, Remaining Fair and Impartial to

22  Principle Police Procedural Justice and Implicit Bias?

23     A.   So in 2015 and 2016 it was Implicit Bias,

24  Remaining Fair and Impartial.  As of January 2017 it

25  became Principle Policing, Procedural Justice and

10

1   Implicit Bias.

2       Q.   Can you repeat one more time the last one.  Is

3   it from 2016 to now?

4       A.   So from 2015 -- in 2015 to 2016 it was,

5   "Implicit Bias, Remaining Fair And Impartial."  And then

6   in January of 2017 the title was, "Principle Policing,

7   Procedural Justice and Implicit Bias."

8       Q.   And prior to the 2015 you had it as Racial

9   Profiling; is that correct?

10      A.   Correct.

11      Q.   And for approximately how long?

12      A.   So it was a state-mandated course as of, if I

13  remember correctly, 2004.  So as of 2004 through 2015 it

14  was Racial Profiling.

15      Q.   Do you recall approximately the date in 2015

16  that it switched?

17      A.   We began teaching it in January of 2015.

18      Q.   Now, I realize the titles are different for

19  all three of these.  Is the substance also different?

20      A.   So the premise is for the most part the same

21  in each one of those classes, the premise.  Now, the

22  context or the delivery may have evolved, but the

23  premise remained the same.

24      Q.   And I'm talking now specifically about the

25  2004 to 2015 Racial Profiling class.  Was that in a

11

1    Officer August and Officer Phillips were the only ones

2    that did that class?

3         A.   If I remember correctly, yes.  If I remember

4    correctly.

5         Q.   However, to your knowledge, the other

6    remaining officers would have either completed the

7    Racial Profiling class or -- and/or the 2017 Principle

8    Policing, Procedural Justice, Implicit Bias class,

9    correct?

10        A.   As far as the Racial Profiling class, remember

11   every -- yes.  If you were a -- if you are a peace

12   officer in the state of California, you were mandated in

13   2004 to attend the Racial Profiling class.  So, yes.

14   They attended.  It would be fair to say that they've

15   attended the Racial Profiling class.  So, yes, to answer

16   your question.  Did that answer your question?

17        Q.   You did.

18        A.   Okay.

19        Q.   Now, I know you hold the class for the

20   Implicit Bias training as we've discussed for the last

21   half hour.  Do you do any other individual training or

22   any other training as it relates to implicit bias with

23   the officers?

24        A.   Yes.

25        Q.   What is that other training that you do?

24

1    rid of implicit bias, right.  It's not something that

2    you just take a class and you lose, right.

3           But it's a -- it's a training.  It's an

4    awareness piece that hopefully that it enables officers

5    to have a awareness that they may be going down a path

6    and maybe they need to stop, right.  You know, that I

7    shouldn't do this or I shouldn't go in that direction.

8           And so with that being the case, there's no --

9    there's no magic bullet.  There's nothing that will wipe

10   away implicit bias.  But hopefully you become more aware

11   that it's there.  You control these things a little

12   better.

13   BY MR. BUELNA:  Q.  Is there any written test?

14        A.   There's no written test.

15        Q.   All right.  I think I'm done.

16                      EXAMINATION

17   BY MS. COLLINS:  Q.  Just a couple questions.

18           Lieutenant Williams, you were asked about the

19   three specific courses that you have instructed.  The

20   Racial Profiling; the Implicit Bias, Remaining Fair and

21   Impartial; and the Principle Policing, Procedural

22   Justice and Implicit Bias.  Are the concepts that you

23   teach within those classes exclusive to those classes?

24        A.   No.  Those concepts are day-one topics at the

25   San Francisco Police Academy.  So when we talk of

                                                          30

1    procedural justice, when we talk of remaining fair and

2    impartial, when we talk of respect, voice neutrality,

3    fair treatment, those are concepts and topics that are

4    taught throughout the 34 weeks within the academy.

5              And on top of it they -- there's even -- it's

6    even more of a conversation in the ethics class, right.

7    So there is a specific ethics class on top of the racial

8    profiling class or on top of the principle policing

9    class.  They have a ethics class.  And the concepts of

10   fairness and respect is even more -- it's discussed even

11   more in the ethics class as well.

