DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Attorney
SEAN F. CONNOLLY, State Bar #152235
JAMES F. HANNAWALT, State Bar #139567
KELLY COLLINS, State Bar #277988
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3863 [Connolly]
Telephone:     (415) 554-3913 [Hannawalt]
Telephone:     (415) 554-3914 [Collins]
Facsimile:      (415) 554-3837
Email:           sean.connolly@sfcityatty.org
Email:           james.hannawalt@sfcityatty.org
E-Mail:          kelly.collins@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
OFFICER CHARLES AUGUST, OFFICER NICHOLAS
CUEVAS, OFFICER WINSON SETO, OFFICER
ANTONIO SANTOS, OFFICER SCOTT PHILLIPS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN WOODS, individually and as Successor in Interest to Decedent MARIO WOODS,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; a municipal corporation; CHARLES AUGUST, Police Officer for the City and County of San Francisco; NICHOLAS CUEVAS, Police Officer for the City and County of San Francisco; WINSON SETO, Police Officer for the City and County of San Francisco; ANTONIO SANTOS, Police Officer for the City and County of San Francisco; SCOTT PHILLIPS, Police Officer for the City and County of San Francisco; and DOES 1-50, individually and in their official capacities as Police Officers for the City and County of San Francisco, inclusive,<br><br>Defendants. | Case No. 15-cv-05666 WHO<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:   September 26, 2018<br>Time:              2:00 p.m.<br>Place:             Courtroom, 2, 17th Floor<br><br>Trial Date:       November 5, 2018 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON ALL
     CONSTITUTIONAL CLAIMS .......................................................................... 1

     A.   Plaintiff Cannot State A Monell Claim – The City Must Be Dismissed ..... 1

     B.   The Officers Are Entitled To Qualified Immunity ...................................... 1

          1.   Plaintiff Has Not Met Her Burden Of Demonstrating Precedent
               That Defeats Qualified Immunity ...................................................... 2

          2.   Precedent Supports Qualified Immunity On The Facts Of This
               Case .................................................................................................... 4

     C.   The Fourth Amendment Claim Fails On The Merits ................................... 6

          1.   Plaintiff's Mischaracterizations Of The Record Do Not Create A
               Question Of Fact ................................................................................ 7

          2.   There Is No Evidence Woods Was Suicidal And The Use Of
               Force Was Lawful In Any Event ........................................................ 8

          3.   Plaintiff's 20/20 Hindsight Does Not Defeat Summary Judgment .. 10

          4.   There Is No Evidence Of Sympathetic Fire ..................................... 11

II.  DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE STATE
     CLAIMS ........................................................................................................... 11

     A.   Plaintiff Fails To Create A Question Of Fact And Her Bane Act Fails..... 11

     B.   Plaintiff's Negligence Claim Fails ............................................................. 12

CONCLUSION ..................................................................................................................... 14

OBJECTIONS TO EVIDENCE ........................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Barragan v. City of Eureka*
2016 WL 4549130 (N.D. Cal. Sept. 1, 2016) .............................................................................3

*Billington v. Smith*
292 F.3d 1177 (9th Cir. 2002) ..............................................................................................7, 10

*Blanford v. Sacramento County*
406 F.3d 1110 (9th Cir. 2005) ..........................................................................................5, 7, 9

*Carroll v. Carman*
135 S.Ct. 348 (2014) ................................................................................................................1

*City & County of San Francisco v. Sheehan*
135 S. Ct. 1765 (2015) ...................................................................................................1, 2, 10

*County of Los Angeles v. Mendez*
137 S.Ct. 1539 (2017) ............................................................................................................10

*Deorle v. Rutherford*
272 F.3d 1272 (9th Cir. 2001) .................................................................................................9

*Estate of Shapiro v. United States*
634 F.3d 1055 (9th Cir. 2011) .................................................................................................1

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*
515 F.3d 1019 (9th Cir. 2008) ...............................................................................................13

*Glenn v. Washington County*
673 F.3d 864 (9th Cir. 2011) .......................................................................................2, 3, 4, 9

*Graham v. Connor*
490 U.S. 386 (1989) .................................................................................................................6

*Gregory v. County of Maui*
523 F.3d 1103 (9th Cir. 2008) .................................................................................................9

*Harlow v. Fitzgerald*
102 S.Ct. 2727 (1982) ..............................................................................................................1

*Jenkins v. City of Riverside*
398 F.3d 1093 (9th Cir. 2005) .................................................................................................1

*Kisela v. Hughes*
138 S.Ct. 1148 (2018) ....................................................................................................1, 2, 4, 6

*Lal v. California*
746 F.3d 1112 (9th Cir. 2014) ..............................................................................2, 5, 6, 9, 10

