1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  CHERYL ADAMS, State Bar #164194
   Chief Trial Attorney
3  SEAN F. CONNOLLY, State Bar #152235
   JAMES F. HANNAWALT, State Bar #139567
4  KELLY COLLINS, State Bar #277988
   Deputy City Attorneys
5  Fox Plaza
   1390 Market Street, Sixth Floor
6  San Francisco, California 94102-5408
   Telephone:    (415) 554-3863 [Connolly]
7  Telephone:    (415) 554-3913 [Hannawalt]
   Email:        sean.connolly@sfcityatty.org
8  Email:        james.hannawalt@sfcityatty.org
   Email:        kelly.collins@sfcityatty.org
9
   Attorneys for Defendants
10 CITY AND COUNTY OF SAN FRANCISCO,
   OFFICER CHARLES AUGUST, OFFICER NICHOLAS
11 CUEVAS, OFFICER WINSON SETO, OFFICER
   ANTONIO SANTOS, OFFICER SCOTT PHILLIPS
12

13                    UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15 | GWENDOLYN WOODS, individually and as | Case No. 15-cv-05666 WHO |
   Successor in Interest to Decedent MARIO
16 WOODS,                                  | **DEFENDANTS' REQUEST FOR LEAVE AND**
                                           | **MOTION FOR RECONSIDERATION OF**
17          Plaintiff,                      | **ORDER DENYING IN PART MOTION FOR**
                                           | **SUMMARY JUDGMENT [CIV. L.R. 7-9]**
18          vs.

19 CITY AND COUNTY OF SAN
   FRANCISCO; a municipal corporation;      Trial Date:          April 1, 2019
20 CHARLES AUGUST, Police Officer for the
   City and County of San Francisco;
21 NICHOLAS CUEVAS, Police Officer for the
   City and County of San Francisco; WINSON
22 SETO, Police Officer for the City and County
   of San Francisco; ANTONIO SANTOS, Police
23 Officer for the City and County of San
   Francisco; SCOTT PHILLIPS, Police Officer
24 for the City and County of San Francisco; and
   DOES 1-50, individually and in their official
25 capacities as Police Officers for the City and
   County of San Francisco, inclusive,
26
            Defendants.
27

28

1

## **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ......................................................................................... ii

3   I.   THE DEFENDANT OFFICERS ARE IMMUNE FROM SUIT AS TO THE
         STATE LAW CLAIMS. ...................................................................................1

4
         A.   The Doctrine of Qualified Immunity Derives from Common Law
5             Immunity and Is a Good Faith Immunity. ...................................................1

6        B.   State Law Immunities Are Consistent with Qualified Immunity. ...............2

         C.   State Law Immunities Are Evaluated Similarly to Qualified Immunity .....3
7
              1.   State Law Good Faith Immunity....................................................5
8
              2.   Government Code Section 820.6 Applies Here. .............................6
9
    II.  CALIFORNIA GOVERNMENT CODE SECTION 821.6 APPLIES TO
10       POLICE INVESTIGATIONS. ..............................................................................8

    CONCLUSION.......................................................................................................9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Alhovsky v. Paul*
   406 F. App'x 535 (2d Cir. 2011)...................................................................................4

*Alhovsky v. Ryan*
   658 F. Supp. 2d 526 (S.D.N.Y. 2009) ..........................................................................4

*Al-Mohammedi v. City of Buffalo*
   2017 WL 163388 (W.D.N.Y. Jan. 17, 2017)................................................................4

*Blankenhorn v. City of Orange*
   485 F.3d 463 (9th Cir. 2007) ........................................................................................8

*Burwell v. Moody*
   670 F. App'x 734 (2d Cir. 2016) ..................................................................................4

*Burwell v. Peyton*
   131 F. Supp. 3d 268 (D. Vt. 2015) ...............................................................................4

*City of South Lake Tahoe v. California Tahoe Regional Planning Agency*
   625 F.2d 231 (9th Cir. 1980) ........................................................................................5

*Crowe v. County of San Diego*
   608 F.3d 406 (9th Cir. 2010) ........................................................................................8

*Crowell v. Kirkpatrick*
   667 F. Supp. 2d 391 (D. Vt. 2009) ...............................................................................4

*Eberhard v. California Highway Patrol*
   2015 WL 6871750 (N.D. Cal. Nov. 9, 2015) ...............................................................6

