JOHN L. BURRIS, ESQ., SBN 69888
ADANTE D. POINTER ESQ., SBN 236229
MELISSA C. NOLD ESQ., SBN 301378
PATRICK BUELNA, ESQ. SBN 317043
**THE LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7767 Oakport St., Suite 1120
Oakland, California 94621
Telephone:     (510) 839-5200
Fascimile:      (510) 839-3882

Attorneys for Plaintiff

DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Attorney
SEAN F. CONNOLLY, State Bar #152235
JAMES F. HANNAWALT, State Bar #139567
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3863 [Connolly]
Telephone:     (415) 554-3913 [Hannawalt]
Facsimile:      (415) 554-3837
Email:           sean.connolly@sfcityatty.org
Email:           james.hannawalt@sfcityatty.org

Attorneys for Defendants
OFFICER CHARLES AUGUST, OFFICER NICHOLAS
CUEVAS, OFFICER SCOTT PHILLIPS, OFFICER
ANTONIO SANTOS, AND OFFICER WINSON SETO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN WOODS, individually and as Successor in Interest to Decedent MARIO WOODS, | Case No. 15-cv-05666 WHO |
| Plaintiff, | **JOINT PRETRIAL STATEMENT** |
| vs. | Hearing Date:  March 11, 2019<br>Time:              2:00 p.m.<br>Place:             Courtroom 2, 17th Floor<br>                      450 Golden Gate Ave.<br>                      San Francisco, CA |
| CHARLES AUGUST; NICHOLAS CUEVAS; SCOTT PHILLIPS; ANTONIO SANTOS; AND WINSON SETO, | Trial Date:       April 1, 2019 |
| Defendants. | |

The parties hereby submit their Joint Pretrial Conference Statement:

**THE ACTION**

I.     **SUBSTANCE OF THE ACTION**

    **A.     Plaintiff's Version:**

This lawsuit involves the shooting death of Mario Woods on December 2, 2015 in San Francisco, California.  His mother, Plaintiff Gwendolyn Woods, sues Defendants Charles August, Nicholas Cuevas, Scott Phillips, Antonio Santos, and Winston Seto.  Two claims California State Law remain for trial:  (1) a claim under California Civil Code Section 52.1 (the Bane Act) for violation of Mario Woods' rights under the Fourth Amendment; (2) a claim for Wrongful Death based on negligence, pursuant to California Code of Civil Procedure Section 377.60.

    **B.     Defendants Version:**

This lawsuit involves the shooting death of Mario Woods.  His mother, Gwendolyn Woods, sues Defendants Charles August, Nicholas Cuevas, Scott Phillips, Antonio Santos, and Winston Seto. Two claims remain for trial:  (1) a claim for Wrongful Death based on negligence, pursuant to California Code of Civil Procedure Section 377.60; and (2) a Survival Action for violation of California Civil Code Section 52.1 (the Bane Act) based on the Fourth Amendment.  Defendants contend their actions were lawful because decedent posed an imminent threat at the time he was shot.

As discussed elsewhere in this statement, the parties agree that the remaining claims for trial are brought on by Gwendolyn Woods as Successor in Interest to Mario Woods.  The parties disagree as to whether Gwendolyn Woods may pursue her own personal claims for Wrongful Death.

II.    **RELIEF PRAYED**

    **A.     Plaintiff seeks:**

        1.     **Compensatory damages**

            (a)     **Monetary** – Funeral expenses

                (i)     Witnesses:

                    1.     Gwendolyn Woods

                    2.     Sally Carter

                    3.     Michael Woods

1                                 4.      Shawn Richard

2                        (ii)    Exhibits:

3                                 1.      Funeral Bills and Receipt of Costs

4            (b)     **Non-monetary** - love, companionship, comfort, care, assistance,

5                    protection, affection, society, moral support, guidance and training.

6                        (i)     **Witnesses**:

7                                 1.      Gwendolyn Woods

8                                 2.      Michael Woods

9                                 3.      Lateefah Barnes

10                                4.      Joseph Perkins

11                                5.      Sally Carter

12                                6.      Rokesha Pineda

13                                7.      Shawn Richard

14                                8.      Tyson Amir Mustafa

15                                9.      Lyzette Dukes

16                                10.     Wendell El Amin James

17                                11.     Dr. Marlin Griffith

18                       (ii)    **Exhibits**:

19                                1.      Correspondence between Plaintiff and Mario Woods

20                                2.      Pictures of Plaintiff and Mario Woods

21                                3.      Folsom State Prison Invoices for Purchases

22                                4.      Mario Woods Birthday Video

23                                5.      Mario Woods Death Certificate

24                                6.      Condolence Letters to Plaintiff

25                                7.      Mario Woods Six Flags ID

26                                8.      Mario Woods visitation records

27           (c)     Mario Woods' Conscious Pain and Suffering

28                       (i)     Witnesses:

1

             1.       Defendants

2

             2.       Rueben Rivera

3

             3.       Deja Caldwell

4

             4.       Medical Examiner Hunter

5

             5.       Andres Hernandez

6

             6.       Robert Taylor

7

      (ii)    Exhibits:

8

             1.       Videos of Mario Woods' shooting death

9

             2.       Medical Examiner's Report

10

             3.       Autopsy and Post-humus photographs

11

    2.    **Punitive damages** – To be determined by jury.

12

  **B.**    **Defendants Seek**

13

Defendants seek a judgment in favor of individual defendants and costs of suit.

14

<strong>THE FACTUAL BASIS OF THE ACTION</strong>

15

**I.**    **UNDISPUTED FACTS**

16

  A.    Mario Woods was the son of Gwendolyn Woods.

17

  B.    Officers August, Cuevas, Phillips, Santos, and Seto were acting in the course and scope

18

          of their employment for the City and County of San Francisco as police officers when

19

          they employed lethal force against Mario Woods.

20

21

**II.**    **DISPUTED FACTUAL ISSUES**

22

  A.    Whether Officer August's use of force was reasonable under the totality of

23

          circumstances.

24

  B.    Whether Officer Cuevas' use of force was reasonable under the totality of

25

          circumstances.

26

  C.    Whether Officer Phillips' use of force was reasonable under the totality of

27

          circumstances.

28

D.   Whether Officer Santos' use of force was reasonable under the totality of circumstances.

E.   Whether Officer Seto's use of force was reasonable under the totality of circumstances.

F.   Whether Officer August's use of force was unreasonable under the totality of circumstances and whether he specifically intended to use unreasonable force.

G.   Whether Officer Cuevas' use of force was unreasonable under the totality of circumstances and whether he specifically intended to use unreasonable force.

H.   Whether Officer Seto's use of force was unreasonable under the totality of circumstances and whether he specifically intended to use unreasonable force.

I.   Whether Officer Santos' use of force was unreasonable under the totality of circumstances and whether he specifically intended to use unreasonable force.

J.   Whether Officer Phillips' use of force was unreasonable under the totality of circumstances and whether he specifically intended to use unreasonable force

K.   Whether Mario Woods was under the influence of methamphetamine, THC, Amitriptyline, Nortriptyline, and Dextromethorphan at the time of his death on December 2, 2015.

L.   Whether Defendants' actions in attempting to arrest Mario Woods for stabbing Marcel Sheppard-Gardner were motivated by a good faith belief by the officers that their conduct conformed with the duties described in California Penal Code § 835a.

M.   Whether Defendants' actions in attempting to detain, investigate and arrest Mario Woods for stabbing Marcel Sheppard-Gardner were done in good faith such that their investigation up to the time lethal force was used is subject to immunity pursuant to California Government Code Section 821.6.

N.   Whether Defendants actions were in good faith, without malice, and under the apparent authority of their right to use force to effect an arrest, overcome resistance, or in face of an imminent threat of death or great bodily harm such that they are not liable for the injury caused thereby.  Cal. Gov. Code § 820.6; Cal. Penal Code §§ 835a, 196.

O.   Whether Defendants used poor and negligent preshooting tactics when investigating Mario Woods.

P.   Whether Defendants used excessive force when they fired more than twenty shots into Mario Woods.

Q.   Whether Officer August or someone else was in imminent danger of death or serious bodily harm from Mario Woods.

R.   Mario Woods was unemployed December 2, 2015.

S.   Mario Woods was on parole on December 2, 2015.

T.   Mario Woods had previously been convicted of two felonies.

U.   Mario Woods had previously been convicted of two misdemeanors.

V.   Mario Woods had previously served time in prison.

W.   Mario Woods was in violation of his parole on December 2, 2015.

X.   Mario Woods was a subject of a Gang Injunction.

Y.   Mario Woods had no residence on December 2, 2015.

Z.   Mario Woods was not living with Gwendolyn Woods in December 2015.

AA.   The Estate of Mario Woods has no economic damages.