12        Q.   Do those concepts continue throughout field

13   training and other advanced officer trainings?

14        A.   So throughout -- throughout the officer's

15   career somehow they are constantly -- they're being

16   spoke of, talked about or coming up.

17        Q.   Okay.  Now, you were asked about your

18   knowledge as to whether the defendant officers had

19   completed the Implicit Bias, Remaining Fair and

20   Impartial training in 2015 through 2016.  And you spoke

21   specifically about knowing Officers August and Phillips

22   had completed that training; is that correct?

23        A.   Correct.

24        Q.   Do you have any reason to believe that

25   Officers Santos, Seto and Cuevas did not complete that

31

1   requirement in that two-year window?

2           A.    2015, 2016?

3           Q.    Yes.

4           A.    So I believe, right, if I remember correctly,

5   that those officers as well were able to attend the

6   training.  But just not in that -- that window of 2015.

7   But I think after the fact I do believe that those

8   officers, if I remember correctly.

9           Q.    Okay.  And with the -- these two-year cycles

10  where advanced officer training happens, how does an

11  officer that's required to do training in that window

12  come to take that training?  Is it voluntary?  Are they

13  assigned?  How does that work?

14          A.    So that training, it's mandated perishable

15  skill training.  And for San Francisco we do ours by

16  star numbers.  And so two-year period, and each two

17  years there's a six-month cycle.  So hypothetically,

18  let's say 2017 and '18, that's a two-year window.

19              So for 2017 star numbers from zero to, like,

20  800 they go from January to June 30th.  So from January

21  1st to June 30th star numbers from 1 to 800, they are

22  assigned.  They get assigned by their training

23  coordinators at their stations.  They sign them up for

24  the class.  Whatever class window works best for them in

25  the sixth-month period, then they get assigned and then

32

1    they show up.

2           And then from June -- from July to December,

3    we go from 800 to, like, about 1600 star numbers.  And

4    so officers who have star numbers within that time frame

5    or within those numbers, they go to classes from July

6    1st to December, end of December.

7           So it's by star numbers.  And we break it up

8    by six-month periods.

9       Q.   So just so I'm understanding you, essentially

10   anyone who has an obligation to complete training is

11   assigned a six-month window according to their star

12   number as to when to complete the training?

13          MR. BUELNA:  Objection.  Asked and answered.

14          THE WITNESS:  Yes.

15   BY MS. COLLINS:  Q.  Okay.

16      A.   According to -- according to star numbers.  So

17   we have 2,000, thereabout, officers to get through the

18   training.  And so it's a process.  So it takes us two

19   years to get our 2000 officers through their mandated

20   40-hour training.

21          MS. COLLINS:  Okay.  I think that's it.  Thank

22   you.

23          MR. BUELNA:  Thank you.

24          THE COURT REPORTER:  Would you like a

25   transcript?

                                                          33

1   STATE OF CALIFORNIA       )

2                               )  Ss.

3   COUNTY OF ALAMEDA        )

4

5        I hereby certify that the witness, Lt. Wilfred
6   Williams, in the foregoing deposition appeared before
me, Kelly McKissack, a Certified Shorthand Reporter and
a disinterested person.

7

8        Said witness was then and there at the time
and place previously stated by me placed under oath to
9   tell the truth, the whole truth and nothing but the
truth in the testimony given on the date of the within
10  deposition; that the deposition is a true record of the
witness' testimony as reported by me.

11       The testimony of the witness and all questions
and remarks requested by Counsel was reported under my
12  direction and control, caused to be transcribed into
typewritten form by means of Computer-Aided
13  Transcription.

14       I am a Certified Shorthand Reporter licensed
by the State of California, and I further certify that I
15  am not interested in the outcome of the said action, nor
connected with, nor related to any of the parties in
16  said action, nor to their respective counsel.  I am not
of counsel or attorney for either or any of the parties
17  to the case named in the within caption.

18       IN WITNESS WHEREOF, I have hereunto affixed my
signature this 20th day of August, 2018.

19

20

21  __/s/Kelly McKissack_____

22  Kelly McKissack
Certified Shorthand Reporter
23  California License No. 13430

24               --o0o--

25

35