*Losee v. City of Chico*
  2018 WL 3016891 (9th Cir. June 18, 2018) ...........................................................................12

*Monell v. Department of Social Services*
  436 U.S. 658 (1978) ..........................................................................................................1, 6

*Mullenix v. Luna*
  136 S.Ct. 305 (2015) ..............................................................................................................2

*Pearson v. Callahan*
  129 S. Ct. 808 (2009) .............................................................................................................1

*Plumhoff v. Rickard*
  134 S.Ct. 2012 (2014) ............................................................................................................1

*Reese v. County of Sacramento*
  888 F.3d 1030 (9th Cir. 2018) .............................................................................................12

*Reichle v. Howards*
  132 S.Ct. 2088 (2012) ............................................................................................................1

*Scott v. Henrich*
  39 F.3d 912 (9th Cir. 1994) ............................................................................................10, 14

*Shafer v. County of Santa Barbara*
  868 F.3d 1110 (9th Cir. 2017) ...............................................................................................2

*Smith v. City of Hemet*
  394 F.3d 689 (9th Cir. 2005) .................................................................................................6

*Stanton v. Sims*
  134 S.Ct. 3 (2013) ..................................................................................................................1

*Tennessee v. Garner*
  471 U.S. 13 (1985) .................................................................................................................7

*Vos v. City of Newport Beach*
  892 F.3d 1024 (9th Cir. 2018) ..................................................................................2, 4, 5, 6

*White v. Pauly*
  137 S. Ct. 548 (2017) .............................................................................................................2

*Wood v. Moss*
  134 S.Ct. 2056 (2014) ............................................................................................................1

**State Cases**

*Brown v. Ransweiler*
  171 Cal.App.4th 516 (2009) ................................................................................................13

*Cornell v. City and County of San Francisco*
  17 Cal.App.5th 766 (2017) ..................................................................................................12

*Martinez v. City of Los Angeles*
   47 Cal.App.4th 334 (1996) ........................................................................................................13

**State Statutes & Codes**
California Government Code section 52.1 ......................................................................................11, 12

California Government Code section 820.6 ..........................................................................................13

California Penal Code section 196 .........................................................................................................13

**Rules**
Federal Rule of Civil Procedure 56 .........................................................................................................7

**Other Authorities**
42 U.S.C. § 1983 ......................................................................................................................................1

## I. DEFENDANTS ARE ENTITLED TO JUDGMENT ON ALL CONSTITUTIONAL CLAIMS

### A. Plaintiff Cannot State A Monell Claim – The City Must Be Dismissed

As set forth in the City's opening brief, Plaintiff cannot state a claim for municipal liability under 42 U.S.C. § 1983 because she cannot establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff apparently concedes the point, having failed to oppose the argument at all. In fact, after conducting extensive discovery, at the expense of taxpayer time and resources, and despite warnings from the City that the claim was meritless, Plaintiff does not even bother to address the issue. Plaintiff has abandoned her *Monell* claim and the City is entitled to judgment as to all constitutional claims. *Jenkins v. City of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandons claims not raised in opposition to motion for summary judgment); *see also, Estate of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011).

### B. The Officers Are Entitled To Qualified Immunity

The Supreme Court regularly impresses upon courts and litigants that the doctrine of qualified immunity is important to society as a whole. *Harlow v. Fitzgerald*, 102 S.Ct. 2727 (1982). Qualified immunity balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield public officials from harassment, distraction and liability from suit when they perform their duties reasonably. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Because it is an immunity from suit, qualified immunity is effectively lost if denied and a case is impermissibly allowed to go to trial. *Id*. That principle is echoed in the many decisions affirming summary judgment or rejecting its denial. *See, City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1779 (2015) (noting Supreme Court "often corrects lower courts when they wrongly subject individual officers to liability") citing, *Carroll v. Carman*, 135 S.Ct. 348 (2014), *Wood v. Moss*, 134 S.Ct. 2056 (2014), *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014); *Stanton v. Sims*, 134 S.Ct. 3 (2013), *Reichle v. Howards*, 132 S.Ct. 2088 (2012).

The basic analysis is not disputed: Qualified immunity applies if an officer's conduct did not violate clearly established constitutional rights of which a reasonable officer would have known. *Kisela v. Hughes*, 138 S.Ct. 1148 (2018) (quotations and citations omitted). To determine whether

qualified immunity applies, the Court considers (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the use of force. *Id.; Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014).