*Gonzalez v. City of Schenectady*
   728 F.3d 149 (2d Cir. 2013) .........................................................................................4

*Green v. City of Mount Vernon*
   96 F. Supp. 3d 263 (S.D.N.Y. 2015) ............................................................................4

*Grossman v. City of Portland*
   33 F.3d 1200 (9th. Cir. 1994) .......................................................................................6

*Harlow v Fitzgerald*
   457 U.S. 800 (1982).............................................................................................1, 2, 7

*Imbler v. Pachtman*
   424 U.S. 409 (1976)......................................................................................................3

*Jenkins v. City of New York*
   478 F.3d 76 (2d Cir. 2007) ...........................................................................................3

*Jones v. Marshall*
  528 F2d 132 (2nd Cir. 1975) ...............................................................4

*Jones v. Parmley*
   465 F.3d 46 (2d Cir. 2006) ................................................................4

*Liberal v. Estrada*
  632 F3d 1064 (9th. Cir. 2011) ...........................................................5

*Malley v. Briggs*
  475 U.S. 335 (1986)......................................................................1, 3

*Michigan v. DeFillippo*
  443 U.S. 31 (1979).............................................................................6

*Monell v. Dept. of Social Services*
  436 U.S. 658 (1978)...........................................................................3

*Monroe v. Pape*
  365 U.S. 167 (1961)...........................................................................3

*Pierson v. Ray*
  386 U.S. 547 (1967)......................................................................2, 3

*Reynolds v. County of San Diego*
  858 F.Supp. 1064 (S.D. Cal. 1994)....................................................7

*Scheuer v. Rhodes*
  416 U.S. 232 (1974).......................................................................1, 2

*Tater –Alexander v. Amerjan*
  2011 WL 319012 (E.D. Cal. Jan. 28, 2011) ......................................3

*Thomas v. Dillard*
  212 F. Supp. 3d 938 (C.D. Cal. 2016) ...............................................6

**Federal Statutes**
42 U.S.C. § 1983 ...................................................................1, 2, 3, 4

**State Cases**
*Amylou R. v. City of Riverside*
  28 Cal.App.4th 1205 (1994) ..............................................................8

*County of Los Angeles v. Superior Court*
  181 Cal.App.4th 218 (2009) ..............................................................5

*Gilmore v. Superior Court*
  230 Cal.App.3d 416 (1991) ...............................................................7

*Hayes v. County of San Diego*
  57 Cal. 4th 622 (2013) .......................................................................9

*Johnson v. City of Pacifica*
   4 Cal.App.3d 82 (1970) ...................................................................................8

*Kayfetz v. California*
   156 Cal.App.3d 491 (1984) ..............................................................................8

*Kemmerer v. County of Fresno*
   200 Cal.App.3d 1426 (1988) ............................................................................8

*Martinez v. City of Los Angeles*
   47 Cal.App.4th 334 (1996) ...............................................................................7

*O'Toole v. Superior Court*
   140 Cal.App.4th 488 (2006) .......................................................................3, 5, 7

*People v. Mower*
   28 Cal. 4th 457 (2002) ......................................................................................6

**State Statutes & Codes**
California Government Code § 820.6 .....................................................1, 2, 3, 5, 6, 7, 8

California Government Code § 821.6 ...........................................................................8

California Penal Code § 196 ...............................................................................5, 6

California Penal Code § 835 ....................................................................................5

California Penal Code § 835a ...................................................................................6

**Rules**
Local Rule 7-9 ........................................................................................................1

Local Rule 7-9 (b)(3) ..............................................................................................1

1   Pursuant to Local Rule 7-9, defendants hereby request the Court to grant leave to file this

2   motion for reconsideration of the Court's October 9, 2018, Order, denying in part defendants' motion

3   for summary judgment. Dkt. 143.  Defendants seek this relief based on Local Rule 7-9(b)(3), that there

4   existed a manifest failure by the Court to consider dispositive legal arguments that were presented to

5   the Court before the Court issued the interlocutory order.