BB.   Mario Woods ever provided financial support to Gwendolyn Woods.

CC.   Mario Woods stabbed Marcel Sheppard Gardner at about 3 p.m. on December 2, 2015.

DD.   The description of the person who stabbed Marcel Sheppard Gardner at about 3 p.m. on December 2, 2015, was a "younger" "black male, "about 5'8,"" "tan pants," "black" "North Face style" "jacket," "black baseball cap" with "white insignia on front" wearing a "backpack."

EE.   Mario Woods was a young black male about 5'8" tall.  On December 2, 2015, when approached by Officer August, Mario Woods was wearing tan pants, a black North Face jacket, backpack and black baseball cap.

FF.   Defendants had legal cause to detain and arrest Woods when they contacted him on the corner of Keith and Fitzgerald.

GG.   San Francisco police officers were not issued body worn cameras in December 2015.

HH.   San Francisco police officers were not issued Tasers in December 2015.

II.    Mario Woods was armed with a knife at the time he was killed in December 2015.

JJ.    Mario Woods refused numerous police orders to drop the knife he was holding on December 2, 2015 when confronted by police at Keith and Fitzgerald Streets in San Francisco.

KK.   Mario Woods refused numerous police orders to get on the ground on December 2, 2015 when confronted by police at Third and Fitzgerald Streets in San Francisco.

LL.    Mario Woods was struck with less than lethal 40mm rubber bullets no less than four times.

MM.   At the time of his death, Mario Woods had methamphetamine, amphetamine, THC, Amitriptyline, Nortriptyline, and Dextromethorphan in his blood.

NN.   Mario Woods was struck with less than lethal bean bag projectiles no less than twice.

OO.   Mario Woods died from gunshots that struck him in the head on December 2, 2015.

## III.   AGREED STATEMENT

The parties do not agree on the extent to which this action could be presented based on an agreed statement of facts.

## IV.   STIPULATIONS

### A.   The Parties Have Stipulated

1.   The Parties stipulate to the authentication and foundation for the Muni surveillance and platform videos.

2.   The parties stipulate to the authenticity and admissibility of audiotaped radio communications.

### B.   Defendants' Proposed Stipulations

1.   Mario Woods was unemployed December 2, 2015.

2.   Mario Woods was on parole on December 2, 2015.

3.   Mario Woods had previously been convicted of two felonies.

4.   Mario Woods had previously been convicted of two misdemeanors.

5.   Mario Woods had previously served time in prison.

6.     Mario Woods was in violation of his parole on December 2, 2015.

7.     Mario Woods was a subject of a Gang Injunction.

8.     Mario Woods had no residence on December 2, 2015.

9.     Mario Woods was not living with Gwendolyn Woods in December 2015.

10.    The Estate of Mario Woods has no economic damages.

11.    Mario Woods ever provided financial support to Gwendolyn Woods.

12.    Mario Woods stabbed Marcel Sheppard Gardner at about 3 p.m. on December 2, 2015.

13.    The description of the person who stabbed Marcel Sheppard Gardner at about 3 p.m. on December 2, 2015, was a "younger" "black male, "about 5'8,"" "tan pants," "black" "North Face style" "jacket," "black baseball cap" with "white insignia on front" wearing a "backpack."

14.    Mario Woods was a young black male about 5'8" tall.  On December 2, 2015, when approached by Officer August, Mario Woods was wearing tan pants, a black North Face jacket, backpack and black baseball cap.

15.    Defendants had legal cause to detain and arrest Woods when they contacted him on the corner of Keith and Fitzgerald.

16.    San Francisco police officers were not issued body worn cameras in December 2015.

17.    San Francisco police officers were not issued Tasers in December 2015.

18.    Mario Woods was armed with a knife at the time he was killed in December 2015.

19.    Mario Woods refused numerous police orders to drop the knife he was holding on December 2, 2015 when confronted by police at Keith and Fitzgerald Streets in San Francisco.

20.    Mario Woods refused numerous police orders to get on the ground on December 2, 2015 when confronted by police at Third and Fitzgerald Streets in San Francisco.

21.   Mario Woods was struck with less than lethal 40mm rubber bullets no less than four times.

22.   At the time of his death, Mario Woods had methamphetamine, amphetamine, THC, Amitriptyline, Nortriptyline, and Dextromethorphan in his blood.

23.   Mario Woods was struck with less than lethal bean bag projectiles no less than twice.

24.   Mario Woods died from gunshots that struck him in the head on December 2, 2015.

### DISPUTED LEGAL ISSUES

## I.   PLAINTIFF'S SUMMARY OF LAW

### A.   Causes of Action:

#### 1.   Negligence/Wrongful Death

Plaintiff Gwendolyn Woods asserts direct liability against the Defendant Officers and against Defendant City and County of San Francisco under a theory of respondeat superior, individually for the wrongful death of her son Mario Woods. Under California law, public employees "are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons." *Hayes v. County of San Diego*, 57 Cal.4th 622 (2013); see also Cal. Gov. Code § 820. In addition, "public entities are generally liable for injuries caused by the negligence of their employees acting within the scope of their employment." *Id.*; see also Cal. Gov. Code § 815.2. "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages" suffered by the heirs. *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1264 (2006).

The California Supreme Court reaffirmed that under California negligence law, police officers have a duty to act reasonably when using force. *Hayes v. Cnty. Of San Diego*, 57 Cal. 4th 622, 629 (2013); *Munoz v Olin*, 24 Cal. 3d 629, 634 (1979); *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970). Moreover, the California Supreme Court has held that the negligence analysis is even broader that a typical Fourth Amendment analysis because state law specifically considers negligent "pre-shooting" tactics as part of the "totality of the circumstances" evaluation. *Hayes*, 57 Cal. 4th at 639

1    ("an officer's tactical conduct and decisions preceding the use of deadly force are relevant

2    considerations in determining whether the use of deadly force gives rise to negligence liability, which

3    can arise, for example, if the tactical conduct and decisions show, as part of the totality of

4    circumstances, that the use of deadly force was unreasonable.").

5          The California Supreme Court recently reaffirmed long-standing precedent that when an

6    officer's pre-shooting conduct did not cause the plaintiff any injury independent of the injury resulting

7    from the shooting, negligence "liability can arise if the tactical conduct and decisions leading up to the

8    use of deadly force show, as part of the totality of circumstances, that the use of deadly force was

9    unreasonable." *Hayes*, 57 Cal.4th at 632. "In short, California recognizes that peace officers have a

10   duty to act reasonably when using deadly force, and reasonableness is determined in light of the

11   totality of the circumstances, including consideration of tactical and preshooting actions." *Young Han*

12   *v. City of Folsom*, 695 Fed.Appx. 197, 198 (9th Cir. 2017); CACI 440.

13       **B.**    **Wrongful Death Damages**

14         A parent in a wrongful death action may recover for loss of a child's comfort and society and

15   subsequent protection which child may have afforded parent provided those elements are considered in

16   reasonable relation to pecuniary loss. *Fields v. Riley*, 81 Cal.Rptr 71. California permits recovery in a

17   child's wrongful death action for loss of a parent's consortium. *Boeken v. Phillip Morris USA Inc.*,

18   217 Cal.App.4th 992, 997-1000 (2013); *Soto v. BorgWarner Morse TEC Inc.*, 239 Cal.App.4th 165,

19   198-199 (2015); CCP § 377.61; CACI 3921.

20       **C.**    **Bane Act:  Cal. Civ. Code § 52.1**

21         Plaintiff Gwendolyn Woods on behalf of her son Mario Woods brings forth a cause of

22   action under the Bane Act, Cal. Civ. Code § 52.1 for the interference by way of threats, intimidation

23   and violence with Mario Woods' exercise and enjoyment of his individual rights secured by the

24   Constitution.

25       **1.**    **Damages:**

26         The Bane Act provides for damages up to three times actual damages but a minimum of

27   $4,000 for violations if actual damages are less than $4,000 or none are awarded and attorney's fees.

28   Civil Code § 52(a); CACI 3066.

**D.      Evidentiary Issues:**

Here, in this case, there are multiple videos taken from different angles and/or perspectives that captured the confrontation and shooting death of Mario Woods. The videos were taken by percipient witnesses' cell phones and by two Muni buses that happened to be in the area. All of the videos are capable of being played to the jury in an effort to let them decide for themselves what took place and/or to determine whether the Defendant Officers' acts and/or omissions constitute negligence under the wrongful death statute and/or violated Plaintiff's claims under the Bane Act.

Neither party should be permitted to substitute their interpretation of what the videos show for that of the trier of fact by way of offering expert opinion to be substituted for that of the jurors. The videos are the best evidence and the jurors do not need another individual, be it a lay person or an expert to essentially tell them "to not believe their lying eyes." Instead, the court should let the best evidence speak for itself. FRE 702 et seq. and 1002.