### 1. Plaintiff Has Not Met Her Burden Of Demonstrating Precedent That Defeats Qualified Immunity

The plaintiff bears the burden of demonstrating that the rights at issue were clearly established. *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). To meet her burden, Plaintiff has to identify a case where an officer, acting under similar circumstances, was held to have violated the Fourth Amendment. *See, Shafer*, 868 F.3d at 1117 (mindful that Supreme Court precedent generally requires identification of "a case where an officer acting under similar circumstances as [defendant] was held to have violated the Fourth Amendment"). Unless existing precedent "squarely governs" the specific facts at issue, police officers are entitled to qualified immunity. *Kisela*, 138 S.Ct. 1148, citing *Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015). While the precedent does not need to be directly on point, it "must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S.Ct. at 1152, citing *White v. Pauly*, 137 S. Ct. 548, 552 (2017). The requirement imposes an "exacting standard" that "gives government officials breathing room to make reasonable but mistaken judgments." *Sheehan*, 135 S. Ct. at 1774 (2015) (internal quotations omitted).

Here, the case that Plaintiff identifies as precedent – as "squarely governing" these facts – is *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011). *Glenn* does not meet the exacting standard the Supreme Court requires.

As a threshold matter, *Glenn* does not address whether, on the facts of that case, a "clearly established" Fourth Amendment right was violated. *Glenn*, 673 F.3d at 870 ("We express no opinion" as to the clearly established part of the analysis). *Glenn* simply found that factual questions precluded a determination on summary judgment that no Fourth Amendment violation occurred. *Glenn* cannot be read as a precedent placing the analysis here "beyond debate."

*Glenn* involved circumstances substantially different from those faced by the Defendant Officers in this case. In *Glenn*, county sheriff officers responded to a call from family members that a drunken teenager with a pocket knife was suicidal and probably going to kill himself. *Glenn*, 673 F.3d at 867. Officers knew that the teen was the son of the 911 caller, was not an intruder, and there had been no prior calls to the home. *Id*. At all times, the teen held a pocket knife to his neck, and made no threatening moves toward officers or others. *Id*. 874-5. The teen ignored commands to drop his knife, stayed in the same position from the moment officers arrived, and made no attempt to flee. *Id*. The officers were told the teen had made prior suicide attempts, and there was evidence that he may not have understood their commands (e.g. the teen asked why officers were yelling, asked them to stop yelling). *Id*. The Court held that the District Court "erred in granting summary judgment on the constitutionality of the officers' use of force" and reversed the order. *Glenn*, 673 F.3d at 878.

Here the facts are quite different. Unlike *Glenn*, where officers responded to the teen's home and there was no reported crime or history of violence, SFPD Officers responded to a call of a stabbing on a public sidewalk. Unlike the teen in *Glenn*, who at all times had a pocket knife trained on his own neck, Woods brandished an eight inch knife, and in no way indicated he would use the weapon on himself. Unlike the teen in *Glenn*, who never fled or moved from his position once officers arrived, Woods told officers he was not going with them and walked off. Unlike *Glenn*, where the only bystanders were friends and family members aware of what was happening, here the bystanders who gathered nearby had no knowledge about Woods or that he was a suspect in a public stabbing. And, unlike *Glenn*, where the teen appeared confused by officers' commands and asked them to stop yelling, Woods acknowledged that uniformed officers were trying to disarm or arrest him by saying "I'm not going with you." *Glenn* is not similar enough to the facts in this case to have provided "fair notice" to the Defendant Officers that their use of force on Woods was unreasonable. *Barragan v. City of Eureka*, 2016 WL 4549130, at *5 (N.D. Cal. Sept. 1, 2016) (noting that in excessive force cases, "the relevant inquiry is whether, under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and whether any mistake to the contrary would have been unreasonable.") (internal quotations and citations omitted).

### 2. Precedent Supports Qualified Immunity On The Facts Of This Case

The recent decisions in *Kisela v. Hughes* (decided in 2018, regarding use of force in 2010) and *Vos v. City of Newport Beach* (decided in 2018, regarding use of force in 2014), and the precedent they survey and affirm, state a "clearly established" precedent that compels qualified immunity here.

Plaintiff argues that *Kisela* is not reliable because Woods was shot after the suspect in *Kisela* and that *Glenn*, decided by the Ninth Circuit a year later, controls instead. Plaintiff misses the point. *Kisela* noted only that the Ninth Circuit erroneously relied on *Glenn*, which was decided after the *Kisela* shooting. *Kisela* does not hold that *Glenn* would have changed the analysis had it been decided earlier. *Kisela* confirms that the "clearly established" body of law that existed in 2010 supported a finding of qualified immunity. As explained above, *Glenn* does not create a "clearly established" precedent here because it is factually distinct. Thus, the body of law affirmed in *Kisela* continues to exist and – at least as relates to the facts of this case – is not abrogated by *Glenn*.