6   **I.    THE DEFENDANT OFFICERS ARE IMMUNE FROM SUIT AS TO THE STATE**
    **LAW CLAIMS.**

7

8       The Court held that the defendant officers were entitled to qualified immunity from suit as to

9   plaintiff's claims under the Fourth Amendment, yet denied immunities asserted by defendants on their

10  state law claims.[1]  Order at 18-19.  The result is incongruous because the immunities involve the same

11  principles and policy considerations.  The concept of qualified immunity derives from common law

12  immunity.  In California, the state law good faith immunity is codified in Government Code section

13  820.6, and is evaluated similarly to, and consistent with, the doctrine of qualified immunity.  Because

14  qualified immunity is an immunity from suit that is lost if an officer is required to stand trial, the

15  doctrine is rendered meaningless if litigants are allowed to plead around qualified immunity and

16  pursue state law claims for the same actions for which the Supreme Court recognizes immunity.

17  Defendants respectfully ask the Court to reconsider its ruling and dismiss the state law claims on the

18  grounds of immunity.

19      **A.    The Doctrine of Qualified Immunity Derives from Common Law Immunity and Is**
           **a Good Faith Immunity.**

20

21      In *Harlow v. Fitzgerald*, the Supreme Court delineated the doctrine of qualified immunity. The

22  doctrine of qualified immunity was derived from common law immunities.  *Harlow v Fitzgerald*, 457

23  U.S. 800, 806-809, 813 fn. 20 (1982).  Qualified Immunity is a "good faith" immunity.  *Id*. at 815-186.

24  *See also, Malley v. Briggs*, 475 U.S. 335, 339–40 (1986) (immunities recognized under 1983 always

25  have a "common-law counterpart").

26      The origins of qualified immunity were discussed in *Scheuer v. Rhodes*, 416 U.S. 232 (1974):

27

28  _____
    [1] The Court also granted defendants motion as to the 14th Amendment and *Monell* claims.

"The concept of the immunity of government officers from personal liability springs from the same root considerations that generated the doctrine of sovereign immunity. While the latter doctrine—that the 'King can do no wrong'—did not protect all government officers from personal liability, the common law soon recognized the necessity of permitting officials to perform their official functions free from the threat of suits for personal liability. This official immunity apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good."

*Scheuer v. Rhodes*, 416 U.S. 232, 239–40 (1974), abrogated by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

## B.     State Law Immunities Are Consistent with Qualified Immunity.

The common law immunities from which qualified immunity emanated are now codified in state law.  The Supreme Court recognizes that qualified immunity does not replace or negate state law immunity in the context of Section 1983 cases.  "We do not believe that this settled principle of law was abolished by Section 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities."  *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967).

*Pierson v. Ray* involved a good faith immunity like that codified in California Government Code Section 820.6.  In *Pierson*, a Section 1983 case, the Court, laying a foundation for what would become the qualified immunity doctrine, explained that defendant officers were entitled to the benefit of common-law immunity in 1983 suits:  "The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid."  *Id.*  The Court went on to articulate the classic dilemma of the officer making split-second decisions, and what has become the cornerstone of the public policy supporting the doctrine of qualified immunity.   "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt, the same consideration would seem to require excusing him from liability

1   for acting under a statute that he reasonably believed to be valid but that was later held

2   unconstitutional on its face or as applied." *Id*.

3   In *Pierson*, supra, the Supreme Court held that local police officers sued for false arrest under

4   section 1983 enjoy a "good faith and probable cause" defense "coextensive with their defense to false

5   arrest actions at common law.  See also *Imbler v. Pachtman*, 424 U.S. 409, 418–19 (1976)(explaining

6   *Pierson*).  The Court concluded, "[w]e hold that the defense of good faith and probable cause, which

7   the Court of Appeals found available to the officers in the common-law action for false arrest and

8   imprisonment, is also available to them in the action under Section 1983."  *Pierson,* 386 U.S. at 556–

9   57.

10   **C.      State Law Immunities Are Evaluated Similarly to Qualified Immunity**

11   Because the doctrine of qualified immunity is tied so closely together historically with

12   common law good faith immunity, the principles are analyzed similarly and consistent with one

13   another.  This is not surprising given the common law origins of qualified immunity for police officers

14   accused of false arrest under section 1983. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)

15   (citing *Malley v. Briggs*, 475 U.S. 335, 339–40 (1986) (immunities recognized under 1983 always

16   have a "common-law counterpart").