**E.      Defendants Pseudo Rule 12(b)(1) Motion to Dismiss Plaintiff's Wrongful Death Claim**

Defendants improperly bring forth a Rule 12 (b)(1) motion in a pretrial conference statement and their motion *in limine* in an effort to manufacture an issue around standing when this should be properly assessed (if at all) by a Rule 12 (b)(1) motion. Even if Defendants chose to file the proper motion, it would fail.

**1.      Plaintiff Filed a Timely Claim for her Wrongful Death and Survival Causes of Action**

Plaintiff filed a Government Tort Claim on December 15, 2015 which alleged causes of action for negligence, Bane Act and wrongful death. (See Plaintiff's Endorsed Claim to CCSF attached).

A Government Tort Claim merely requires the name and address of the claimant, the general circumstances of the occurrence and the name(s) of the public entity involved. CCP 910. Each theory of recovery against the public entity and the factual circumstances set forth in the claim must correspond with the facts alleged in the complaint. *Castaneda v. Department of Corrections & Rehabilitation*, 212 Cal.App.4th 1051, 1060 (2nd. Dist. 2013); *see also Munoz v. State of California*

(1995) 33 Cal.App.4th 1767, 1776. There is no requirement within a government tort claim requirement to identify Claimant the factual basis for their standing. Rather the "aim of the tort claim statutes is to provide sufficient information to enable the public entity to investigate claims and settle, if appropriate, without the expense of litigation, and to take the potential claim into account in fiscal planning."

Plaintiff out of an abundance of caution identified herself as "the biological mother of Decedent Mario Woods and the sole surviving parent as the Decedent's biological father is deceased and she is therefore the sole successor-in-interest for Decedent Mario Woods." (Endorsed Claim, page 1) – but did not file the claim as the Estate or even solely as the successor-in-interest. Plaintiff notes that she would need to be the sole heir in this case in order to file both the wrongful death and survival causes of action, which is analyzed below. In fact, Plaintiff filed her claim generally as Claimant and Defendants cannot point to single place in her claim where she alleged it "as-successor-in-interest". (Id.) Furthermore, Plaintiff specifically included a wrongful death cause of action. (Endorsed Claim, page 3). Plaintiff also alleged facts within the Claim that accurately correspond to her Complaint.

Nevertheless, Defendants appear to make an argument that Plaintiff needed to file two paper packets in order to recover under the causes of action for wrongful death and Woods' survival causes of action. Defendants rely on mischaracterizations of case law for their nonsensical position.

Defendants rely on *Castaneda v. Department of Corrections & Rehabilitation*, 212 Cal.App.4th 1051 (2013); *Nelson v. County of Los Angeles* 113 Cal.App.4th 783 (2003); *Lewis v. City and County of San Francisco*, 21 Cal.App.3d 339, 341 (1971) for their assertion that Plaintiff should file two separate claims despite being the sole heir and filing a claim that cited the factual basis and specifically identified the wrongful death and Bane Act causes of action.  But none of these cases support their position.

In *Castaneda*, Francisco Castaneda presented a timely tort claim for medical malpractice allegations, then filed a lawsuit and died afterwards. *Castaneda,* supra at 1059. Then Castaneda's sister amended the lawsuit to substitute in the Estate and herself as person representative to take over the survival actions, and Francisco Castaneda's daughter, Vanessa Castaneda, amended the complaint to include an entirely new cause of action for wrongful death for which she had not filed

Joint Pretrial Statement
Woods v. August, et al.; Case No. 15-cv-05666 WHO
12
n:\lit\li2019\160554\01341955.docx

a tort claim. *Id.* The appellate court concluded that because Vanessa Castaneda's father theory of recovery relied completely on his survival actions, "Vanessa could not utilize Castaneda's tort claim for his predeath personal injuries as a substitute for her own wrongful death claim." *Castaneda*, supra at 1063. The court in *Castaneda* did not conclude that a person must file two separate paper packets, one for their claims as the Estate and one for their claims individually. Rather, the court in *Castaneda* noted that if there are two different individuals that they must each file their own claim.

Similarly in *Lewis*, the Decedent filed a timely government claim for personal injury and then a lawsuit but died. *Lewis*, supra at 339. Decedent's husband took over the survival causes of action for the Decedent. *Id.* The daughters and husband did not file tort claims for wrongful death actions afterwards so their claims were dismissed at trial, because Decedent's claim could not be utilized for their wrongful death claims. *Id.* The appellate court concluded one heir's filing of the claim cannot be used to preserve a different heirs claim. *Id.*

Here, Plaintiff did file both a wrongful death and survival cause of action claim and was the proper person to file both. Plaintiff is confused by Defendants argument on this issue. Defendants appear to be taking the position that Plaintiff needed to file two separate packets of paper or some nonsense to that effect without any legal or statutory authority. The cases Defendants did happen to cite involved a situation where the person filed a government claim and lawsuit then *died* while the lawsuit was still pending, and the remaining heirs failed to file a wrongful death claim afterwards.

Finally, Defendants cite *Nelson* to support their position that Plaintiff needed to file to separate paper packets. *Nelson v. County of Los Angeles,* 113 Cal.App.4th 783 (2003).  In *Nelson*, the parents filed claims for wrongful death tort claims for the deceased son but their claim did not identify survival causes of action or include any damages that would suggest they were filing in both their capacity as the Estate and the individual. *Id.* at 796. The appellate court explained:

> "Since Dwayne's estate did not file a claim, and since there is nothing in Mrs.
> Nelson's claim to suggest it was filed in anything other than her individual
> capacity, and since the damages described in the claim were for "the loss of a
> son" (with no mention of any damage incurred by Dwayne before his death), the
> trial court properly resolved the survivorship claims against Mrs. Nelson." (*Id.*)

Here, Plaintiff explicitly alleged a wrongful death cause of action, past and future damages (such as funeral and burial expenses, mental scarring), that are consistent with her filing for wrongful death claims. Plaintiff's Second Amended Complaint Sufficiently Plead a Wrongful Death Claim Because Plaintiff Sued Individually and as Successor-in-Interest.

Additionally, Defendants appear to make an argument in regards to Plaintiff's standing because a subtitle of her cause of action for Wrongful Death in her Second Amended Complaint identifies her as the successor-in-interest. Defendants' pseudo-motion that Plaintiff does not have standing to bring her Wrongful Death Claim as pled is a facial attack on the sufficiency of Plaintiff's Second Amended Complaint. A "facial attack" challenges the sufficiency of the plaintiff's pleadings on jurisdictional grounds, and when considering a facial attack on a motion to dismiss for lack of subject matter jurisdiction, a court must accept the allegations contained in the plaintiff's complaint as true. *Brown v. Tucci*, 960 F.Supp.2d 544, 561 (United States District Court, W.D. Pennsylvania 2013).

Importantly, the court must read the complaint in its entirety when a party attacks the pleadings. *Cook v. Winfrey*, 141 F. 3d 322, 326 (7th Cir. 1998) (holding imperfections in the pleading style will not divest as federal court of jurisdiction where the complaint as a whole reveals a proper basis for jurisdiction).

Here, Defendants ignore the entirety of the Second Amended Complaint, but the court cannot.  Plaintiff plead the entire Complaint as "individually and as Successor in Interest". Dckt #48, page 1. In fact, Plaintiff explicitly identifies herself as the proper individual to bring forth Wrongful Death (CCP 377.60) and Survival Actions (CCP 377.30) Claims. Dckt #48, page 3, paragraph 5.

It is important to note that in this case, the Court retains supplemental jurisdiction and the standing question for the wrongful death claim is resolved by CCP 377.60.

CCP 377.60 requires the decedent's surviving spouse, domestic partner, children, and issue of deceased children to bring the wrongful death claim, but if there is none then the person "who would be entitled to the property of the decedent by intestate succession." CCP 377.60 (a). Probate Code 6402 dictates that if "there is no surviving issue, to the decedent's parent or parents equally." (CPC 6402 (b).)

Here, Plaintiff alleges herself to be the biological mother of Decedent Mario Woods, who has no children or spouse. Dckt #48, paragraph 5.  Plaintiff alleges that Decedent's father is deceased as well, leaving Plaintiff as the sole parent and person to allege the claim. (*Id*.) As such she alleges properly that she is the person "with standing to bring the action pursuant to California Code of Civil Procedure 377.30 and 377.60 and California Probate Code 6402." (Id.).

Therefore, based on the pleading, Plaintiff has sufficiently plead in her Second Amended Complaint that she is the correct person to bring the wrongful death claim. Defendants' reliance on a subtitle is fallacious and grossly mischaracterizes the Second Amended Complaint.