Plaintiff also argues that *Kisela* is distinguishable on its facts because Woods was separated from the bystanders by the officers[1], and Woods appeared to be injured and moving slowly; whereas in *Kisela* the woman with the knife was standing close to a bystander and separated from the officers by a chain link fence. These are distinctions without a difference. Plaintiff ignores that it is undisputed that Woods was ten feet or less from Officer August when shots were fired. The evidence presented is that each of the Defendant Officers used lethal force because Woods posed an imminent threat to Officer August and the bystanders. *Kisela* compels a finding of qualified immunity.

In *Vos v. City of Newport Beach*, 892 F.3d 1024, decided in 2018, regarding a shooting in 2014, officers responded to a 7-Eleven convenience store because an agitated suspect was running

---

[1] Contrary to Plaintiff's argument, only one officer – Officer August - stood between Woods and the bystanders on the corner when Woods began advancing north. Plaintiff submits still images from various views of the Muni video (Burris Decl. Exh 30) to suggest that three officers were also present on the sidewalk in a location between Officer August and the bystanders on the corner of Keith and Fitzgerald. However, Plaintiff fails to point out to the court in this "chronology" exhibit when the first lethal shot is fired. Watching the same images on the Muni video with a sound track (Sheikh Decl. ISO Defendants' MSJ, Exh A) makes clear that these officers have just exited their car when the first shot is fired. No reasonable jury could infer from this evidence that Officer August or the other Defendants were aware of the presence of these additional officers on-scene when the decision to shoot was made, bearing in mind that decision must always precede the actual shot being fired, which in turn precedes the sound of the shot being recorded on the Muni video.

around inside, cursing at people and shouting "[k]ill me already, dog." Responding officers established a perimeter and cleared all bystanders from the store. The officers knew the suspect had scissors, was simulating having a gun behind his back, had cut a store employee who was trying to disarm him, and was angry, agitated, and potentially mentally unstable or on drugs. The suspect, who had gone into a back room inside the store, started running toward officers with the scissors above his head. Officers fired less lethal and lethal rounds. The Court found there was no clearly established precedent that precluded the use of lethal force and granted qualified immunity.

Here, the differences between the precedent established in *Vos* and the circumstances facing the Defendant Officers in this case only strengthen the argument that qualified immunity applies. In *Vos*, officers contacted the suspect because of his erratic behavior, not because he committed a crime. *Vos*, 892 F.3d at 1029. Here, officers responded because Woods stabbed someone. In *Vos*, no bystanders remained on the scene and the officers had the cover of their vehicles. *Id*. Here, nothing stood between the officers and Woods, and only Officer August stood between Woods and the bystanders. In *Vos*, because the store was surrounded, the suspect could not flee. *Id*. Here, Woods was not securely contained and, in fact, was attempting to escape police containment. In *Vos*, the officers knew that the suspect cut the hand of a store clerk who tried to disarm him. *Id*. Here, Defendant Officers knew Woods stabbed someone seriously enough to put him in the hospital.

*Blanford v. Sacramento County*, 406 F.3d 1110, 1112–13 (9th Cir. 2005) and *Lal v. California, supra,* also inform the analysis of whether clearly established precedent supports a claim that the officers here were unreasonable. Those cases support the finding of qualified immunity.

In *Blanford*, 406 F.3d at 1112–13, officers came upon a suspect who was carrying a 2–1/2–foot–long Civil War-era cavalry saber. *Id*. He was wearing a knit cap pulled down over his ears, concealing that he was listening to headphones. *Id*. Officers drew their weapons and ordered the suspect to stop. *Id*. The suspect, who did not hear the command, walked away. *Id*. Officers followed, concerned he might encounter a bystander. *Id*. The suspect stopped at one point, raised the sword over his head and growled. *Id*. Officers considered that the suspect might be mentally disturbed or under the influence of narcotics. *Id*. The suspect approached the front door of a residence, then went around to the side. *Id*. Officers continued to order the suspect to drop the

weapon, but he did not comply. *Id*. Not knowing the suspect was attempting to enter his own house and could not hear officers because of the headphones, officers fired a volley of shots. *Id*. The Ninth Circuit found that the officers reasonably believed the suspect posed a serious threat of harm to the officers or bystanders. *Blanford*, 406 F.3d 1117-18. The Court noted that the suspect was heading into the backyard where he could injure others and where the officers could not follow, thus posing a threat to others. *Id*.

In *Lal*, 746 F.3d 1112, the suspect in a domestic call fled in his vehicle and led officers on a 45-minute high-speed chase. During the pursuit, the suspect said he wanted the officers to kill him. Officers disabled the suspect's car and encountered him on the side of the freeway. The suspect threw rocks at the officers, hit himself in the head and aimed his phone at officers to mimic a gun. Ignoring commands to stop, the suspect eventually picked up a large rock and started to advance toward the officers at an irregular pace, forcing the officers to back up. Officers fired lethal rounds in defense of themselves and because the suspect posed a risk to others. The Ninth Circuit found the use of lethal force both reasonable under the Fourth Amendment and deserving of qualified immunity.