17   In *Imbler v. Pachtman*, the Supreme Court stated that, while construed literally, Section 1983

18   "creates a species of tort liability that on its face admits of no immunities," the section "is **to be read**

19   **in harmony with general principles of tort immunities and defenses rather than in derogation of**

20   **them**." 424 U.S. 409, 417–18 (1976)(emphasis added).  "Section 1983 "should be read against the

21   background of tort liability that makes a [person] responsible for the natural consequences of [their]

22   actions." *Monroe v. Pape*, 365 U.S. 167, 187 (1961)(overruled on other grounds in *Monell v. Dept. of*

23   *Social Services*, 436 U.S. 658 (1978)).

24   Here, the Court did not apply the correct legal standard for consideration of the state law

25   immunities applicable to the state law claims asserted by plaintiff.  As stated above, immunities under

26   state law are analyzed similarly and consistent with qualified immunity.  See *O'Toole v. Superior*

27   *Court*, 140 Cal. App. 4th 488, 503 & n.8 (2006); see also, *Tater –Alexander v. Amerjan*, 2011 WL

28   319012 at *16–17 (E.D. Cal. Jan. 28, 2011) (where the District Court characterized the 820.6

immunity as a "qualified immunity" and analyzed it consistent with the federal qualified immunity). New York has a similar state court immunity that is regularly invoked when qualified immunity is granted.  See *Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013).

The analysis is no different when extended to use of force cases.  See *Jones v. Marshall*, 528 F2d 132 (2nd Cir. 1975); *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) ("New York law ... grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis"); *Alhovsky v. Ryan*, 658 F. Supp. 2d 526, 535 (S.D.N.Y. 2009), aff'd sub nom. *Alhovsky v. Paul*, 406 F. App'x 535 (2d Cir. 2011); *Burwell v. Peyton*, 131 F. Supp. 3d 268, 293 (D. Vt. 2015), on reconsideration in part, No. 5:12-CV-166, 2015 WL 6874250 (D. Vt. Nov. 9, 2015), and aff'd sub nom.  *Burwell v. Moody*, 670 F. App'x 734 (2d Cir. 2016) ("Thus, if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability"); *Al-Mohammedi v. City of Buffalo*, No. 1:13-CV-01020(MAT), 2017 WL 163388, at *5–6 (W.D.N.Y. Jan. 17, 2017)("Furthermore, while qualified immunity "is not generally understood to protect officials from claims based on state law," a comparable state law doctrine "grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without reasonable basis"); *Crowell v. Kirkpatrick*, 667 F. Supp. 2d 391, 417 (D. Vt. 2009), aff'd, 400 F. App'x 592 (2d Cir. 2010)(" Thus, even assuming that one could rely on a "clearly established right" to be free from a common law tort—the only state law "rights" asserted here—in order to defeat qualified immunity, Vermont's 'good faith' requirement is satisfied because the Defendants acted in an objectively reasonable way when they arrested the Plaintiffs, and could have reasonably believed their conduct to be lawful"); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 295 (S.D.N.Y. 2015)("the "essential elements of § 1983 use of excessive force and state law assault and battery are substantively identical").

Here, the defendant officers were granted qualified immunity because the "constitutional guidelines [were] too remote" to put an officer on notice that it was unreasonable to use lethal force when confronting Woods.  Order at 13.  The good faith immunities asserted in the state law claims encompass the same concept.  The defendant officers relied in good faith on the parameters of Penal

Code Sections 196 and 835.  If those statutes apply, then the defendant officers are entitled to immunity from suit.  If those statutes are inapplicable, they are entitled to immunity because their reliance on them was in good faith.

> ### 1.      State Law Good Faith Immunity.

Government Code Section 820.6, cited by defendants in their motion, provides: "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid, and applicable."

Section 820.6 is a state law statutory analogue to the federal doctrine of qualified immunity, and it authorizes officers to proceed under a California enactment that appears to authorize their conduct (even where the California enactment might not actually apply).  *County of Los Angeles v. Superior Court*, 181 Cal. App. 4th 218, 231 (2009), as modified (Jan. 22, 2010) (referring to "Government Code § 820.6 qualified immunity"); cf. *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 239 (9th Cir. 1980) (noting similarities with federal qualified immunity).  Indeed, "**section 820.6 provides broader protection than the federal immunity doctrine,**" because it "applies 'even though the employee may have been negligent in his good faith belief that the enactment was constitutional, valid, and applicable.'" *O'Toole*, supra, 140 Cal. App. 4th at 503 & n.8 (2006) (quoting Legislative Committee comment to § 820.6)(emphasis added).