### F.     Defendants Raise the Same Legal Issues that Were Denied in Their Motion for Summary Judgment and Motion for Reconsideration

Defendants again raise issues of state qualified immunity that the Court denied in its Motion for Summary Judgement and Motion for Reconsideration Order.

Defendants also raise the issue of specific intent for the Bane Act Claim. Again the Court dealt with this at summary judgment, Plaintiff need only prove that Defendants used excessive force with reckless disregard for Decedent's constitutional right to be free from unreasonable force.

Defendants also attempt to cut off Plaintiff's survival action damages for the pain and suffering Woods suffered prior to death. Plaintiff may recover for all of the physical pain and mental anguish prior to Decedent's death. A jury may reasonably conclude that Woods felt pain and mental anguish prior to his death as a result of Defendants' negligence especially in light of the manner Woods and Defendant August behaved immediately prior to Defendant August firing his gun.

## II.     DEFENDANTS SUMMARY OF LAW

Two claims remain for trial, they are brought under California state law:  (1) a claim for Wrongful Death based on negligence, pursuant to California Code of Civil Procedure section 377.60; and (2) a Survival Action for violation of California Civil Code Section 52.1 (the Bane Act), based on excessive force under the Fourth Amendment.[1]  Only the five named individual officers remain as

---

[1] The Court granted summary judgment in favor of defendants and dismissed all of plaintiff's Federal Claims, causes of action One, Two and Three.  Dkt. 143.  Plaintiff has dismissed the sixth cause of action for Battery.

defendants.[2]  The operative complaint in this case identifies only Gwendolyn Woods, *as Successor in Interest to Mario Woods* as the plaintiff for the state law claims.  Second Amended Complaint, 11:1-12:10, Dkt. 48.  The legal framework for trial is as follows:

### A. The Only Proper Plaintiff In This Lawsuit Is The Successor In Interest Of Mario Woods.  Gwendolyn Woods Has No Claim In Her Personal Capacity.

The Complaint names only Gwendolyn Woods, *as Successor in Interest to Mario Woods*, as the plaintiff in the Fourth and Fifth causes of action.  SAC 11:1-12:10.  Dkt. 48.  However, plaintiff intends to pursue damages at trial on behalf of Gwendolyn Woods in her individual capacity, for her own personal damages.

### 1. Only the Estate of Mario Woods Can Pursue The Bane Act Claim.

The Bane Act claim is a "survival action" i.e. it is a claim that belonged to the decedent and survives his death.  Cal. Code Civ. Proc. § 377.20.  The decedent's personal representative or successor in interest may pursue the claim.  Cal. Code Civ. Proc. § 377.30.  Gwendolyn Woods has no personal claim under the Bane Act.  *Bay Area Rapid Transit Dist. v. Superior Court of Alameda County*, 38 Cal. App. 4th 141 (1995) (Bane Act is not a wrongful death provision and does not provide for derivative liability for persons not present and not witnessing the alleged conduct); accord, *Medrano v. Kern County Sheriff's Officer*, 921 F.Supp.2d 1009, 1016 (E.D. Cal. 2013); *Dela Torre v. City of Salinas*, 2010 WL 3743762, at *6 (N.D. Cal. Sept. 17, 2010) (parent has no claim under Bane Act for wrongful death).

### 2. Gwendolyn Woods Is Barred From Pursuing A Personal Claim For Wrongful Death.

The Fourth Cause of Action is for "Wrongful Death - Negligence" is brought on behalf of "Gwendolyn Woods, Successor in interest to Mario Woods."  SAC 11:1-19.  Dkt. 48.  A wrongful death action may be brought "by the decedent's personal representative" or by persons specifically identified in the statue.  C.C.P. § 377.60.  The plaintiff chose to identify only the successor in interest

___

[2] In granting summary judgment, the Court dismissed the claims against the City.  Dkt. 143.

to Mario Woods as a party to this cause of action.  The wrongful death – negligence claim should be limited accordingly.

Even if the negligence cause of action could be construed as on behalf of Gwendolyn Woods for her own personal damages, the cause of action is barred because plaintiff failed to file a Government Claim.  Plaintiff's state law claims are subject to the California Government Claims Act. The Government Claims Act, formerly known as the Tort Claims Act, provides that an injured party may not bring suit against a public entity unless a claim is presented to and rejected by the entity within the time provided by statute.  Govt. Code, §§ 900 et seq., 945.4; *Nelson v. County of Los Angeles* 113 Cal.App.4th 783, 796 (2003).  Compliance with the claim presentation requirement is a condition precedent to a civil suit for damages.  *Castaneda v. Department of Corrections & Rehabilitation*, 212 Cal.App.4th 1051, 1061 (2013).  The requirement applies to claims against an employee of a public entity for acts in the course and scope of their employment.  Cal. Gov. Code, § 950.2.

The claim must include the "date, place and other circumstances of the occurrence ... which gave rise to the claim" and a "general description" of the "injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim."  Cal. Gov. Code § 910.  Actions alleging matters not included in the claim are barred.  *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, (1984).

> If a plaintiff relies on more than one theory of recovery against the [governmental agency or employee], each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer [or dismissal] if it alleges a factual basis for recovery which is not fairly reflected in the written claim.

*Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal.App.3d 431, 434, (1998) (brackets in original; citations omitted).  "Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity." *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984). "In other words, the factual content of the plaintiff's claim [is] viewed by the trial court as operating to proscribe the limits of any later action for which filing the claim is a precondition." *Williams v. Braslow*, 179

Cal.App.3d 762, 770, 224 Cal.Rptr. 895 (1986). Each "theory of recovery" must be reflected in a timely claim, and "the factual circumstances set forth in the claim must correspond with the facts alleged in the complaint." *Munoz v. State of California*, 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995).

For purposes of claims presentation, "[a]n action for wrongful death is wholly distinct from an action by the decedent, in his lifetime, for the injuries which ultimately cause his death." *Lewis v. City and County of San Francisco*, 21 Cal.App.3d 339, 341, 98 Cal.Rptr. 407 (1971). Where two or more persons have suffered separate and distinct injuries from the same act or omission, they must each present a claim and neither can rely on the claim presented by the other. *Castaneda*, 212 Cal.App.4th at p. 1062; *Nelson*, 113 Cal.App.4th at p. 796. "This rule applies where different claimants are alleging survivor theories and wrongful death theories of liability arising from the same transaction." *Castaneda*, at p. 1062; *Nelson*, at pp. 796–797. "It has long been the law in California that '[a]n action for wrongful death is wholly distinct from an action by the decedent, in his lifetime, for the injuries which ultimately cause[d] his death [citation]." *Castaneda*, at p. 1063. *See also, Lewis v. City and County of San Francisco*, 21 Cal.App.3d 339, 341, (1971) ( "filing of a wrongful death claim by one heir for herself alone, even though it similarly gives the public body full opportunity to investigate, does not excuse absence of a claim by another heir").

Plaintiff submitted a claim on behalf of Gwendolyn Woods as Successor in Interest to Mario Woods. No claim was presented on behalf of Gwendolyn Woods for personal damages. See, Declaration of Matthew Rothschild, Ehx. A. Accordingly, Gwendolyn Woods cannot state a cause of action in her individual capacity. This lawsuit is limited to those only those claims that can be stated on behalf of decedent.

### B. Survival Statute Bars Negligence Claim.

As a claim brought by the Successor in Interest to decedent, the negligence claim fails for lack of compensable damages. California Code of Civil Procedure section 377.34, provides: "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable ... do not include damages for pain, suffering, or disfigurement." Plaintiff has no evidence of that decedent suffered damages that survived his death. The negligence

1    claim fails accordingly.  *See, Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1050–51

2    (9th Cir. 2009), citing *Berkley v. Dowds*, 152 Cal.App.4th 518, 530 (2007) (claim on behalf of

3    decedent for tortious infliction of emotional distress failed for lack of compensable damages under

4    C.C.P. § 377.34; possibility of recovering punitive damages did not change ruling because there can be

5    no award of punitive damages without an award of actual damages); See also, *Pajas v. County of

6    Monterey*, 2016 WL 3648668, at 11 (N.D. Cal. 2016) (negligence claims dismissed in survival action

7    where application of CCP 377.34 resulted in no recoverable damages).