*Kisela, Vos*, *Blandford* and *Lal*, as well as the body of law they cite and affirm, compel the conclusion that the Defendant Officers are entitled to qualified immunity.

### C.    The Fourth Amendment Claim Fails On The Merits[2]

As explained above, the Court should find that the Defendant Officers are entitled to qualified immunity. Because Plaintiff has also abandoned her *Monell* claim, all of the constitutional claims can be dismissed, and the inquiry, as to the Federal claims, could end there. But the Court should evaluate the Fourth Amendment claim on its merits because 1) the claim is not supported by evidence or law; and 2) the Fourth Amendment analysis is instructive as to the Plaintiff's remaining state law claims.

As set forth in Defendants' opening brief, police officers are entitled to use lethal force when confronted by a suspect who the officer reasonably believes poses an immediate threat to the safety of the officers or others. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A person brandishing a knife can pose an immediate threat. *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) ("where a

---

[2] As with her *Monell* claim, Plaintiff also abandons her Fourteenth Amendment claim. Accordingly, all Defendants are entitled to judgment on that claim.

suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force."); see also, *Blanford*, 406 F.3d 1117-18, discussed above.  The reasonableness of force should not be judged with the "20/20 vision of hindsight" and must account for the fact that officers are required to make split-second judgments – in circumstances that are tense uncertain, and rapidly evolving.  *Graham*, 490 U.S. at 396-97; *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).  Crucial to the analysis is the "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *Blanford*, 406 F.3d at 1115; *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002).

Here, Plaintiff does not deny that the officers faced a suspect who had committed a serious crime.  Woods stabbed a stranger, in the middle of the day, on a public sidewalk, causing him to go to the hospital, and continued to wander around the neighborhood, with his knife.  Plaintiff tries to suggest that the underlying incident was provoked, but it is undisputed that what the Defendant Officers knew was that they faced a suspect who had stabbed someone two hours earlier, and still brandished the knife.

### 1. Plaintiff's Mischaracterizations Of The Record Do Not Create A Question Of Fact

Plaintiff's opposition is full of misstatements of the record and mischaracterizations of the evidence.  While all factual disputes must be resolved in Plaintiff's favor, Plaintiff does not have license to misstate the record.  FRCP 56.

First, Plaintiff attempts to create a question of fact by citing certain screenshots of some of the videos of this incident.  The video speaks for itself, and creates no factual question or dispute as to the Defendant Officers' account of what they perceived and why they used lethal force.  In fact, the video supports the Officers' testimony.

Another example of Plaintiff's misstatements appears when Plaintiff argues that early in the encounter, the Muni bus video shows that "August closed the distance aggressively between himself and Mr. Woods such that his partner commanded him to 'back up, back up.'" [Opp 11:9-11] However, what the Muni video shows is Officer August with his gun drawn following Woods south down the sidewalk at a distance of about fifteen feet and Woods is walking away.  Notably, the Rivera

video shows Plaintiff stop abruptly, shed his backpack, and square off with Officer August. (Hannawalt Decl. Exh O)  Similarly, Plaintiff mischaracterizes the officers' actions when she argues that "Defendants 'ushered' Woods northbound toward Keith and Fitzgerald," citing Burris Decl., Exh 15, Muni Bus Video, Exh 28, Rivera video; Exh 28 [Opp 11:18].  The video evidence actually shows that officers blocked Woods' escape to the south, then officers maintained their positions until Woods moved north when Officer August blocked his path of travel.

More seriously misleading than Plaintiff's mischaracterizations are Plaintiff's outright misstatements of the record.  She argues that Officer August decided in his mind that if Woods reached a certain spot, Officer August would shoot him. [Opp 14:12-13]  Plaintiff's counsel tried to get Officer August to adopt the statement in deposition by including it in his question.  Officer August would not agree with the characterization. (Burris Decl., Exh 9, 84:1-85:5)  Likewise, Plaintiff misrepresents the video evidence by describing Officer August closing the distance between himself and Woods, Woods having his head down, and "Mr. Woods is showed [sic] taking a step toward the wall with his right foot away from Defendant August, with his next step his left foot crossed over his right, taking another step towards [sic] the wall, away from the defendant again …," and the recoil of Officer's August gun can be seen in the Rivera video, citing Burris Decl., Exh 24, Rivera Video. [Opp 14-15]  These representations are plainly contradicted by the video evidence.  For this reason, Defendants have submitted Powerpoint slides of the consecutive video frames for the eight seconds before the shooting so the Court may view this evidence forward or backward at any speed.  This is not new evidence submitted with the Reply.  Rather, it is a demonstrative version of evidence already submitted.  The video, particularly when viewed in the frame by frame format, speaks for itself. (Declaration of James Hannawalt Regarding Plaintiff's Exhibits In Support Of Her Opposition To Defendants' Motion For Summary Judgment).