The Ninth Circuit has also recognized policy reasons for analyzing state court immunities consistent with qualified immunity.  *Liberal v. Estrada*, 632 F3d 1064, 1075-76 (9th. Cir. 2011)(Court held denial of state law immunity (Gov't Code Sec. 820.2), like denial of qualified immunity, is immediately appealable because it is an immunity from suit).

Further, this District Court has adopted the same reasoning to a similar immunity statute relying on *O'Toole,,* supra, 140 Cal. App. 4th 488 (2006):

> "Section 847(b) "contains principles that parallel the federal qualified immunity analysis." *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 510 (2006). Like federal qualified immunity, the statute immunizes officers from false arrest claims where there is "reasonable cause to believe the arrest was lawful," which California courts have defined as existing when "the facts known to the

arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." *Id.* at 511; *People v. Mower*, 28 Cal. 4th 457, 473 (2002). Like federal qualified immunity, the test for "reasonable cause" is an objective one, and does not require the Court to inquire into the arresting officer's state of mind. *O'Toole*, 140 Cal. App. 4th at 512.

*Eberhard v. California Highway Patrol*, 2015 WL 6871750 at *6 (N.D. Cal. Nov. 9, 2015)(CV-01910 (JD)).

As shown, the state law good faith immunity is not so different from the doctrine of qualified immunity such that the average police officer can be held accountable for not knowing the difference. "Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." *Michigan v. DeFillippo,* 443 U.S. 31, 38 (1979). "[P]olice officers on the street are ordinarily entitled to rely on the assumption that the [entity] [has] considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th. Cir. 1994).

### 2. Government Code Section 820.6 Applies Here.

The Court erroneously found that Government Code Section 820.6 did not apply, emphasizing that the officers were not "acting to *enforce* a statute that was later found unconstitutional, invalid, or inapplicable." Order at 19 (emphasis original).[2]  But Government Code Section 820.6 applies where officers act pursuant to a statue that is later determined to be inapplicable.[3]  Here, the relevant enactments upon which the officers relied are California Penal Code sections 835a and 196.  Those statutes authorize the officers to use force to effect an arrest and to resort to lethal force in response to a perceived threat.[4]

---

[2] The Court's citation to *Thomas v. Dillard*, does not apply to the facts at bar.  *Thomas* specifically excluded negligence as a basis for its decision. 212 F. Supp. 3d 938, 945-946, fn.2 (C.D. Cal. 2016).  *Thomas* is otherwise factually and procedurally distinguishable from this case because the 9th circuit had previously found that the officer's conduct in that case was constitutionally unreasonable. *Id* at. 949.

[3] Defendants do not abandon their entitlement to immunities and intend to assert the same immunities at trial.

[4] Under California Penal Code section 196, a police officer who kills someone has committed a justifiable homicide if the homicide was "necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty" or when "necessarily committed in retaking felons who have been rescued or who have escaped ... and who are fleeing from justice or resisting such arrest." (Pen. Code, § 196, subds. 2, 3.) "There can be no civil liability under

1    In denying immunity to the defendant officers under sections 196 and 835a, the Court

2    necessarily found that these statutes were not applicable.  But if those sections are not applicable, then

3    the officers are immune under 820.6 because they had good faith belief they could use lethal force

4    under sections 196 and 835a.  As stated earlier, qualified immunity is a "good faith" immunity.  See

5    *Harlow,* supra*,* 457 U.S. 800 (1982). An officer is immune if he acted with a good faith belief that the

6    statute applied – even if he was negligent in forming that belief.  *O'Toole v. Superior Court*, 140 Cal.

7    App. 4th 488, 503 & n.8 (2006).  Here, there is no evidence that the officers acted in bad faith in

8    relying on the penal code provisions that allowed them to use force.  Indeed, the Court found qualified

9    immunity applied and granted judgment in favor of the defendants on plaintiff's 14th Amendment

10   claim.

11   Because the Court found that the defendant officers were entitled to qualified immunity on the

12   Federal claims, the Court should likewise have found that the good faith immunity embodied in 820.6

13   also applied and the state claims should be dismissed.  Any other result is incongruous.  The Supreme

14   Court regularly cautions that qualified immunity is lost if an officer is erroneously required to stand

15   trial.  That immunity is meaningless if the officer must stand trial for the same conduct simply because

16   plaintiff pled around the issue. The incongruity arises when an officer forced to make a split second

17   decision. She cannot at the same time be asked to consider the nuances between the good faith concept

18   at the center of the qualified immunity doctrine compared to that of the common law doctrine

19   embodied in the state law immunity before she must act.