8           **C.    Negligence Claim**

9           As explained above, there is no claim for negligence in this case because Gwendolyn Woods is

10   barred from pursuing her own claim for damages and the Estate has no recoverable damages.  The jury

11   should only consider the Bane Act claim, which involves analysis of the use of force under a Fourth

12   Amendment standard.  If the jury is to consider the additional claim of negligence, the following legal

13   principles apply in light of the facts in this case:

14                  **1.    Pre-Shooting Conduct or Tactical Decisions Are Not Actionable on Their
                           Own and Cannot be Used Against Defendants Because Defendants Had
15                         Probable Cause to Arrest Woods Before They Used Lethal Force.**

16          Tactical decisions and pre-shooting conduct are unfairly being used against the officers where

17   they have statutory immunity for the same conduct.  California law does not support the proposition

18   that tactical decisions or pre-shooting conduct, on its own, is actionable in a wrongful death case.  In

19   its decision in *Hayes v. County. of San Diego*, the California Supreme Court expressly declined to

20   reach that issue:   "because plaintiff did not allege a separate preshooting injury, this case does not

21   raise the question of what independent duty, if any, law enforcement personnel owe with regard to

22   their preshooting conduct, and <u>we have no reason here to decide that question</u>."  *Hayes v. County of

23   San Diego*, 57 Cal. 4th 622, 631, (2013) (emphasis added).

24          The Court also noted in *Hayes*, that it would "conflict with our past decisions on negligence" to

25   analyze excessive force by "divid[ing] plaintiff's cause of action artificially into a series of decisional

26   moments . . . then to permit plaintiff to litigate each decision in isolation."  *Hayes*, 57 Cal. 4th 622,

27   637–38.

28

To the extent the jury considers pre-shooting tactical decisions, it may only consider them as part of the totality of circumstances in evaluating whether the use of <u>lethal</u> force was reasonable. That determination does not involve an analysis of whether actions leading up to the shooting were themselves negligent. *Hayes*, 57 Cal. 4th 622, 639 (negligence liability can arise "if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of <u>deadly</u> force was unreasonable") (emphasis added).

Moreover, allowing analysis of whether tactical decisions and conduct are themselves negligent is inconsistent with Penal Code section 835a. Probable cause to detain and arrest Woods existed the moment the first officers saw him and determined that he matched the very detailed description of the stabbing suspect. Probable cause to arrest Woods existed the moment he delayed or obstructed an investigation (when he walked away from Officer August) and when he brandished the knife at Officer August. Once probable cause exists, police officers are entitled to use reasonable force to make an arrest or overcome resistance. "As long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that [officer] choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Brown v. Ransweiler,* 171 Cal.App.4th 516, 537–538 (2009); *Hayes*, 57 Cal. 4th 622, 637–38.

Because the defendants were not bound by considerations of negligence liability in their lawful efforts to arrest or apprehend decedent, those decisions cannot be recast as tactical decisions in order to impose liability.

Officers are entitled to immunity for investigations in contemplation of an arrest. Penal Code Section 821.6. See *Blankenhorn v. City of Orange*, 485 F.3d 463, 487–88 (9th Cir. 2007) (citing *Kayfetz v. California*, 156 Cal.App.3d 491, 497 (1984))(821.6 "also 'extends to actions taken in preparation for formal proceedings, including actions incidental to the investigation of crimes," *Id*. at 488 (citing *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209–11 (1994)). "Even so, section 821.6, as it applies to police conduct, is limited to actions taken in the course or as a consequence of an investigation." *Id*. Because officers are entitled to immunity for investigations

1  based on probable cause, no part of that investigation can be used against them to establish negligence.

2  Penal Code Section 835; 821.6.

3        **2.      In Considering the Totality of Circumstances, Fourth Amendment**
         **Principles Apply.**
4

5        During pretrial meet and confer conferences, plaintiff has maintained that "the Graham factors"

6  have no role in a wrongful death police shooting case.  The opposite is true.  See CACI 440.

7        The Graham factors are to be applied under California negligence law. (*Hernandez v.City of*

8  *Pomona* (2009) 46 Cal.4th 501, 514.  They are not exclusive (see *Glenn v. Wash. County* (9th Cir.

9  2011) 661 F.3d 460,467–468.); additional factors may be added if appropriate to the facts of the case.

10  See also, *Hayes v. County of San Diego*, 57 Cal. 4th 622, 632, (2013).

         **3.      The Jury Must Consider Whether Each Defendant Officer Is Negligent**
11

12        The claims for trial are alleged against the individual defendant officers only.  [Second

13  Amended Complaint 11:1 – 12:11] Dkt. 48.  The City is not identified as a defendant in any of those

14  causes of action.  *Id.*  In fact, the only cause of action in which the City was named as a defendant is

15  plaintiff's cause of action under *Monell*.  SAC 9:18-10:25.  Dkt 48.  That claim was dismissed on

16  summary judgment, plaintiff having abandoned the claim entirely.  Dkt. 143.

17        Even if the City were named as a defendant as to the remaining claims, plaintiff would still be

18  prohibited from arguing the general negligence of the City.  See, *Zelig v. Cty. of Los Angeles*, 27 Cal.

19  4th 1112, 1126–28, (2002) (public entity is not liable on theory of general negligence; rather, public

20  entity liable the acts/omissions of its employees); Cal. Gov. Code § 815 (public entity not liable for an

21  injury "[e]xcept as otherwise provided by statute....").  Similarly, the defendant officers are not liable

22  for the acts or omissions of others.  Gov.Code, § 820.8 (public employee not liable for an act or

23  omission of another person); Gov. Code § 820(a) (public employee liable for act/omission "to the

24  same extent as a private person") and Cal. Civil Code § 1714 (individuals liable for their own acts of

25  negligence).  Because no claims remain against the City, plaintiff cannot introduce evidence or

26  argument that the City was negligent or otherwise responsible for plaintiff's damages.

27        Plaintiff cannot overcome the defects in their pleading by requesting instructions on respondeat

28  superior on behalf of the City.  Plaintiff never alleged in the complaint that the City was liable under

1  respondeat superior for the conduct of the individual officers.  The allegations in the complaint are all

2  related to plaintiff's failed Monell allegation.  Example, SAC ¶20, alleging CCSF is liable for failing

3  to discipline defendant officers for their involvement in the underlying incident, ¶¶22 and 23, CCSF

4  liable because aware defendant officers had "history of violence" ¶ 27, CCSF liable for custom, policy

5  practice.

6       **D.  Bane Act Claim Requires Proof of a Fourth Amendment Violation And Element
            of Specific Intent.**

7

8       Plaintiff's Bane Act claim is predicated upon an alleged violation of decedent's Fourth

9  Amendment right to be free from unreasonable force.  Thus, plaintiff must first prove a Fourth

10  Amendment violation.  *Reese v. County of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018), quoting

11  *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[s]ection 52.1 does not provide any

12  substantive protections; instead, it enables individuals to sue for damages as a result of constitutional

13  violations.")[3]  For purposes of a claim under 52.1, proof of a Fourth Amendment violation is no

14  different under the Bane Act than it is under 42. U.S.C. § 1983.  *Reese*, 888 F. 3d 1044 ("elements of

15  the [Fourth Amendment] excessive force claim were the same" for purposes of 52.1 claim).

16       In addition to proof of a Fourth Amendment violation, the plaintiff must also prove that each

17  defendant had the specific intent to use lethal force that was "more than necessary under the

18  circumstances."  *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); citing *Cornell*

19  *v. City & County of San Francisco*, 17 Cal.App.5th 766, 225 Cal.Rptr.3d 356, 384 (2017) ("*Cornell*

20  adopted the specific intent standard established in *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031,

21  89 L.Ed. 1495 (1945), for assessing criminal violations of federal civil rights."); *United States v.*

22  *Reese*, 2 F.3d 870, 885 (9th Cir. 1993) (applying specific intent under *Screws*, "a mere intention to use

23  force that the jury ultimately finds unreasonable—that is, general criminal intent—is insufficient."

24  Rather, the jury must find that the defendants "intended not only the force, but its unreasonableness, its

25  character as 'more than necessary under the circumstances.' "); *See also, Sandoval v. County of*

26

27       [3] The Court already dismissed plaintiff's claim under the Fourteenth Amendment on its merits,
    finding no violation of the Fourteenth Amendment violation.  Dkt.  Thus plaintiff is restricted to a
28  Bane Act claim based solely on the Fourth Amendment.

*Sonoma*, 912 F.3d 509, 519–20 (9th Cir. 2018), (The specific intent inquiry for a Bane Act claim is focused on two questions: First, "[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case," and second, "[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?"). [4]

**E.      Recoverable Damages**

The Bane Act claim, which is a "Survival Action" and for Negligence, which is a "Wrongful Death" claim, involve distinct categories of damages.  Notably, the categories of damages are mutually exclusive.  Cal. Code Civ. Proc. § 377.61.

**1.      Bane Act – Survival Action**

A survival action is a claim that belonged to the decedent and passed on death to the decedent's estate.  Cal. Code Civ. Proc. § 377.30, et. seq.  The damages are limited to:  loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that decedent would have been entitled to recover had the decedent lived.  Cal. Code Civ. Proc. § 377.34.  Thus, the estate can recover for medical expenses and lost earnings incurred by the deceased before death.