**2.    There Is No Evidence Woods Was Suicidal And The Use Of Force Was Lawful In Any Event**

Plaintiff argues that Woods was not a threat to officers because he appeared to be in an altered mental state and made suicidal statements.  This assertion is not supported by the record.  Plaintiff contends that Woods' statement to the officers "you're going to have to squeeze that" meant he was

suicidal. There is no other evidence or any indication that Woods was mentally disturbed or suicidal, and certainly no indication that officers were aware of such facts. Woods' remark does not support the conclusion that Woods was suicidal. Assuming it did, the analysis does not change. The Ninth Circuit has "refused to create two tracks of excessive force analysis, one for the mentally ill and one for serious criminals." *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). A suspect's mental health status is less significant as a factor when, as here, a threat to others exists. *Gregory v. County of Maui*, 523 F.3d 1103, 1108 (9th Cir. 2008). *See also, Lal*, fact that suspect was intent on committing "suicide by cop" did not change the evaluation of officers' response. *Lal*, 746 F.3d at 1119.

Plaintiff's reliance on *Deorle* and *Glenn* is misplaced. The suspect in *Deorle* was unarmed, had not attacked or even touched anyone, and had not committed any serious offense. Officers responded to the suspect's home after his wife reported he was suicidal and under the influence of drugs and alcohol. They escorted the suspect's family down the block. The suspect had shouted "kill me" and brandished a hatchet, then threw the hatchet away into a clump of trees when told to put it down. *Deorle*, 272 F.3d at 1276. Similarly, the teen in *Glenn*, discussed at length above, was reportedly suicidal. Officers responded to his home, where he held a pocket knife to his neck, had committed no crime, and posed a risk only to himself, not to the officers or bystanders. *Glenn*, 673 F.3d at 867.

Here, officers encountered Woods on a public sidewalk, with many bystanders in the vicinity. Woods had already stabbed someone, was not compliant, would not relinquish his weapon, and clearly understood officers were attempting to disarm or take him into custody. Officers deployed three different less lethal weapons, none of which deterred Woods. *Deorle* and *Glenn* are factually distinct and do not address the situation faced by officers in this case.

*Blanford*, in contrast, is directly on point. As discussed in detail above, the Ninth Circuit found no Fourth Amendment violation when officers fired at a suspect carrying a 2–1/2–foot–long Civil War-era cavalry saber. *Blanford*, 406 F.3d at 1117-18. The suspect, considered to be mentally disturbed and/or on narcotics, walked away from officers, ignoring their commands to stop, and attempted to enter the backyard of a residence. *Id.*, 1113-14. Although officers were unaware the suspect could not hear them and was attempting to enter his own house, the Court found that officers

reasonably concluded the suspect posed an immediate risk of serious harm to the officers and potential bystanders. *Id*, 1117-18.

### 3. Plaintiff's 20/20 Hindsight Does Not Defeat Summary Judgment

Plaintiff also argues that the officers could not reasonably believe Woods posed a risk because they should have used other tactics, such as retreat. The law imposes no requirement to explore such alternatives. The plaintiff in *Lal* argued the officers should have waited, retreated, used less lethal options and otherwise defused the situation. The Ninth Circuit rejected the argument. The Court noted the confrontation was in a ditch alongside the freeway and allowing the suspect to proceed on foot or in his vehicle would have endangered the lives of others. *Lal*, 746 F.3d at 1117. Once the suspect was seven or eight feet from the officers, he posed a reasonable threat of imminent serious physical harm and using an alternative force (pepper spray) would not have prevented him from hurling the rock. Most importantly, the Court said "[t]he fact that Lal was intent on 'suicide by cop' did not mean that the officers had to endanger their own lives by allowing Lal to continue in his dangerous course of conduct." *Id*. at 1117–18.

Even if officers misjudged the situation, Woods cannot "establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *See, Sheehan*, 135 S. Ct. 1777–78, citing *Billington*, 292 F.3d at 1190; *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) (officers "need not avail themselves of the least intrusive means of responding"). Moreover, Plaintiff's de-escalation argument is akin to the so-called provocation theory, recently rejected in *County of Los Angeles v. Mendez,* 137 S.Ct. 1539 (2017).

Plaintiff presents no facts to dispute the accounts set forth in the officers' declarations. They knew Woods stabbed someone on a public sidewalk, in the middle of the afternoon, putting him in the hospital. When they confronted Woods, he brandished a knife, said "fuck you come get it" and "I'm not going with you" and "you're going to have to squeeze that thing". The officers, in full uniform, ordered Woods to drop his weapon, Woods walked away. It is undisputed that many bystanders gathered.