20   It is fundamentally unfair to make an officer face trial on state law where she is immune from

21   suit on the federal claims when the protection afforded from the federal claims originated in the

22   protection she seeks in state law.  Because the Court found that the defendant officers were entitled to

23

24   _____

California law as the result of a justifiable homicide."  *Martinez v. City of Los Angeles*, 47 Cal. App.
25   4th 334, 349 (1996) (citing *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1074-1075 (S.D. Cal. 1994); *Gilmore v. Superior Court,* 230 Cal.App.3d 416, 420-423 (1991)).

26        Penal Code section 835a provides: "Any peace officer who has reasonable cause to believe that
27   the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance."

28

Request for Leave to File Motion to Reconsider                    7                    n:\lit\li2016\160554\01315312.docx
Woods v. CCSF, et al.; Case No. 15-cv-05666 WHO

qualified immunity, the Court should likewise have found that the state law good faith immunity embodied in 820.6 also applied.

## II.   CALIFORNIA GOVERNMENT CODE SECTION 821.6 APPLIES TO POLICE INVESTIGATIONS.

The Court found that Section 821.6 did not apply here because that statute only applies only to conduct during investigations in preparation for judicial proceedings.  Order at 19.  However, settled precedent interprets 821.6 to apply to police investigations of crimes because such an investigation is a necessary precedent to filing a complaint if a crime is determined to have been committed.

Section 821.6 is not limited to the act of filing a criminal complaint. Instead, it also extends to actions taken in preparation for formal proceedings. Because investigation is "an essential step" toward the institution of formal proceedings, it "is also cloaked with immunity." *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 1436–1437 (1988); see, e.g., *Johnson v. City of Pacifica*, 4 Cal.App.3d 82 (1970)(police officers immune for their negligent investigation of a crime); *Amylou R. v. City of Riverside*, 28 Cal. App. 4th 1205, 1209–10 (1994). See also:  *Crowe v. County of San Diego*, 303 F.Supp.2d 1050, 1120 (S.D. Cal. 2004), rev'd in part on other grounds, 608 F.3d 406 (9th Cir. 2010) (applying Section 821.6 immunity to officers who conducted interrogations and strip searches during the course of a murder investigation and specifically rejecting the argument that 821.6 only shields officers from liability for damages suffered after the judicial process).

Defendants maintain that 821.6 extends to police investigations.  See *Blankenhorn v. City of Orange*, 485 F.3d 463, 487–88 (9th Cir. 2007) (citing *Kayfetz v. California*, 156 Cal.App.3d 491, 497 (1984))(821.6 "also 'extends to actions taken in preparation for formal proceedings, including actions incidental to the investigation of crimes," *Id*. at 488 (citing *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209–11 (1994)). "Even so, section 821.6, as it applies to police conduct, is limited to actions taken in the course or as a consequence of an investigation." *Id*.

The record is abundantly clear that the defendant officers responded to the scene where Woods was located to investigate a stabbing.  An investigation into the stabbing would have necessarily preceded the filing of a complaint if it were determined a crime had been committed.  Certainly, in the

1  context of a *Hayes*[5] claim under state law, all aspects of the investigation preceding the shooting were

2  subject to the immunity, even if the Court finds the use of force was not.

3  <center>**CONCLUSION**</center>

4        For the foregoing reasons, defendants respectfully request the Court to reconsider its previous

5  denial of immunities to the state law causes of action.

6  Dated:  October 30, 2018

7                          DENNIS J. HERRERA
                        City Attorney

8                          CHERYL ADAMS
                        Chief Trial Attorney

9                          SEAN F. CONNOLLY
                        JAMES F. HANNAWALT

10                          KELLY COLLINS
                        Deputy City Attorneys

11

12                By:   */s/ Sean F. Connolly*
                        SEAN F. CONNOLLY

13

14                          Attorneys for Defendants
                        CITY AND COUNTY OF SAN FRANCISCO, ET AL.

15

16

17

18

19

20

21

22

23

24

25

26

27

---

28       [5] *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013).