As a matter of law, pain, suffering, or disfigurement of decedent prior to his death are not recoverable.  Cal. Code Civ. Proc. § 377.34 (damages recoverable "do not include damages for pain, suffering, or disfigurement.")  The Ninth Circuit has declined to honor California's ban on recovery for pre-death pain and suffering for claims of excessive force brought under 42. U.S.C. § 1983. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014).  However, plaintiff's 1983 claims have been adjudicated and dismissed.  Plaintiff's Bane Act claim is only before the Court because the

---

[4] In ruling on defendants' motion for summary judgment, the Court found, viewing the facts in the light most favorable to the plaintiff, a jury could conclude the officers acted with a "reckless disregard" for decedent's constitutional rights and, thus, plaintiff's claim survived summary judgment. Dkt. 143.  As explained in Reese, the Bane Act requires proof that defendant "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." Reese, 888 F.3d at 1045.  To that end, Reese explained that "reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." Id.

Survival Statute (CCP § 377.30 et. seq.) allows it.  Thus, as an action brought under the Survival Statue, plaintiff's Bane Act claims is subject to all of the rules and limitations of that statutory scheme.

Under the Survival Statute, damages are specifically limited to loss or damage sustained before death.  Thus, burial/funeral expenses, lost wages and medical expenses are also not recoverable under the Bane Act claim in this case because no such expenses were incurred by decedent prior to his death.  Cal. Code Civ. Proc. § 377.34.

No Statutory Penalties Available.  Plaintiff contends that the Estate of Mario Woods is entitled to penalties for violation of the Bane Act, citing section 52(a) of the Civil Code.  However, section 52(a) applies to discrimination claims brought under Sections 51, 51.5, or 51.6.  Cal. Civ. Code § 52(a) ("whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable . . . ").  The Bane Act statue contains no provision for penalties.  See, Cal. Civ. Code § 52.1.

### 2.      Negligence – Wrongful Death Action.

Wrongful Death is a statutory claim, pursuant to California Code of Civil Procedure section 377.60, et. seq., that allows certain specified persons to recover damages for the loss to them caused by the decedent's death.  Subject to proof, the Wrongful Death statue allows for recovery of damages for loss of comfort, society, and protection, *Corder v. Corder*, 41 Cal. 4th 644, 661 (2007); *Mendoza v. City of West Covina*, 206 Cal. App. 4th 702, 720, (2012); *Boeken v. Philip Morris USA Inc.*, 217 Cal. App. 4th 992, 997-998 (2013).  Funeral and burial expenses are also generally recoverable, subject to proof.  *Francis v. Sauve*, 222 Cal. App. 2d 102, 124, (1963).

Damages that are not recoverable under the Wrongful Death statue include:

Grief, anguish or emotional distress.  *Corder*, 41 Cal. 4th at 661; *Mendoza*, 206 Cal. App. 4th at 720; *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 347, (2010).

Punitive damages.  *Boeken*, 217 Cal. App. 4th at 997-998 (2013).

Damages for the decedent's pain and suffering during his or her lifetime.  *Fitch v. Select Products Co.*, 36 Cal. 4th 812, 819 (2005), *Corder*, 41 Cal. 4th 661.

Any other damages recoverable in a survival action under Code of Civil Procedure section 377.30 et seq. Code Civ. Proc., § 377.61.

Wrongful Death Damages are subject to reduction to the extent decedent's own negligence contributed to his or her injuries.  *Horwich v. Superior Court*, 21 Cal. 4th 272, 285, (1999).

### III.     FURTHER DISCOVERY OR MOTIONS

Defendants are filing a Motion to Dismiss Gwendolyn Woods as an individual Plaintiff based on the summary judgment order dismissing her Fourteenth Amendment claim, the pleading on the Second Amended Complaint, and Ms. Woods failure to file a government claim on her own behalf as an individual claimant.

### TRIAL ALTERNATIVES AND OPTIONS

### I.     SETTLEMENT DISCUSSION

A further Mandatory Settlement Conference is scheduled for March 4, 2019, with Magistrate Judge Nathanial Cousins.

### II.     CONSENT TO TRIAL BEFORE A MAGISTRATE JUDGE

Not Applicable.

### III.     AMENDMENTS, DISMISSALS

See section D.vii. above.

### IV.     BIFURCATION, SEPARATE TRIAL OF ISSUES

Plaintiff proposes bifurcation of liability from damages if the court denies plaintiff's Motion in Limine 1 to exclude all evidence about Mario Woods unknown to the officers at the time of the shooting.  Defendants oppose plaintiff's motion in limine one in the event that the court rules that Gwendolyn Woods is has a cause of action on her own behalf for negligence/wrongful death. Defendants' opposition is based on the facts that Mario Woods' past and future incarcerations are relevant to Gwendolyn Woods' damages.

Defendants respectfully requests that determination of the amount of punitive damages be bifurcated until there is a jury determination that punitive damages will be awarded.

### WITNESSES

A list of Plaintiff's Witnesses were filed and is attached as Appendix A.

Plaintiff may call the following witnesses who may offer expert opinions in this case:

- Scott Defoe is a retained police practices expert who may opine on practices, police procedures and training, including the use of lethal and non-lethal force when disarming and apprehending a suspect armed with an edged weapon and suffering mental impairment and all opinions contained in his Rule 26 report.

- Gregg Stutchman is retained forensic audio and video expert who will offer opinion and exhibits of his analysis of the audio-video evidence and all opinion contained in his Rule 26 Report.

Attached as Exhibit 1 are the curriculum vitae and reports of Plaintiff's expert witnesses

A list of Defendants' witnesses is attached as Appendix A.

Defendants may call the following witnesses who may offer expert opinions in the case:

- Durand Begault, Ph.D. is a retained expert in the area of forensic analysis of recorded audio-video evidence and acoustics.

- Don Cameron is a retained expert in the field of police practices, police procedures and training, including the use of lethal and non-lethal force when disarming and apprehending a violent felony suspect armed with an edged weapon and the role of perception reaction time in training and execution of police practices and procedures relevant to the present case.

- Craig Fries is a retained expert in forensic reconstruction analysis.  Mr. Fries will testify regarding the foundation and preparation of exhibits that graphically illustrate events in the present case.

- Emily Keram, MD is a retained expert in the field of forensic psychiatry and training of law enforcement personnel in dealing with mentally ill people.

- Christopher Lamiero is a retained expert in the area of criminal charging, prosecution, and sentencing.

- Michael Laufer, MD is a retained expert in the areas of forensic pathology, bullet trajectory, time and cause of death, and perception reaction time.

- John Mendelson, MD is a retained expert in the field of forensic toxicology.

- San Francisco Police Officer Bryan Peagler is an expert in the field of criminal gangs and criminal gang investigations in San Francisco.  Officer Peagler is an employee and testifying on behalf of the City and County of San Francisco. He is expected to testify regarding Mario Woods' criminal gang membership.

- San Francisco Police Sergeant Steven Pomatto is an expert in the field of defensive tactics, use of force, and the training of San Francisco Police Officers in these subject matter areas. Sergeant Pomatto is an employee and testifying on behalf of the City and County of San Francisco. He is expected to testify regarding the use of force at issue in the present case and whether the defendant officers' conduct was consistent with their training and the policies of the San Francisco Police Department in December 2015.

- San Francisco Police Sergeant Donald Anderson is an expert in the field of police officer interaction with people in crisis and the training of San Francisco Police Officers in this subject matter. Sergeant Anderson is an employee and testifying on behalf of the City and County of San Francisco. He is expected to testify regarding the officers' interaction with Mario Woods in the present case and whether the defendant officers' conduct was consistent with their training and the policies of the San Francisco Police Department in December 2015.

- San Francisco Police Lieutenant Wilfred Williams is an expert in the field of law enforcement implicit bias training and the training of San Francisco Police Officers in this subject matter. Lt. Williams is an employee and testifying on behalf of the City and County of San Francisco.  He may testify regarding the training received by the defendant officers related to bias, racial profiling and related topics, as well as whether the officers' interaction with Mario Woods in the present case and whether the defendant officers' conduct was consistent with their training and the policies of the San Francisco Police Department in December 2015.

- San Francisco Police Officer Rosalyn Check (nee Rouede) is an expert in the field of crime scene preservation and investigations.  Officer Check is an employee and testifying on behalf of the City and County of San Francisco. She may testify regarding

the criminal investigation in connection with the events of December 2, 2015 involving Mario Woods, and the evidence related to that investigation.

- San Francisco Police Officer Ronan Shouldice is an expert in the field of crime scene preservation and investigations.  Inspector Shouldice is an employee and testifying on behalf of the City and County of San Francisco. He may testify regarding the criminal investigation in connection with the events of December 2, 2015 involving Mario Woods, and the evidence related to that investigation.