### 4. There Is No Evidence Of Sympathetic Fire

Plaintiff argues the use of force was unreasonable because the Defendant Officers fired their guns just because they heard gunshots. [Opp 15-16] Plaintiff submits no admissible evidence to support a so-called "sympathetic fire" argument. The Admissible evidence establishes that Officer August shot Woods in self-defense and in defense of the bystanders he knew were close by behind him, and that his perception was that he fired first. (Hannawalt Decl. Exh, P, Depo of August 98:2-19; Burris Decl. Exh 9, 88:22-89:1; August Decl. ¶ 16). Officer Phillips expressly testified that he had made an independent decision to shoot when he heard gunfire; he fired in defense of Officer August (Hannawalt Decl. Exh. T, 50; Declaration of Phillips ¶ 10). Officer Seto was unsure if anyone fired before he did as "it all happened at the same time." Officer Seto shot in defense of Officer August and bystanders in the area. (Hannawalt Decl. Exh. Q, 80, 90; Decl. of Seto ¶ 10). Officer Cuevas was in the process of firing when he heard another shot fired; he shot in defense of Officer August, himself and bystanders. (Hannawalt Decl., Exh. U, Cuevas Depo 73:18-22; Cuevas Decl. ¶ 9). Officer Santos testified that he did not shoot because Officer August fired and that his shots were not "sympathetic fire." (Hannawalt Decl. Exh U, Depo of Santos, 204:13-25). Officer Santos shot Woods when Woods was moving with a knife, six to eight feet from Officer August. (Santos Decl. ¶ 9). Officer Santos shot in defense of Officer August and bystanders. *Id.* Plaintiff's argument that officer Santos "changed his story" is a fallacy. In his homicide statement, Officer Santos said he was focused on Woods and that hearing a gunshot alerted him that Woods was within striking distance of Officer August, so he made the decision to shoot. Officer Santos' homicide statement is consistent with his deposition testimony. (Hannawalt Decl. Exh U, Depo of Santos, 204:13-25) (Officer Santos testified he decided to shoot because he perceived Woods to be an imminent threat to Officer August).

## II. DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE STATE CLAIMS
### A. Plaintiff Fails To Create A Question Of Fact And Her Bane Act Fails

No evidence supports a finding of specific intent by any Defendant to violate Woods' constitutional rights as is required under California Government Code section 52.1, also known as the Bane Act. Plaintiff provides no citation to support her conclusory statement that "Defendant August was aggressive with Mr. Woods from the beginning of the incident. In fact, his own partner had to

order him to 'back up' when he was confronting woods." Opp 25:2-4. Plaintiff's opposition completely ignores the law enforcement purpose for which Defendants came into contact with Woods – to investigate a stabbing. Plaintiff fails to acknowledge that during the interaction between Woods and Defendants, Woods was armed with a knife and refused to follow orders to drop the knife. Even with the use of less lethal force, Woods continued to ignore orders and refused to drop the knife. Each Defendant objectively feared for Officer August's safety as Woods advanced northbound on Keith Street, in the direction of Officer August. Each Defendant also objectively feared for the safety of the bystanders in the area. The Defendant Officers' fear was objectively reasonable based on what they knew: Woods stabbed someone, in the middle of the afternoon, and continued to roam around the neighborhood, with the knife in hand. He ignored Officers' commands to drop his weapon and submit to arrest, while attempting to escape officers.

"[T]he egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. County of Sacramento,* 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City and County of San Francisco,* 17 Cal.App.5th 766, 801 (2017)) "Evidence simply showing that an officer's conduct amounts to a constitutional violation under an 'objectively reasonable' standard is insufficient to satisfy the additional intent requirement under the Bane Act." *Losee v. City of Chico,* 2018 WL 3016891 *2 (9th Cir. June 18, 2018). Defendants contend that the force used was objectively reasonable. However, should the Court find there is a question of fact as to the objective reasonableness of the force, Plaintiff cannot succeed on her Bane Act claim because she has not and cannot demonstrate that Defendant Officers possessed the requisite specific intent.

### B.  Plaintiff's Negligence Claim Fails

Plaintiff's negligence claim fails for the same reasons the Fourth Amendment claim fails – the Defendant Officers reasonably believed Woods posed an imminent threat of serious injury to the officers and bystanders. The claims of negligence must therefore be dismissed.

Plaintiff devotes considerable energy to criticizing the tactics of other, non-party officers on the scene. For example, Plaintiff notes that Officer Thompson was negligent because he did not broadcast Woods' statements or describe him as suicidal. However, alleged missteps by other officers

on the scene are not actionable because the negligence claim is only pled against the five Defendant Officers. The Defendant Officers are only liable for their own actions. They are not, for example, liable because Officer Thompson did not broadcast Woods statement over the radio. The negligence claim must be evaluated as to each Defendant Officers' own actions, based on what he knew at the time of the shooting.