- San Francisco Police Officer T. Gomes is an expert in the field of crime scene preservation and investigations.  Officer Gomes is an employee and testifying on behalf of the City and County of San Francisco. He may testify regarding the criminal investigation in connection with the events of December 2, 2015 involving Mario Woods, and the evidence related to that investigation.

- Michael Hunter, M.D. is employed by the City and County of San Francisco as a medical examiner and is an expert in pathology. He will testify regarding his findings during the autopsy of Mario Woods.  A copy of his report has been produced in discovery and at Dr. Hunter's deposition in this case.

Attached as Exhibit 2 are the curriculum vitae and reports of defendants' expert witness.

Dated:  February 28, 2019

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Attorney

By:____/s/ Sean F. Connelly_____
SEAN F. CONNOLLY
Attorneys for Defendants
CHARLES AUGUST; NICHOLAS CUEVAS; SCOTT
PHILLIPS, ANTONIO SANTOS; AND WINSON SETO

Dated:  February 28, 2019

LAW OFFICES OF JOHN L. BURRIS

By:  /s/  Adante Pointer_____

Attorneys for Plaintiff
GWENDOLYN WOODS

1

2

**APPENDIX A**

Plaintiff's Witness List

| NO. | WITNESS NAME | SUBSTANCE OF TESTIMONY |
|---|---|---|
| | **PLAINTIFF** | |
| 1. | GWENDOLYN WOODS | Plaintiff's Damages |
| | **DEFENDANTS** | |
| 2. | CHARLES AUGUST | |
| 3. | NICHOLAS CUEVAS | |
| 4. | WINSON SETO | |
| 5. | ANTONIO SANTOS | |
| 6. | SCOTT PHILLIPS | |
| | | |
| | **SFPD OFFICERS** | |
| 7. | SFPD OFFICER GLENNIS UNSER | Percipient Witness to shooting death of Mario Woods. |
| 8. | SFPD OFFICER JUSTIN ERB | Percipient Witness to shooting death of Mario Woods. |
| 9. | OFFICER CHASE MCKAY | Percipient Witness to shooting death of Mario Woods. |
| 10. | OFFICER SANJA KAJASA | Percipient Witness to shooting death of Mario Woods. |
| 11. | OFFICER LOUIE HARGREAVES | Percipient Witness to shooting death of Mario Woods. |
| 12. | OFFICER SHARITE WILLIAMS | Percipient Witness to shooting death of Mario Woods. |
| 13. | OFFICER DAVID WASSERMAN | Percipient Witness to shooting death of Mario Woods. |
| 14. | OFFICER OLVER CALUPAD | Percipient Witness to shooting death of Mario Woods. |
| 15. | OFFICER KERRY MULLINS | Percipient Witness to shooting death of Mario Woods. |
| 16. | SGT. HUGH HALL | Percipient Witness to shooting death of Mario Woods. |
| 17. | OFFICER DANIEL GUZMAN | Percipient Witness to shooting death of Mario Woods. |
| 18. | OFFICER PERCY HERNANDEZ | Percipient Witness to shooting death of Mario Woods. |
| 19. | OFFICER ARNOLD BORGEN | Percipient Witness to shooting death of Mario Woods. |
| 20. | OFFICER PAUL WILGUS | Percipient Witness to shooting death of Mario Woods. |
| 21. | LT. DEAN HALL | Percipient Witness to shooting death of Mario Woods. |
| 22. | SFPD OFFICER CODY BARNES | Percipient Witness to shooting death of Mario Woods. |
| 23. | SFPD OFFICER MERGRIETER | Percipient Witness to shooting death of Mario Woods. |
| 24. | SFPD OFFICER BRANDON THOMPSON | Percipient Witness to shooting death of Mario Woods, Def August Partner; made radio transmissions |

Joint Pretrial Statement
Woods v. August, et al.; Case No. 15-cv-05666 WHO
29
n:\lit\li2019\160554\01341955.docx

| NO. | WITNESS NAME | SUBSTANCE OF TESTIMONY |
|---|---|---|
| 25. | SFPD SGT. RAYMOND CRUZ | Percipient Witness to shooting death of Mario Woods |
| 26. | CCSF DISPATCHER KIRSTIN WALKER | PMK for CAD pertaining to the shooting death of Mario Woods |
| 27. | SFPD OFFICER SHAUN NAVARRO | Percipient witness to the shooting death of Mario Woods; used less lethal force |
| 28. | SFPD OFFICER RUFINO VELASQUEZ | Percipient witness to the shooting death of Mario Woods; |
| 29. | SFPD OFFICER JESSIE ORTIZ | Percipient witness to the shooting death of Mario Woods; used less lethal force against Mario Woods |
| 30. | SFPD OFFICER JENNIFER TRAW | Percipient witness to the shooting death of Mario Woods; used less lethal force against Mario Woods |
| 31. | SFPD OFFICER CALVO-PEREZ | Percipient witness to the shooting death of Mario Woods; provided medical care to Woods immediately after shooting; Plaintiff's damages |
| 32. | SF PARAMEDIC LOCKS #1297 | provided medical care to Woods immediately after shooting |
| 33. | SFPD OFFICER EDDIEBERTO MARTINEZ | Percipient witness to the shooting death of Mario Woods; was armed with ERIW |
| 34. | SGT. DONALD ANDERSON | SFPD Policy and Training: Police interaction with person's in crisis |
| 35. | SGT. LAWRENCE MCDEVITT | SFPD Policy and Training |
| 36. | SGT. STEVEN POMATTO | CCSF PMK on Policy and Training re: Use of Force |
| 37. | LT. WILFRED WILLIAMS | SFPD Policy and Training |
| 38. | INSPECTOR CAGNEY | Co-lead SFPD Homicide Inspector; |
| 39. | INSPECTOR CARL BONNER | Co-lead SFPD Homicide Inspector; |
| 40. | SFPD CRIME SCENE INVESTIGATORS: Rosalyn Check (Roude); T. Gomes; Ronan Shouldice; Lt. Lozado (#389); Sgt. O'Connor (#336) | |
| | **THIRD PARTY PERCIPIENT WITNESSES** | |
| 41. | DEJA CALDWELL | Percipient witness to the shooting death of Mario Woods; took cell phone video of the incident; Plaintiff's damages |
| 42. | ROBERT TAYLOR | Percipient witness to the shooting death of Mario Woods, MUNI bus driver |
| 43. | RUBEN RIVERA | Percipient witness to the shooting death of Mario Woods, MUNI bus driver, took cell phone video of the incident |
| 44. | DERRENCE DAVIS | Percipient witness to the shooting death of Mario Woods, took cell phone video of the incident |

| NO. | WITNESS NAME | SUBSTANCE OF TESTIMONY |
|---|---|---|
| 45. | ANDRES HERNANDEZ | Percipient witness to the shooting death of Mario Woods; took cell phone video |
| 46. | MARCEL GARDNER | Percipient Witness to the confrontation between he and Mario Woods wherein he struck Mario Woods' with a car door, kicked Mario Woods to the ground and attempted to punch Mario Woods prior to Mario using a knife in self-defense |
| | **PLAINTIFF'S DAMAGES WITNESSES** | |
| 46. | JACK BRYSON | Present when Plaintiff confirmed it was her son, Plaintiff's Damages |
| 47. | JOSEPH PERKINS | Plaintiff's Damages: Plaintiff's relationship with her son; Prison visits; impact on Plaintiff |
| 48. | SALLY CARTER | Plaintiff's spiritual advisor/counselor, Plaintiff's damages; Plaintiff's relationship with her son |
| 49. | LATEEFAH BARNES | Plaintiff's damages; Plaintiff's relationship with her son |
| 50. | ROKESHA PINEDA | Plaintiff's damages; Plaintiff's relationship with her son |
| 51. | MICHAEL WOODS | Plaintiff's damages; Plaintiff's relationship with her son |
| 52. | SHAWN RICHARD | Plaintiff's damages |
| 53. | LYZETTE DUKES | Plaintiff's damages |
| 54. | TYSON AMIR MUSTAFA | Plaintiff's damages |
| 55. | WENDELL EL AMIN JAMES | Plaintiff's damages |
| | **NON-RETAINED EXPERTS** | |
| 56. | DR. MICHAEL HUNTER, M.E. | His observations and examination of Decedent Mario Woods' Body |
| 57. | DR. MARLIN GRIFFITH | Treated Plaintiff; Plaintiffs' Damages |
| | **RETAINED EXPERTS** | |
| 58. | Mr. GREG STUTCHMAN | Plaintiff's Forensic Video and Audio technician; testimony re: audio and video evidence |
| 59. | Mr. SCOTT DEFOE | Plaintiff's Police Practices Expert, testimony re: police practices, procedures |
| | **FOUNDATIONAL WITNESSES** | |
| 60. | CUSTODIAN OF RECORDS-SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT | Authentication of CAD and other related documents. |
| 61. | CUSTODIAN OF RECORDS-SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY | Authentication of MUNI video(s) related to the shooting death of Mario Woods. |

| NO. | WITNESS NAME | SUBSTANCE OF TESTIMONY |
|---|---|---|
| 62. | CUSTODIAN OF RECORDS - CDC | Authentication of Plaintiff's visitation records to Mario Woods. |