Defendants are entitled to immunity under California Penal Code section 196 and California Government Code section 820.6. Plaintiff fails to set forth evidence in her opposition as to why these immunities do not apply. Both parties agree that "[t]he test for determining whether a homicide is justifiable under … section 196 is whether the circumstances 'reasonably create[d] a fear of death or serious bodily harm to the officer or to another." *Brown v. Ransweiler,* 171 Cal.App.4th 516, 533 (2009) (quoting *Martinez v. City of Los Angeles,* 47 Cal.App.4th 334, 349 (1996)). The totality of the circumstances reasonably created fear of death or seriously bodily harm to Officer August in the mind of each of the Defendants. Plaintiff presents no evidence to rebut the fact that Defendants fear was reasonable. As such, they are entitled to immunity under California Penal Code section 196.

Defendants are also entitled to immunity under California Government Code section 820.6. Plaintiff cites no evidence for her unfounded allegation that Defendants "opened fire in clear reckless disregard of Mario Wood's Constitutional rights." Opp 29:19-20. Conversely, as set forth above, Defendants provide ample evidence to support their assertion that they acted without malice. "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." California Government Code section 820.6. Defendants are immune under § 820.6, which therefore bars Plaintiff's negligence claim.

Plaintiff suggests that factual questions prohibit the Court from applying the immunities because they turn on whether the officers acted with malice. However, the Court can evaluate malice on summary judgment. See, *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (while malice is usually a question of fact, summary judgment nonetheless

appropriate when there is no evidence from which a reasonable fact finder could conclude that the defendant pursued the underlying action with malice).

## CONCLUSION

Based on the foregoing, Defendants request summary judgment as to all claims.

## OBJECTIONS TO EVIDENCE

1. **Burris Decl. Ex. 7 (Radio Dispatch 1).** <u>Objections</u>**:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56,** Media Exhibit not served on Defendants and therefore Defendants cannot determine if video same as Defendants' Exhibit A to Declaration of Walker filed in support of Defendants' Motion for Summary Judgment [Dkt. 112-1]

2. **Burris Decl. Ex. 7 (Radio Dispatch 2).** <u>Objections</u>**:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56**, Media Exhibit not served on Defendants and therefore Defendants cannot determine if video same as Defendants' radio dispatch recording produced in discovery.

3. **Burris Decl. Ex. 15 (Bus Video).** <u>Objections</u>**:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56** Media Exhibit not served on Defendants and therefore Defendants cannot determine if video same as Defendants' Exhibit A to declaration of Shaikh, SFMTA custodian of records.

4. **Burris Decl. Ex. 16 (Google Maps).** <u>Objections</u>**:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge).

5. **Burris Decl. Ex. 17 (Report of Scott DeFoe).** <u>Objections</u>**:** **FRE 801** (Hearsay); **FRCP 56,** DeFoe report not in the form a declaration or affidavit.

6. **Burris Decl. Ex. 19 (Phillips Homicide Statement).** <u>Objections</u>**:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56,** Media Exhibit not served on Defendants and therefore Defendants cannot determine if video same as statement produced in discovery.

7. **Burris Decl. Ex. 21 (Ortiz Homicide Statement).** <u>Objections</u>**:** **FRE 901** (Lacks

Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56,** Media Exhibit not served on Defendants and therefore Defendants cannot determine if video same as statement produced in discovery.

8. **Burris Decl. Ex. 25 (Cuevas Homicide Statement). <u>Objections</u>:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56,** Media Exhibit not served on Defendants and therefore Defendants cannot determine if video same as statement produced in discovery.

9. **Burris Decl. Ex. 26 (Seto Homicide Statement). <u>Objections</u>:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56,** Media Exhibit not served on Defendants and therefore Defendants cannot determine if video same as statement produced in discovery.

10. **Burris Decl. Ex. 27 (Santos Homicide Statement). <u>Objections</u>:** **FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge); **FRCP 56,** Media Exhibit not served on Defendants and therefore defendants cannot determine if video same as statement produced in discovery.

11. **Burris Decl. Ex. 30 (Chronology of Events). FRE 901** (Lacks Authentication); **FRE 601, 602** (Lacks Foundation, Personal Knowledge).

Dated: September 12, 2018

    DENNIS J. HERRERA
    City Attorney
    CHERYL ADAMS
    Chief Trial Attorney
    SEAN F. CONNOLLY
    JAMES F. HANNAWALT
    KELLY COLLINS
    Deputy City Attorneys

By: */s/ Cheryl Adams*
    CHERYL ADAMS

    Attorneys for Defendants
    CITY AND COUNTY OF SAN FRANCISCO, ET AL.