**APPENDIX B**

Defendants' Witness List

| Witness | Nature of Testimony | Time Estimate (Direct/ Rebuttal) | Method | Time Estimate (Cross/ Direct) |
|---|---|---|---|---|
| Alcaraz, Gabriel, #590 | Rebuttal | 15 minutes | Live testimony | |
| Alvarado, Maria, #431 | Liability; CSI | 20 minutes | Live testimony | |
| Anderson, Donald, #691 | SFPD Crisis Intervention Training and Policy | 75 minutes | Live testimony | |
| August, Charles, #1119 | Liability | 120 minutes | Live testimony | |
| Barkwill, Sharon | DNA evidence | 45 minutes | Live testimony | |
| Barnes, Cody, #4250 | Liability | 30 minutes | Live testimony | |
| Begault, Durand, PhD | Audio/video expert | 120 minutes | Live testimony | |
| Bonner, Carl, #1099 | Homicide Investigation | 45 minutes | Live testimony | |
| Broberg, Leonard, #1450 | Rebuttal | 15 minutes | Live testimony | |
| Brown, Michael, #4034 | Rebuttal | 15 minutes | Live testimony | |
| Cagney, John, #341 | Homicide Investigation | 45 minutes | Live testimony | |
| Cameron, Donald | Police practices expert | 120 minutes | Live testimony | |
| Chin, Kevin, #188 | Rebuttal | 45 minutes | Live testimony | |
| Cortes, Alejandro, #842 | Rebuttal | 15 minutes | Live testimony | |
| Coleman, Stephan, #4184 | Rebuttal | 15 minutes | Live testimony | |
| Cruz, Raymond, #1668 | Liability | 15 minutes | Live testimony | |
| Cuevas, Nicholas, #2295 | Liability | 90 minutes | Live testimony | |
| Cunningham, Daniel, #650 | Rebuttal | | Live testimony | |
| Custodian of Records, CDC | Authentication of CDC records | 30 minutes | Live testimony | |
| Custodian of Records, CDC Rehabilitation Parole Units 1&3 | Authentication of CDC parole records | 30 minutes | Live testimony | |
| Custodian of Records, ZSFGH | Authentication of ZSFGH records | 15 minutes | Live testimony | |
| Custodian of Records, Delano Regional Medical Center | Authentication of medical records | 15 minutes | Live testimony | |

| Witness | Nature of Testimony | Time Estimate (Direct/ Rebuttal) | Method | Time Estimate (Cross/ Direct) |
|---|---|---|---|---|
| Custodian of Records, CDC Parole Field Office | Authentication of CDC parole field office records | 30 minutes | Live testimony | |
| Custodian of Records, DEM | Authentication of DEM audio recordings | 30 minutes | Live testimony | |
| Erb, Justin, #686 | Rebuttal | 15 minutes | Live testimony | |
| Ebuen, Mark | CDC parole field office records | 30 minutes | Live testimony | |
| Faidiga, Lydia, #1649 | Rebuttal | 15 minutes | Live testimony | |
| Finch, Karen, MD | Mario Woods' medical treatment for drug overdose | 30 minutes | Live testimony | |
| Fries, Craig | Prepared demonstrative exhibits | 60 minutes | Live testimony | |
| Foltz, Aaron, #1971 | CSI | 30 minutes | Live testimony | |
| Gomes, Anthony, #911 | CSI evidence | 30 minutes | Live testimony | |
| Goh, Robert, MD | Medical evidence of Woods substance abuse history | 20 minutes | | |
| Hall, Hugh, #567 | Liability | 45 minutes | Live testimony | |
| Hernandez, Percy, #1519 | Liability | 20 minutes | Live testimony | |
| Hunter, Michael, MD | Medical Examiner who performed autopsy | 60 minutes | Live testimony | |
| Hutchings, Mark, #904 | Rebuttal | 30 minutes | Live testimony | |
| Irvine, Matt | Rebuttal; CSI; video | 30 minutes | Live testimony | |
| James, Wendell | Damages | 30 minutes | Live testimony | |
| Keram, Emily, MD | Psychology and CIT training expert | 75 minutes | Live testimony | |
| Kim, Officer | Rebuttal | 15 minutes | Live testimony | |
| Laufer, Michael, MD | Forensic pathology expert | 120 minutes | Live testimony | |

| Witness | Nature of Testimony | Time Estimate (Direct/ Rebuttal) | Method | Time Estimate (Cross/ Direct) |
|---|---|---|---|---|
| Lamiero, Christopher | Damages; Criminal law sentencing expert | 60 minutes | Live testimony | |
| Lewis, Brendan, #1636 | Rebuttal | 15 minutes | Live testimony | |
| Lozada, Aaron, #389 | Liability | 30 minutes | Live testimony | |
| Mulkeen, Steven, #1027 (Retired) | Damages | 15 minutes | Live testimony | |
| Margreiter, Mark, #2356 | Liability | 60 minutes | Live testimony | |
| Maron, David, #1929 | Damages | 15 minutes | Live testimony | |
| Martinez, Eddieberto, #4190 | Liability | 15 minutes | Live testimony | |
| McKay, Chase, #1911 | Liability | 75 minutes | Live testimony | |
| McKenzie, Henry, #7005 | Evidence chain of custody (DAI) | 10 minutes | Live testimony | |
| Mendelson, John, MD | Toxicology expert | 120 minutes | Live testimony | |
| Mendoza, Laurence, #2153 | Liability | 40 minutes | Live testimony | |
| Mullins, Kerry, #2174 | Evidence chain of custody | 10 minutes | Live testimony | |
| Navarro, Shaun, #1435 | Liability | 45 minutes | Live testimony | |
| Nye, Jonathan, MD | Mario Woods' medical treatment for drug overdose | 30 minutes | Live testimony | |
| Ortiz, Jesse, #1131 | Liability | 60 minutes | Live testimony | |
| Padilla, Oscar, #4052 | Rebuttal | 15 minutes | Live testimony | |
| Pomatto, Steven, #2071 | SFPD Use of Force training and policies | 90 minutes | Live testimony | |
| Peagler, Brian, #1391 | Gang injunction | 30 minutes | Live testimony | |
| Phillips, Scott, #1707 | Liability | 90 minutes | Live testimony | |
| Philpott, Michael, #65 | Liability | 30 minutes | Live testimony | |
| Reynolds, Sondra, #4293 | Liability | 20 minutes | Live testimony | |
| Rivera, Ruben | Liability; eyewitness who filmed incident | 45 minutes | Live testimony | |
| Roberts, Russell | Parole agent | 30 minutes | Live testimony | |
| Rouede (Check), Rosalyn, #1974 | Liability; CSI | 45 minutes | Live testimony | |

| Witness | Nature of Testimony | Time Estimate (Direct/ Rebuttal) | Method | Time Estimate (Cross/ Direct) |
|---|---|---|---|---|
| Shouldice, Ronan, #2054 | CSI evidence authentication | 45 minutes | Live testimony | |
| Salcedo, Gregory, #770 | Damages | 15 minutes | Live testimony | |
| Santos, Antonio, #2474 | Liability | 90 minutes | Live testimony | |
| Seto, Winson, #2370 | Liability | 90 minutes | Live testimony | |
| Suslow, Nicholas, #886 | Damages | 15 minutes | Live testimony | |
| Taylor, Robert | Liability; eyewitness | 30 minutes | Live testimony | |
| Thompson, Brandon, #153 | Liability | 60 minutes | Live testimony | |
| Thompson, James | Sentencing evidence | 30 minutes | Live testimony | |
| Traw, Jennifer, #566 | Liability | 45 minutes | Live testimony | |
| Unser, Glennis, #1216 | Liability | 30 minutes | Live testimony | |
| Warnke, Scott, #1397 | Damages | 15 minutes | Live testimony | |
| Wasserman, David, #4360 | Liability | 20 minutes | Live testimony | |
| Watts, Gary, #1594 | Liability | 60 minutes | Live testimony | |
| Wilgus, Paul, #2036 | Liability | 20 minutes | Live testimony | |
| Williams, Shante, #2336 | Evidence chain of custody | 10 minutes | Live testimony | |
| Williams, Wilfred, #486 | Rebuttal (implicit bias training) | 45 minutes | Live testimony | |
| Wimmer, Mark | Evidence chain of custody | 10 minutes | Evidence chain of custody | |
| Wong, Stan, #1578 | Liability | 40 minutes | Evidence chain of custody | |